FILED by _____ D.C.
ELECTRONIC

**Apr. 10, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## IN THE UNITED STATES DISTRICT COURT
## FOR SOUTHERN DISTRICT OF FLORIDA

OFFICE DEPOT, INC.,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　vs.　　　　　　　　　　　　　　　　)　　　CIVIL ACTION NO.
　　　　　　　　　　　　　　　　　　　)
NATIONAL UNION FIRE INSURANCE )　**09-80554-Civ-MARRA/JOHNSON**
COMPANY OF PITTSBURGH, PA.,　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　Defendant.　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
_____)

## COMPLAINT FOR BREACH OF CONTRACT
## AND DECLARATORY RELIEF
## (Jury Trial Demanded)

Plaintiff Office Depot, Inc. ("Office Depot"), hereby files this Complaint, seeking damages, costs, and attorneys' fees resulting from the breach by National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") of its contractual duty to reimburse Office Depot for losses sustained in connection with an investigation by the Securities and Exchange Commission ("SEC") and two related lawsuits, including a purported securities class action pending in this Court. In support of its Complaint, Office Depot respectfully shows the Court as follows:

US2008 638295.2

## INTRODUCTION

### 1.

This is a complaint for declaratory judgment, compensatory damages, attorneys' fees, and other appropriate relief by Office Depot against National Union. Office Depot seeks the following relief: (1) a declaration, pursuant to 28 U.S.C. § 2201, that National Union is obligated to reimburse Office Depot for losses and defense costs it has incurred and continues to incur in connection with the underlying claims, including an investigation being conducted by the SEC; (2) an award of monetary damages in the amount of losses and defense costs that Office Depot has incurred; and (3) an award of all costs and attorneys' fees incurred in bringing and prosecuting this action, pursuant to Fla. Stat. Ann. § 627.428.

## PARTIES, JURISDICTION, AND VENUE

### 2.

Office Depot is a Delaware corporation with its principle place of business in Palm Beach County, Florida.

### 3.

National Union is a wholly-owned subsidiary of American International Group, Inc. ("AIG") and is organized under the laws of Pennsylvania with its principal place of business located in New York, New York. National Union is an

2

admitted insurance carrier fully authorized to do business and which regularly transacts business in the State of Florida, including within this judicial district. National Union can be served with process by service on the Florida Department of Financial Services.

4.

This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1332, 2201, and 2202. Complete diversity of citizenship exists between the parties, and the amount in controversy exceeds $75,000 (Seventy-Five Thousand Dollars and No/100), exclusive of interest and costs.

5.

Venue is proper in this District pursuant to 28 U.S.C. § 1391 (a) and (c).

## THE AIG POLICY

6.

National Union issued to Office Depot an "AIG Executive and Organization Liability Policy," policy number 965-63-88, effective November 30, 2006 until November 30, 2007 (the "AIG Policy"), which insures against, *inter alia*, all "Loss" (defined to include "Defense Costs") arising from a "Claim" first made during the policy period for "Wrongful Acts" allegedly committed by any of Office Depot's employees and directors ("Insured Persons"). A true and accurate copy of relevant excerpts of the Policy is attached hereto as Exhibit A.

3

7.

Section 1 of the AIG Policy provides "Organization Insurance" coverage to

Office Depot, as follows:

COVERAGE B:  ORGANIZATION INSURANCE

(i)     *Organization Liability*:  This policy shall pay the Loss of any
        Organization arising from a Securities Claim made against
        such Organization for any Wrongful Act of such Organization.

(ii)    *Indemnification of an Insured Person*:  This policy shall pay
        the Loss of an Organization arising from a Claim made against
        an Insured Person (including an Outside Entity Executive) for
        any Wrongful Act of such Insured Person, but only to the
        extent that such Organization has indemnified such Insured
        Person.

Pursuant to Section 8 of the AIG Policy, National Union is obligated "[u]nder

Coverages A, B and C of this policy ... [to] advance, excess of any applicable

retention amount, covered Defense Costs no later than ninety (90) days after the

receipt by the Insurer of such defense bills."

8.

"Claim" is defined broadly in Section 2(b) of the AIG Policy to include

"Securities Claims" and administrative or regulatory proceedings, including SEC

investigations:

(b) "Claim" means:

(1)   a written demand for monetary, non-monetary or injunctive
      relief;

4

(2) *a civil, criminal, administrative, regulatory or arbitration proceeding* for monetary, non-monetary or injunctive relief which is commenced by: (i) service of a complaint or similar pleading; (ii) return of an indictment, information or similar document (in the case of a criminal proceeding), or (iii) receipt or filing of a notice of charges; or

(3) *a civil, criminal, administrative or regulatory investigation of an Insured Person:*

    (i) *once such Insured Person is identified in writing by such investigating authority as a person **against whom a proceeding** described in Definition (b)(2) **may be commenced**; or*

    (ii) ***in the case of an investigation by the SEC** or a similar state or foreign government authority, **after the service of a subpoena upon such Insured Person**.*

**The term "Claim" shall include any Securities Claim** and any Employment Practices Claim.

(emphasis added).

9.

The terminology "Securities Claim," as used in the foregoing definition of

"Claim" and in the "Organization" coverage Section B(i) quoted above, is defined

in relevant part in Section 2 of the Policy, as follows:

(y) *Securities Claim means a Claim*, other than an administrative or regulatory proceeding against, *or investigation of an Organization,* made against any Insured:

(1) *alleging a violation of any federal… regulation, rule or statute regulating securities* (including but not limited to the purchase or sale or offer or solicitation of an offer to purchase or sell securities)….

5

\*\*\*

> Notwithstanding the foregoing, *the term "Securities Claim" shall include an administrative or regulatory proceeding brought against an Organization, but only if and only during the time that such proceeding is also commenced and continuously maintained against an Insured Person.*

(emphasis added).

### 10.

"Defense Costs," are a component of an insured "Loss," and Section 2(f) of the AIG Policy broadly defines the term "Defense Costs" to include "reasonable and necessary fees, costs and expenses consented to by the Insurer . . . resulting solely from the *investigation*, adjustment, defense and/or appeal *of a Claim* [including a "Securities Claim"] against an Insured …." (emphasis added).

### 11.

Section 2(n) of the AIG Policy defines the term "Insured" to mean any "Insured Person," or the "Organization [Office Depot] with respect to a Securities Claim."

### 12.

In accord with the foregoing definition of "Securities Claim" and the "Organization" coverage section B(i), Office Depot is insured for "Loss[es]," including "Defense Costs, incurred in connection with an investigation of the Organization regarding a claimed violation of the federal securities laws and in

6

connection with "administrative or regulatory" proceedings involving the securities laws, if such proceedings also are commenced and continuously maintained with respect to an "Insured Person."

13.

The "Notice/Claim Reporting Provisions" in Section 7 of the Policy provide for submission by Office Depot of a "Notice of Circumstances" that may lead to a Claim. If a Claim is subsequently made, then Section 7(c) of the AIG Policy provides that the date of the Claim relates back, for purposes of triggering the Policy's coverage, to the date of the original "Notice of Circumstances," so long as the Claim that is made is based upon or arises out of those circumstances:

> (c) If during the Policy Period, ...an Organization or an Insured shall become aware of any circumstances which may reasonably be expected to give rise to a Claim... [and the] Insured... give[s] written notice to the Insurer of the circumstances, the Wrongful Act allegations anticipated and the reasons for anticipating such a Claim, . . . then *a Claim which is subsequently made against such Insured and reported to the Insurer* alleging, *arising out of, based upon or attributable to such circumstances* or alleging a *Wrongful Act which is the same as or related to any Wrongful Act alleged or contained in such circumstances* **shall be considered made at the time such notice of such circumstances was given.**

(emphasis added).

## THE NOTICE OF CIRCUMSTANCES AND CLAIM

14.

On June 29, 2007, a "Dow Jones Newswire" article reported that Office Depot may have improperly disclosed material information regarding projected profits and sales to certain analysts. The article suggested that Office Depot's conduct could implicate the securities laws. On July 11, 2007, Office Depot, through its insurance broker, ARC Excess & Surplus, LLC, forwarded a Notice of Circumstances to National Union that included a copy of the Dow Jones Newswire article. A true and correct copy of this July 11, 2007 notice is attached hereto as Exhibit B.

15.

On July 17, 2007, the SEC, pursuant to its authority under the federal securities laws, issued an initial "letter of inquiry" to Office Depot, thereby commencing an investigation of Office Depot by requesting extensive information related to the subject matters addressed in the Dow Jones Newswire article enclosed with Exhibit B. On July 20, 2007 Office Depot forwarded a copy of the SEC's letter of inquiry to National Union.

16.

On August 22, 2007, Mr. Reed C. Kleinle of AIG Domestic Claims, Inc., responded on behalf of National Union to Office Depot's correspondence of July

8

11 and July 20, 2007 by advising that National Union would treat Office Depot's correspondence as "Notice of Circumstances which may reasonably be expected to give rise to a Claim in accordance with the Notice and Claim Reporting provisions in Section 7 of the Policy." A true and correct copy of Mr. Kleinle's August 22, 2007 letter to Office Depot is attached hereto as Exhibit C.

17.

In November 2007, two shareholder derivative lawsuits and two securities class action lawsuits, each of which alleged violations of Section 10 and Rule 10b-5 of the Securities and Exchange Act, were filed naming Office Depot and certain Insured Persons as defendants. These lawsuits have since been consolidated into two, separate but related suits: (1) *Sheet Metal Workers Local 28 Pension Fund v. Office Depot, Inc., et al.*, USDC SD Fl. Case No. 07-81038; and (2) *Mason, et al., v. Office Depot, Inc., et al.,* USDC SD Fl. Case No. 07-81059 (hereafter the "Securities Lawsuits"). Office Depot immediately notified National Union of the Securities Lawsuits.

18.

On January 8, 2008, AIG acknowledged that the Securities Lawsuits constituted a "Securities Claim" under the AIG Policy and that the individuals named as defendants were "Insured Persons," while advising further of certain reservations of rights regarding coverage and Defense Costs.

9

19.

On January 10, 2008, the SEC issued a Formal Order of Private Investigation to Office Depot ("Formal Order"). Office Depot promptly informed National Union that the Formal Order had been issued.

20.

Beginning with issuance of its "letter of inquiry" dated July 17, 2007, the SEC has continuously pursued a securities-related investigation of the activities of Office Depot, as the insured "Organization" under the AIG Policy, including the activities of numerous "Insured Persons" under the AIG Policy. The SEC's activities regarding Office Depot and the "Insured Persons" constitute an "administrative or regulatory proceeding" that has been continuously maintained and that is within the scope of the definition of "Securities Claim" quoted above.

21.

The SEC's Investigation and the subsequent Securities Lawsuits constitute Securities Claims "arising out of, based upon or attributable to" the circumstances reported to AIG in the "Notice of Circumstances" attached as Exhibit B; therefore, according to the above-quoted provisions of Section 7 of the AIG Policy, and for purposes of triggering coverage for the Defense Costs incurred by Office Depot, the date all the Securities Claims are considered to have been made relates back to

10

July 11, 2007, the date of the correspondence acknowledged by National Union in Exhibit C to be a proper Notice of Circumstances.

## NATIONAL UNION'S WRONGFUL DENIAL OF COVERAGE

22.

Beginning on July 11, 2007 and continuing thereafter, Office Depot has incurred more than $15,000,000 in covered "Defense Costs" in investigating the Securities Claims that were the subjects of the Notice of Circumstances attached hereto as Exhibit B, including Defense Costs incurred in responding to the investigatory demands by the SEC seeking documentary evidence and testimony by Insured Persons arising out of or related to the Claims that have been the subject of Office Depot's notices and in defending and investigating the Securities Lawsuits.

23.

The Defense Costs Office Depot has incurred include the costs of indemnifying Insured Persons against losses, costs and attorneys' fees incurred in connection with the Claims, in accord with Office Depot's bylaws and applicable law, including the costs of paying independent counsel retained to represent Insured Persons in defending and investigating the Claims reference herein, all of such costs being covered under Coverage B(ii) of the AIG Policy quoted above.

11

24.

Despite Office Depot's demands, National Union has wrongfully failed and refused to "advance" or reimburse any of Office Depot's Defense Costs within ninety (90) days after they were incurred, as required by the AIG Policy. Instead, on February 14 and February 29, 2008, Mr. Kleinle of AIG Domestic Claims, Inc. forwarded e-mails denying all coverage for Office Depot's Defense Costs incurred in connection with the SEC's investigation, even though that investigation constitutes an insured investigation of Office Depot and, with respect to both Office Depot and the Insured Persons, constitutes an insured "administrative or regulatory proceeding," within the meaning of Section 2(y) of the Policy.

25.

On August 11, 2008, Mr. Kleinle of AIG Domestic Claims, Inc. responded to Office Depot's letters of April 10, 2008 and June 16, 2008 demanding coverage by continuing to deny that the SEC's investigatory activities constituted a Securities Claim, but also advising, in relevant part, that "there may be coverage available for costs incurred by or on behalf of Insured Persons in responding to an SEC subpoena or inquiry."

26.

On August 20, 2008, Office Depot responded to Mr. Klienle, further explaining that the activities of various "Insured Persons" have been the subject of

12

the SEC's inquiry; demanding coverage for the losses, costs, and expenses, including attorneys' fees expended by Office Depot since the July 11, 2007 Notice of Circumstances; enclosing a spreadsheet updating the substantial costs (more than $15,000,000) Office Depot had incurred since July 11, 2007 in connection with the pending Claims; and offering to forward any additional information requested by National Union.

27.

National Union did not request any additional information about Office Depot's Defense Costs; but instead, on October 16, 2008, had its counsel forward another letter to counsel for Office Depot repeating National Union's blanket denials of coverage for any the Defense Costs claimed by Office Depot, while ignoring Office Depot's alternative position that for purposes of determining the date on which Claims were made and trigger coverage, the filing of the Securities Lawsuits should be deemed to relate back and the AIG Policy accordingly should cover all the Defense Costs that Office Depot has incurred since July 11, 2007, the date on which Claims are deemed "made" pursuant to Section 7(c) of the AIG policy.

28.

Section 17 of the AIG Policy provides for alternative dispute resolution processes including, at the election of Office Depot, either (1) binding Arbitration

13

or (2) non-binding mediation, after which either party may commence litigation 120 days after "termination" of the mediation. The parties held a mediation on December 11, 2008, and the mediator pronounced the mediation "terminated" on that day. Accordingly, the commencement of this lawsuit complies with the Section 17 of the AIG Policy.

29.

Because insured Claims and Securities Claims, as defined in Sections 2(b) and 2(y) of the AIG Policy have been made, all of the costs, attorneys' fees and expenses incurred by Office Depot since July 11, 2007 in investigating and defending those Claims, including, but not limited to, the costs and attorneys' fees incurred in responding to the SEC investigation, constitute covered "Losses" and "Defense Costs" that, subject to the AIG Policy's retention and co-insurance provisions, should be fully and immediately reimbursed.

30.

National Union has breached its obligations under the AIG Policy by wrongfully refusing to advance covered Defense Costs to Office Depot or to reimburse any of the costs, attorneys' fees, expenses and losses incurred by Office Depot since July 11, 2007, and which Office Depot will continue to incur in investigating, defending and indemnifying Insured Persons with respect to the pending Claims, including responding to the SEC's investigatory demands.

14

31.

In addition to the significant costs Office Depot has already incurred in investigating and defending the Claims, National Union's breach of its contractual obligations has forced Office Depot to incur additional expenses, including legal fees and costs in prosecuting this action to enforce its contractual rights to coverage under the AIG Policy, which will increase on a daily basis.

## COUNT ONE- DECLARATORY RELIEF REGARDING COVERAGE

32.

Office Depot incorporates by reference Paragraphs 1 through 31 above, as if fully set forth herein.

33.

There is an actual and justiciable controversy between Office Depot and National Union in this case, arising out of National Union's refusal to honor its contractual obligations to pay or advance Defense Costs to Office Depot or otherwise to acknowledge coverage under the AIG Policy for the losses incurred by Office Depot in responding on its own behalf, and on behalf of Insured Persons, to the underlying Claims, including the SEC investigation.

34.

National Union's failure to pay or to advance Defense Costs, and its denial of all coverage for the Defense Costs incurred by Office Depot in investigating and

15

defending the Claims and responding to the SEC investigation has generated a case or controversy that should be resolved by this Court.

35.

A declaration of rights pursuant to 28 U.S.C. § 2201 would alleviate the uncertainty currently facing Office Depot with respect to the losses, costs, attorneys' fees and expenses that Office Depot has incurred and will continue to incur as a result of the Claims, including the SEC investigation, and in connection with enforcing its contractual rights under the AIG Policy.

36.

The attorneys' fees, expenses, and monetary losses incurred by Office Depot in investigating and defending the Claims and responding to the SEC's investigatory demands, and any attorneys' fees and expenses incurred in the future in connection with such demands and/or any other ensuing Claims arising out of the July 11, 2007 Notice of Circumstances are covered Defense Costs under the Policy.

37.

Office Depot is entitled to a declaration that the AIG Policy covers all Defense Costs that Office Depot has incurred since July 11, 2007 in connection with the covered Claims; that in accord with the coinsurance provisions of the Policy, National Union is obligated to reimburse eighty percent (80%) of the

16

covered Defense Costs Office Depot has incurred since July 11, 2007 in excess of the $2,500,000 retention; that National Union should continue to advance Defense Costs that Office Depot continues to incur in investigating and defending the Claims, including the Securities Lawsuits, and in responding on its own behalf, as the insured Organization under the AIG Policy, and on behalf of Insured Persons to the SEC investigation; and that Office Depot is entitled to recover all costs incurred in indemnifying Insured Persons with respect to the Claims at issue.

## COUNT TWO - BREACH OF INSURANCE CONTRACT

38.

Office Depot incorporates by reference Paragraphs 1 through 31 above, as if fully set forth herein.

39.

Office Depot has incurred substantial out-of-pocket expenses and losses, including, but not limited to, the costs of compiling thousands of pages of documents; the costs of presenting witnesses who are Insured Persons to provide sworn testimony to the SEC; and related costs and attorneys' fees in responding on its own behalf and on behalf of Insured Persons and indemnifying Insured Persons with respect to the SEC investigation and the related Securities Lawsuits. All attorneys fees, costs, and expenses incurred by Office Depot in relation to the Claims constitute Losses and Defense Costs covered under the AIG Policy.

17

40.

Office Depot has fully complied with all conditions precedent and other requirements for coverage under the AIG Policy.

41.

National Union breached its obligations under the AIG Policy by failing to pay or to advance Defense Costs to Office Depot and by wrongfully denying all coverage for the significant financial losses incurred by Office Depot in responding to the Claims and indemnifying Insured Persons against the Claims.

42.

As a direct and proximate result of the breaches of its obligations under the AIG Policy, National Union has deprived Office Depot of the benefit of insurance coverage under the AIG Policy; and as a result, Office Depot has suffered insured Losses and will continued to incur such Losses that should be reimbursed by National Union in an amount to be proven at trial, but that presently are in excess of $10,000,000.   Moreover, Office Depot has been forced to incur substantial, additional costs and attorneys' fees to enforce its contractual rights in this action.

43.

As a result of National Union's wrongful denial of coverage, Office Depot is entitled to recover as monetary damages all the Losses and Defense Costs it has incurred and will incur since July 11, 2007 in investigating and defending the

18

Claims, indemnifying Insured Persons with respect to the Claims, and responding to the SEC investigation.

44.

Pursuant to Fla. Stat. Ann. § 627.428, Office Depot is entitled to recover from National Union all attorneys' fees incurred in enforcing its contractual rights to insurance coverage in this action.

**PRAYER FOR RELIEF**

WHEREFORE, Office Depot respectfully prays that:

(1)    Judgment be entered declaring that National Union has a duty to pay and to continue to advance the Losses and Defense Costs Office Depot has incurred and will continue to incur in the future on behalf of itself and Insured Persons in connection with the Claims, including, but not limited to, the Defense Costs incurred in responding to the SEC investigation and in connection with the Securities Lawsuits;

(2)    Office Depot be awarded monetary damages, for breach of contract in an amount sufficient to compensate Office Depot for the losses, costs and expenses, including attorneys' fees, it has incurred on behalf of itself and Insured Persons in connection with the Claims, including, but not limited to, the Defense

19

Costs incurred in responding to the SEC investigation and in connection with the Securities Lawsuits;

(3)     Office Depot be awarded its attorneys' fees and other expenses incurred in bringing and prosecuting this action pursuant to Fla. Stat. Ann. § 627.428;

(4)     Office Depot be awarded pre-judgment interest on the money damages awarded in this case and on the attorneys' fees awarded pursuant to Fla. Stat. Ann. §627.428;

(5)     This case be tried by a jury; and

(6)     Office Depot be awarded such other and further relief as the Court deems equitable and just.

Respectfully submitted this _____ day of April, 2009.

Sidney A. Stubbs
Florida Bar No. 095596
sstubbs@jones-foster.com
Joanne M. O'Connor
Florida Bar No. 0498807
joconnor@jones-foster.com
**JONES, FOSTER, JOHNSTON & STUBBS, P.A.**
505 South Flagler Drive
Suite 1100
West Palm Beach, Florida 33402-3475
Telephone: (561) 659-3000
Facsimile: (561) 832-1454

Edmund M. Kneisel
Brent W. Brougher
**KILPATRICK STOCKTON LLP**
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

*Attorneys for Plaintiff Office Depot, Inc.*

21

IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| OFFICE DEPOT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION FILE |
| | ) | NO. |
| NATIONAL UNION FIRE INSURANCE | ) | |
| COMPANY OF PITTSBURGH, PA., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## COMPLAINT FOR BREACH OF CONTRACT
## AND DECLARATORY RELIEF

# EXHIBIT A

# **AIG** AMERICAN INTERNATIONAL COMPANIES®

☐ AIU Insurance Company
☐ American Home Assurance Company
☐ American International South Insurance Company
☐ Birmingham Fire Insurance Company of Pennsylvania

☐ Granite State Insurance Company
☐ Illinois National Insurance Company
☒ National Union Fire Insurance Co. of Pittsburgh, Pa.®
☐ New Hampshire Insurance Company

(each of the above being a capital stock company)

POLICY NUMBER: *965-63-88*       REPLACEMENT OF POLICY NUMBER: *494-92-40*

## EXECUTIVE AND ORGANIZATION LIABILITY INSURANCE POLICY

**NOTICE: COVERAGES A, B AND C ARE CLAIMS MADE. THE COVERAGE OF THIS POLICY IS GENERALLY LIMITED TO LIABILITY FOR CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS AND CRISIS FIRST OCCURRING DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. PLEASE READ THIS POLICY CAREFULLY AND REVIEW ITS COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

**NOTICE: AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL REDUCE THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS, AND SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.**

**NOTICE: THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND. THE INSURER MUST ADVANCE DEFENSE COSTS, EXCESS OF THE APPLICABLE RETENTION, PURSUANT TO THE TERMS HEREIN PRIOR TO THE FINAL DISPOSITION OF A CLAIM.**

**NOTICE: TERMS APPEARING IN BOLD FACE TYPE HAVE SPECIAL MEANING. SEE CLAUSE 2 OF THE POLICY.**

### DECLARATIONS

| ITEMS | | |
|---|---|---|
| 1 | **NAMED ENTITY:** (herein "Named Entity") | *OFFICE DEPOT, INC.* |
| 1(a) | MAILING ADDRESS: | *2200 OLD GERMANTOWN ROAD DELRAY BEACH, FL 33445* |
| 1(b) | STATE OF INCORPORATION/FORMATION: *Delaware* | |
| 2 | **POLICY PERIOD:** From: *November 30, 2006*   To: *November 30, 2007* 12:01 A.M. standard time at the address stated in Item 1(a) | |
| 3 | **POLICY AGGREGATE LIMIT OF LIABILITY** (herein "Limit of Liability") For all **Loss**, in the aggregate, under this policy including **Defense Costs:** | *$25,000,000* |
| 4 | **RETENTION:** Not applicable to **Non-Indemnifiable Loss** and certain **Defense Costs** – (See Clause 6 for details.) | |
| 4(a) | **Securities Claims:** *$2,500,000* | 4(b) **Employment Practices Claims:** *N/A* |
| 4(c) | **All other Claims:** *$2,500,000* | |

*7161977*

75010 (2/00)   *COPY*                              1

| ITEMS (continued) | | | |
|---|---|---|---|
| 5. | **CONTINUITY DATE** (herein "Continuity Date") | | |
| 5(a) | Coverages A and B, other than **Outside Entity Executive** coverage: *November 30, 1994* | 5(b) | **Outside Entity Executive** coverage, including Coverage C: |
| 5(c) | Coverage D: *N/A* | | The date on which the **Insured Person** first served as an **Outside Entity Executive** of such **Outside Entity.** |

| 6. | **PREMIUM:** *$852,275* |
|---|---|
| | *Premium for Certified Acts of Terrorism Coverage under Terrorism Risk Insurance Act 2002: $8,438 included in policy premium. Any coverage provided for losses caused by an act of terrorism as defined by TRIA (TRIA Losses) may be partially reimbursed by the United States under a formula established by TRIA as follows: 90% of TRIA Losses in excess of the insurer deductible mandated by TRIA, the deductible to be based on a percentage of the insurer's direct earned premiums for the year preceding the act of terrorism.*<br>*A copy of the TRIA disclosure sent with the original quote is attached hereto.* |

| 7. | **CRISISFUND**SM limit: | | |
|---|---|---|---|
| 7(a) | **Crisis Loss:** *$0* | 7(b) | Additional **CRISISFUND**SM for **Delisting Crisis Loss:** *$0* |

| 8. | **NAME AND ADDRESS OF INSURER** (herein "Insurer"): |
|---|---|
| | *National Union Fire Insurance Company of Pittsburgh, Pa.*<br>*175 Water Street*<br>*New York, NY 10038* |
| | This policy is issued only by the insurance company indicated in this Item 8. |

*7161977*

75010 (2/00)   **COPY**

2

POLICYHOLDER DISCLOSURE STATEMENT
UNDER
TERRORISM RISK INSURANCE ACT OF 2002

You are hereby notified that under the federal Terrorism Risk Insurance Act of 2002 (the "Act") effective November 26, 2002, you now have a right to purchase insurance coverage for losses arising out of an Act of Terrorism, which is defined in the Act as an act certified by the Secretary of the Treasury (i) to be an act of terrorism, (ii) to be a violent act or an act that is dangerous to (A) human life; (B) property or (C) infrastructure, (iii) to have resulted in damage within the United States, or outside of the United States in case of an air carrier or vessel or the premises of a U.S. mission and (iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. You should read the Act for a complete description of its coverage. The Secretary's decision to certify or not to certify an event as an Act of Terrorism and thus covered by this law is final and not subject to review. There is a $50 billion dollar annual cap on all losses resulting from Acts of Terrorism above which no coverage will be provided under this policy and under the Act unless Congress makes some other determination.

For your information, coverage provided by this policy for losses caused by an Act of Terrorism may be partially reimbursed by the United States under a formula established by the Act. Under this formula the United States pays 90% of terrorism losses covered by this law exceeding a statutorily established deductible that must be met by the insurer, and which deductible is based on a percentage of the insurer's direct earned premiums for the year preceding the Act of Terrorism.

### COPY OF DISCLOSURE SENT WITH ORIGINAL QUOTE

Insured Name: *OFFICE DEPOT, INC.*

Policy Number: *965-63-88*
Policy Period Effective Date From: *November 30, 2006*   To: *November 30, 2007*

81285 (1/03)

**IN WITNESS WHEREOF**, the Insurer has caused this policy to be signed on the Declarations page by its President, a Secretary and a duly authorized representative of the Insurer.

_Elizabeth M. Tuck_
_____
SECRETARY

_[signature]_
_____
PRESIDENT

_[signature]_
_____
AUTHORIZED REPRESENTATIVE

_____
COUNTERSIGNATURE & DATE

_____
COUNTERSIGNED AT

*ARC EXCESS & SURPLUS LLC*
*1122 FRANKLIN AVE*
*GARDEN CITY, NY 11530-1643*

7161977

.75010 (2/00)    **COPY**

**FLORIDA ADDENDUM TO THE DECLARATIONS**

If you have questions about your insurance policy, or questions about claims relating to your insurance policy, please contact your insurer at the following:

American International Companies®
70 Pine Street
New York, NY 10270
(212) 770-7000

74825 (02/01)  *COPY*

**AIG** EXECUTIVE AND ORGANIZATION LIABILITY INSURANCE POLICY

In consideration of the payment of the premium, and in reliance upon the **Application** and the statements therein, which form a part of this policy, the **Insurer** agrees as follows:

## 1. INSURING AGREEMENTS

With respect to Coverage A, B and C, solely with respect to **Claims** first made against an **Insured** during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, and subject to the other terms, conditions and limitations of this policy, this policy affords the following coverage:

### COVERAGE A: EXECUTIVE LIABILITY INSURANCE

This policy shall pay the **Loss** of any **Insured Person** arising from a **Claim** made against such **Insured Person** for any **Wrongful Act** of such **Insured Person**, except when and to the extent that an **Organization** has indemnified such **Insured Person**. Coverage A shall not apply to **Loss** arising from a **Claim** made against an **Outside Entity Executive**.

### COVERAGE B: ORGANIZATION INSURANCE

(i) *Organization Liability*: This policy shall pay the **Loss** of any **Organization** arising from a **Securities Claim** made against such **Organization** for any **Wrongful Act** of such **Organization**.

(ii) *Indemnification of an Insured Person*: This policy shall pay the **Loss** of an **Organization** arising from a **Claim** made against an **Insured Person** (including an **Outside Entity Executive**) for any **Wrongful Act** of such **Insured Person**, but only to the extent that such **Organization** has indemnified such **Insured Person**.

### COVERAGE C: OUTSIDE ENTITY EXECUTIVE LIABILITY INSURANCE

This policy shall pay the **Loss** of any **Outside Entity Executive** arising from a **Claim** made against such **Outside Entity Executive** for any **Wrongful Act** of such **Outside Entity Executive** but only excess of any indemnification provided by an **Outside Entity** and any insurance coverage afforded to an **Outside Entity** or its **Executives** applicable to such **Claim**, except when and to the extent that an **Organization** has indemnified such **Outside Entity Executive**.

### COVERAGE D: CRISISFUND<sup>SM</sup> INSURANCE

This policy shall pay the **Crisis Loss** (including **Delisting Crisis Loss**) of an **Organization** solely with respect to a **Crisis** (including a **Delisting Crisis**) occurring during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy, up to the amount of the respective **CrisisFund**<sup>SM</sup>, from first dollar; provided that payment of any **Crisis Loss** under this policy shall not waive any of the **Insurer's** rights under this policy or at law. This Coverage D shall apply regardless of whether a **Claim** is ever made against an **Insured** arising from such **Crisis** and, in the case where a **Claim** is made, regardless of whether the amount is incurred prior to or subsequent to the making of the **Claim**.

## 2. DEFINITIONS

(a) "**Application**" means each and every signed application, any attachments to such applications, other materials submitted therewith or incorporated therein and any other documents submitted in connection with the underwriting of this policy or the underwriting of any other directors and officers (or equivalent) liability policy issued by

75011 (2/00)   *COPY*                                1

the **Insurer**, or any of its affiliates, of which this policy is a renewal, replacement or which it succeeds in time, and any public documents filed by an **Organization** with any federal, state, local or foreign regulatory agency (including but not limited to the Securities and Exchange Commission (SEC)).

(b) "**Claim**" means:

(1) a written demand for monetary, non–monetary or injunctive relief;

(2) a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non–monetary or injunctive relief which is commenced by: (i) service of a complaint or similar pleading; (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or (iii) receipt or filing of a notice of charges; or

(3) a civil, criminal, administrative or regulatory investigation of an **Insured Person**:

(i) once such **Insured Person** is identified in writing by such investigating authority as a person against whom a proceeding described in Definition (b)(2) may be commenced; or

(ii) in the case of an investigation by the SEC or a similar state or foreign government authority, after the service of a subpoena upon such **Insured Person**.

The term "**Claim**" shall include any **Securities Claim** and any **Employment Practices Claim**.

(c) "**Crisis**" has the meaning as defined in Appendix B attached to this policy.

(d) "**CrisisFund** SM " means:

(1) in the case of all **Crisis Loss**, other than **Delisting Crisis Loss**, the dollar amount set forth in Item 7(a) of the Declarations; and

(2) in the case of **Delisting Crisis Loss** the dollar amount set forth in Item 7(a) of the Declarations plus the additional dollar amount set forth in Item 7(b) of the Declarations, combined.

(e) "**Crisis Loss**" has the meaning as defined in Appendix B attached to this policy. "**Delisting Crisis Loss**" means a **Crisis Loss** resulting solely from a **Delisting Crisis** (as defined in Appendix B).

(f) "**Defense Costs**" means reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and/or appeal of a **Claim** against an **Insured**, but excluding any compensation of any **Insured Person** or any **Employee** of an **Organization**.

(g) "**Employee**" means any past, present or future employee, other than an **Executive** of an **Organization**, whether such employee is in a supervisory, co–worker or subordinate position or otherwise, including any full–time, part–time, seasonal and temporary employee.

(h) "**Employment Practices Claim**" means a **Claim** alleging any **Employment Practices Violation**.

(i) "**Employment Practices Violation**" means any actual or alleged:

(1) wrongful dismissal, discharge or termination, either actual or constructive, of employment;

(2) harassment (including but not limited to sexual harassment);

(3) discrimination;

(4) retaliation;

(5) employment-related misrepresentation;

(6) employment-related libel, slander, humiliation, defamation or invasion of privacy;

(7) wrongful failure to employ or promote;

(8) wrongful deprivation of career opportunity, wrongful demotion or negligent **Employee** evaluation;

(9) wrongful discipline

(10) failure to grant tenure; or

(11) with respect to any of the foregoing items (1) through (10) of this definition: negligent hiring, retention, training or supervision, infliction of emotional distress, failure to provide or enforce adequate or consistent corporate policies and procedures, or violation of an individual's civil rights,

but only if such act, error or omission relates to an **Executive** of, an **Employee** of or an applicant for employment with an **Organization** or an **Outside Entity**, whether committed directly, indirectly, intentionally or unintentionally. In addition, with respect to any natural person customer or client, **"Employment Practices Violation"** shall mean only actual or alleged discrimination, sexual harassment or violation of an individual's civil rights relating to such discrimination or sexual harassment, whether committed directly, indirectly, intentionally or unintentionally.

(j) **"Executive"** means any:

(1) past, present and future duly elected or appointed director, officer, trustee or governor of a corporation, management committee member of a joint venture and member of the management board of a limited liability company (or equivalent position);

(2) past, present and future person in a duly elected or appointed position in an entity organized and operated in a **Foreign Jurisdiction** that is equivalent to an executive position listed in Definition (j)(1); or

(3) past, present and future General Counsel and Risk Manager (or equivalent position) of the **Named Entity**.

(k) **"Foreign Jurisdiction"** means any jurisdiction, other than the United States or any of its territories or possessions.

(l) **"Foreign Policy"** means the **Insurer's** or any other company of American International Group, Inc.'s (AIG) standard executive managerial liability policy (including all mandatory endorsements, if any) approved by AIG to be sold within a **Foreign Jurisdiction** that provides coverage substantially similar to the coverage afforded under this policy. If more than one such policy exists, then **"Foreign Policy"** means the standard policy most recently registered in the local language of the **Foreign Jurisdiction**, or if no such policy has been registered, then the policy most recently registered in that **Foreign Jurisdiction**. The term **"Foreign Policy"** shall not include any partnership managerial, pension trust or professional liability coverage.

(m) **"Indemnifiable Loss"** means **Loss** for which an **Organization** has indemnified or is permitted or required to indemnify an **Insured Person** pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of an **Organization**.

(n) "**Insured**" means any:

    (1) **Insured Person**; or

    (2) **Organization**, but only with respect to a **Securities Claim**.

(o) "**Insured Person**" means any:

    (1) **Executive** of an **Organization**;

    (2) **Employee** of an **Organization**; or

    (3) **Outside Entity Executive**.

(p) "**Loss**" means damages, settlements, judgments (including pre/post-judgment interest on a covered judgment), **Defense Costs** and **Crisis Loss**; however, "**Loss**" (other than **Defense Costs**) shall not include: (1) civil or criminal fines or penalties; (2) taxes; (3) punitive or exemplary damages; (4) the multiplied portion of multiplied damages; (5) any amounts for which an **Insured** is not financially liable or which are without legal recourse to an **Insured**; and (6) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

Notwithstanding the foregoing paragraph, **Loss** shall specifically include (subject to this policy's other terms, conditions and limitations, including but not limited to exclusions relating to profit or advantage, deliberate fraud or deliberate criminal acts): (1) civil penalties assessed against any **Insured Person** pursuant to Section 2(g) (2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-2(g)(2)(B); and (2) solely with respect to **Securities Claims**, punitive, exemplary and multiplied damages. Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such penalties and punitive, exemplary and multiple damages.

In the event of a **Claim** alleging that the price or consideration paid or proposed to be paid for the acquisition or completion of the acquisition of all or substantially all the ownership interest in or assets of an entity is inadequate, **Loss** with respect to such **Claim** shall not include any amount of any judgment or settlement representing the amount by which such price or consideration is effectively increased; provided, however, that this paragraph shall not apply to **Defense Costs** or to any **Non-Indemnifiable Loss** in connection therewith.

(q) "**Management Control**" means: (1) owning interests representing more than 50% of the voting, appointment or designation power for the selection of a majority of: the Board of Directors of a corporation; the management committee members of a joint venture; or the members of the management board of a limited liability company; or (2) having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of an **Organization**, to elect, appoint or designate a majority of: the Board of Directors of a corporation; the management committee of a joint venture; or the management board of a limited liability company.

(r) "**No Liability**" means a final judgment of no liability obtained: (1) prior to trial, in favor of each and every **Insured** named in the **Claim**, by reason of a motion to dismiss or a motion for summary judgment, after the exhaustion of all appeals; or (2) after trial and after the exhaustion of all appeals, in favor of each and every **Insured** named in the **Claim**. In no event shall the term "**No Liability**" apply to a **Claim** made against an **Insured** for which a settlement has occurred.

(s) "**Non-Indemnifiable Loss**" means **Loss** for which an **Organization** has neither indemnified nor is permitted or required to indemnify an **Insured Person** pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of an **Organization**.

(t) "**Organization**" means:

    (1) the **Named Entity**;

    (2) each **Subsidiary**; and

    (3) in the event a bankruptcy proceeding shall be instituted by or against the foregoing entities, the resulting debtor–in–possession (or equivalent status outside the United States), if any.

(u) "**Outside Entity**" means any: (1) not–for–profit entity; or (2) other entity listed as an "**Outside Entity**" in an endorsement attached to this policy.

(v) "**Outside Entity Executive**" means any: (1) **Executive** of an **Organization** who is or was acting at the specific written request or direction of an **Organization** as an **Executive** of an **Outside Entity**; or (2) any other person listed as an **Outside Entity Executive** in an endorsement attached to this policy.

(w) "**Policy Period**" means the period of time from the inception date shown in Item 2 of the Declarations to the earlier of the expiration date shown in such Item 2 or the effective date of cancellation of this policy.

(x) "**Pollutants**" means, but is not limited to, any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and **Waste**. "**Waste**" includes, but is not limited to, materials to be recycled, reconditioned or reclaimed.

(y) "**Securities Claim**" means a **Claim**, other than an administrative or regulatory proceeding against, or investigation of an **Organization**, made against any **Insured**:

    (1) alleging a violation of any federal, state, local or foreign regulation, rule or statute regulating securities (including but not limited to the purchase or sale or offer or solicitation of an offer to purchase or sell securities) which is:

        (a) brought by any person or entity alleging, arising out of, based upon or attributable to the purchase or sale or offer or solicitation of an offer to purchase or sell any securities of an **Organization**; or

        (b) brought by a security holder of an **Organization** with respect to such security holder's interest in securities of such **Organization**; or

    (2) brought derivatively on the behalf of an **Organization** by a security holder of such **Organization**.

Notwithstanding the foregoing, the term "**Securities Claim**" shall include an administrative or regulatory proceeding against an **Organization**, but only if and only during the time that such proceeding is also commenced and continuously maintained against an **Insured Person**.

(z) "**Subsidiary**" means: (1) any for–profit entity that is not formed as a partnership of which the **Named Entity** has **Management Control** ("**Controlled Entity**") on or before the inception of the **Policy Period** either directly or indirectly through one or more other **Controlled Entities**; and (2) any not–for–profit entity under section 501(c)(3) of the Internal Revenue Code of 1986 (as amended) sponsored exclusively by an **Organization**.

(aa) "**Wrongful Act**" means:

    (1) any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act or any actual or alleged **Employment Practices Violation**:

(i)  with respect to any **Executive** of an **Organization**, by such **Executive** in his or her capacity as such or any matter claimed against such **Executive** solely by reason of his or her status as such;

(ii) with respect to any **Employee** of an **Organization**, by such **Employee** in his or her capacity as such, but solely in regard to any: (a) **Securities Claim**; or (b) other **Claim** so long as such other **Claim** is also made and continuously maintained against an **Executive** of an **Organization**; or

(iii) with respect to any **Outside Entity Executive**, by such **Outside Entity Executive** in his or her capacity as such or any matter claimed against such **Outside Entity Executive** solely by reason of his or her status as such; or

(2) with respect to an **Organization**, any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission, or act by such **Organization**, but solely in regard to a **Securities Claim**.

**3.  WORLDWIDE EXTENSION**

Where legally permissible, this policy shall apply to any **Claim** made against any **Insured** anywhere in the world.

In regard to **Claims** brought and maintained solely in a **Foreign Jurisdiction** against an **Organization** formed and operating in such **Foreign Jurisdiction** or an **Insured Person** thereof for **Wrongful Acts** committed in such **Foreign Jurisdiction**, the **Insurer** shall apply to such **Claim(s)** those terms and conditions (and related provisions) of the **Foreign Policy** registered with the appropriate regulatory body in such **Foreign Jurisdiction** that are more favorable to such **Insured** than the terms and conditions of this policy. However, this paragraph shall apply only to Clauses 1–4, 9–13, 15, 16, 18, 20 and 21 of this policy and the comparable provisions of the **Foreign Policy**. In addition, this paragraph shall not apply to the non-renewal or claims made and reported provisions of any policy.

All premiums, limits, retentions, **Loss** and other amounts under this Policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or other elements of **Loss** are stated or incurred in a currency other than United States of America dollars, payment of covered **Loss** due under this policy (subject to the terms, conditions and limitations of this policy) will be made either in such other currency (at the option of the **Insurer** and if agreeable to the **Named Entity**) or, in United States of America dollars, at the rate of exchange published in The Wall Street Journal on the date the **Insurer's** obligation to pay such **Loss** is established (or if not published on such date the next publication date of The Wall Street Journal).

**4.  EXCLUSIONS**

The **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured**:

(a) arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which the **Insured** was not legally entitled;

(b) arising out of, based upon or attributable to payments to an **Insured** of any remuneration without the previous approval of the stockholders or members of an **Organization**, which payment without such previous approval shall be held to have been illegal;

(c) arising out of, based upon or attributable to the committing in fact of any deliberate criminal or deliberate fraudulent act by the **Insured**;

(d) alleging, arising out of, based upon or attributable to the facts alleged, or to the same or related **Wrongful Acts** alleged or contained in any **Claim** which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

(e) alleging, arising out of, based upon or attributable to, as of the **Continuity Date**, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation of which an **Insured** had notice, or alleging or derived from the same or essentially the same facts as alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

(f) with respect to any **Outside Entity Executive**, for any **Wrongful Act** occurring prior to the **Continuity Date** if any **Insured**, as of such **Continuity Date**, knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim** under this policy;

(g) alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an **Insured Person** serving in his or her capacity as an **Executive** or an **Employee** of any entity that is not an **Organization** or an **Outside Entity**, or by reason of his or her status as an **Executive** or an **Employee** of such other entity;

(h) for bodily injury (other than emotional distress or mental anguish), sickness, disease, or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof;

(i) which is brought by or on behalf of an **Organization** or any **Insured Person**, other than an **Employee** of an **Organization**; or which is brought by any security holder or member of an **Organization**, whether directly or derivatively, unless such security holder's or member's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any **Executive** of an **Organization** or any **Organization**; provided, however, this exclusion shall not apply to:

    (1) any **Claim** brought by an **Insured Person** in the form of a cross-claim or third-party claim for contribution or indemnity which is part of, and results directly from, a **Claim** that is covered by this policy;

    (2) any **Employment Practices Claim** brought by an **Insured Person**, other than an **Insured Person** who is or was a member of the Board of Directors (or equivalent governing body) of an **Organization**;

    (3) in any bankruptcy proceeding by or against an **Organization**, any **Claim** brought by the examiner, trustee, receiver, liquidator or rehabilitator (or any assignee thereof) of such **Organization**, if any;

    (4) any **Claim** brought by any past **Executive** of an **Organization** who has not served as a duly elected or appointed director, officer, trustee, governor, management committee member, member of the management board, General Counsel or Risk Manager (or equivalent position) of or consultant for an **Organization** for at least four (4) years prior to such **Claim** being first made against any person; or

    (5) any **Claim** brought by an **Executive** of an **Organization** formed and operating in a **Foreign Jurisdiction** against such **Organization** or any **Executive** thereof, provided that such **Claim** is brought and maintained outside the United States, Canada or any other common law country (including any territories thereof);

(j) for any **Wrongful Act** arising out of the **Insured Person** serving as an **Executive** of an **Outside Entity** if such **Claim** is brought by the **Outside Entity** or by any **Executive** thereof; or which is brought by any security holder of the **Outside Entity**, whether

directly or derivatively, unless such security holder's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of the **Outside Entity**, any **Executive** of the **Outside Entity** or an **Organization** or any **Executive** of an **Organization**;

(k) alleging, arising out of, based upon or attributable to, directly or indirectly: (i) the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**; or (ii) any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, (including but not limited to a **Claim** alleging damage to an **Organization** or its securities holders); provided, however, that this exclusion shall not apply to **Non–Indemnifiable Loss**, other than **Non–Indemnifiable Loss** constituting **Cleanup Costs**;

"**Cleanup Costs**" means expenses (including but not limited to legal and professional fees) incurred in testing for, monitoring, cleaning up, removing, containing, treating, neutralizing, detoxifying or assessing the effects of **Pollutants**.

(l) for emotional distress of any person, or for injury from libel, slander, defamation or disparagement, or for injury from a violation of a person's right of privacy; provided, however, this exclusion shall not apply to an **Employment Practices Claim**; and

(m) for violation(s) of any of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974 or amendments thereto, or any similar provisions of any state, local or foreign statutory or common law.

For the purpose of determining the applicability of the foregoing Exclusions 4(a) through 4(c) and Exclusion 4(f): (1) the facts pertaining to and knowledge possessed by any **Insured** shall not be imputed to any other **Insured Person**; and (2) only facts pertaining to and knowledge possessed by any past, present or future chairman of the board, president, chief executive officer, chief operating officer, chief financial officer or General Counsel (or equivalent position) of an **Organization** shall be imputed to an **Organization**.

This Clause 4, Exclusions, shall not be applicable to **Crisis Loss**.

5. **LIMIT OF LIABILITY (FOR ALL LOSS–INCLUDING DEFENSE COSTS)**

The **Limit of Liability** stated in Item 3 of the Declarations is the aggregate limit of the **Insurer's** liability for all **Loss**, under Coverages A, B, C and D combined, arising out of all **Claims** first made against each and every **Insured**, and all **Crisis Loss** occurring, during the **Policy Period** and the **Discovery Period** (if applicable). The **Limit of Liability** for the **Discovery Period** and the **CrisisFund**^SM shall be part of, and not in addition to, the **Limit of Liability** for the **Policy Period**. Further, a **Claim** which is made subsequent to the **Policy Period** or **Discovery Period** (if applicable) which pursuant to Clause 7(b) or 7(c) is considered made during the **Policy Period** or **Discovery Period** shall also be subject to the one aggregate **Limit of Liability** stated in Item 3 of the Declarations. The limit of the **Insurer's** liability for **Crisis Loss** and **Delisting Crisis Loss** arising from all **Crises** occurring during the **Policy Period**, in the aggregate, shall be the amounts set forth as the **CrisisFund**^SM. The **CrisisFund**^SM shall be the aggregate limit of the **Insurer's** liability for all **Crises** under this policy regardless of the number of **Crises** occurring during the **Policy Period**.

*Defense Costs are not payable by the Insurer in addition to the Limit of Liability. Defense Costs are part of Loss and as such are subject to the Limit of Liability for Loss.*

75011 (2/00)   *COPY*                                        8

## 6. RETENTION CLAUSE

For each **Claim**, the **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention amounts stated in Items 4(a), 4(b) and 4(c) of the Declarations, such Retention amounts to be borne by an **Organization** and/or the **Insured Person** and remain uninsured, with regard to all **Loss** other than **Non–Indemnifiable Loss**. The Retention amount specified in:

(i) Item 4(a) applies to **Defense Costs** that arise out of a **Securities Claim**;

(ii) Item 4(b) applies to **Loss** that arises out of an **Employment Practices Claim**; and

(iii) Item 4(c) applies to **Loss** that arises out of any **Claim** other than a **Securities Claim** or an **Employment Practices Claim**.

A single Retention amount shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or related **Wrongful Acts**.

In the event a **Claim** triggers more than one of the Retention amounts stated in Items 4(a), 4(b) and 4(c) of the Declarations, then, as to that **Claim**, the highest of such Retention amounts shall be deemed the Retention amount applicable to **Loss** (to which a Retention is applicable pursuant to the terms of this policy) arising from such **Claim**.

Further, with respect to all **Claims**, other than **Employment Practices Claims**, no Retention shall apply to **Loss** arising from such **Claims** and the **Insurer** shall reimburse **Defense Costs** otherwise covered hereunder and paid by the **Insured**, in the event of: (1) a determination of **No Liability** of each and every **Insured** against whom the same **Claim** or related **Claims** have been made; or (2) a dismissal or a stipulation to dismiss each and every **Insured** against whom the same **Claim** or related **Claims** have been made without prejudice and without the payment of any consideration by or on behalf of any **Insured**. However, in the case of (2) above, such reimbursement shall occur 90 days after the date of dismissal or stipulation as long as such **Claim** is not brought (or any other **Claim** which is subject to the same single retention by virtue of Clause 6 is not pending or brought) again within that time, and further subject to an undertaking by an **Organization** in a form acceptable to the **Insurer** that such reimbursement shall be paid back by such **Organization** to the **Insurer** in the event the **Claim** (or any other **Claim** which is subject to the same single retention by virtue of Clause 6) is brought after such 90–day period.

No Retention amount is applicable to **Crisis Loss** or **Non–Indemnifiable Loss**.

## 7. NOTICE/CLAIM REPORTING PROVISIONS

Notice hereunder shall be given in writing to the **Insurer** named in Item 8 of the Declarations at the address indicated in Item 8 of the Declarations. If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

(a) An **Organization** or an **Insured** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give written notice to the **Insurer** of a **Claim** made against an **Insured** or a **Crisis** as soon as practicable: (i) after the **Named Entity's** Risk Manager or General Counsel (or equivalent position) first becomes aware of the **Claim**; or (ii) the **Crisis** commences, but in all events no later than either:

(1) the end of the **Policy Period** or the **Discovery Period** (if applicable); or

(2) within 30 days after the end of the **Policy Period** or the **Discovery Period** (if applicable), as long as such **Claim** was first made against an **Insured** within the final 30 days of the **Policy Period** or the **Discovery Period** (if applicable).

(b) If written notice of a **Claim** has been given to the **Insurer** pursuant to Clause 7(a) above, then a **Claim** which is subsequently made against an **Insured** and reported to the **Insurer** arising out of, based upon or attributable to the facts alleged in the **Claim** for which such notice has been given, or alleging any **Wrongful Act** which is the same as or related to any **Wrongful Act** alleged in the **Claim** of which such notice has been given, shall be considered related to the first **Claim** and made at the time such notice was given.

(c) If during the **Policy Period** or during the **Discovery Period** (if applicable) an **Organization** or an **Insured** shall become aware of any circumstances which may reasonably be expected to give rise to a **Claim** being made against an **Insured** and shall give written notice to the **Insurer** of the circumstances, the **Wrongful Act** allegations anticipated and the reasons for anticipating such a **Claim**, with full particulars as to dates, persons and entities involved, then a **Claim** which is subsequently made against such **Insured** and reported to the **Insurer** alleging, arising out of, based upon or attributable to such circumstances or alleging any **Wrongful Act** which is the same as or related to any **Wrongful Act** alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstances was given.

## 8. DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)

Under Coverages A, B and C of this policy, except as hereinafter stated, the **Insurer** shall advance, excess of any applicable retention amount, covered **Defense Costs** no later than ninety (90) days after the receipt by the **Insurer** of such defense bills. Such advance payments by the **Insurer** shall be repaid to the **Insurer** by each and every **Insured** or **Organization**, severally according to their respective interests, in the event and to the extent that any such **Insured** or **Organization** shall not be entitled under this policy to payment of such **Loss**.

*The Insurer does not, however, under this policy, assume any duty to defend. The Insureds shall defend and contest any Claim made against them. The Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the prior written consent of the Insurer. Only those settlements, stipulated judgments and Defense Costs which have been consented to by the Insurer shall be recoverable as Loss under the terms of this policy. The Insurer's consent shall not be unreasonably withheld, provided that the Insurer shall be entitled to effectively associate in the defense, the prosecution and the negotiation of any settlement of any Claim that involves or appears reasonably likely to involve the Insurer.*

The **Insurer** shall have the right to effectively associate with each and every **Organization** and **Insured Person** in the defense and prosecution of any **Claim** that involves, or appears reasonably likely to involve, the **Insurer**, including, but not limited to, negotiating a settlement. Each and every **Organization** and **Insured Person** shall give the **Insurer** full cooperation and such information as it may reasonably require.

Notwithstanding any of the foregoing, if all **Insured** defendants are able to dispose of all **Claims** which are subject to one retention amount (inclusive of **Defense Costs**) for an amount not exceeding any applicable retention amount, then the **Insurer's** consent shall not be required for such disposition.

No **Organization** is covered in any respect under Coverage A or Coverage C. An **Organization** is covered, subject to the policy's terms, conditions and limitations only with respect to: (1) its indemnification of its **Insured Persons** under Coverage B(ii) as respects a **Claim** against such **Insured Persons**; and (2) under Coverage B(i) for a **Securities Claim**. Accordingly, the **Insurer** has no obligation under this policy for covered **Defense Costs**

incurred by, judgments against or settlements by an **Organization** arising out of a **Claim** made against an **Organization** other than a covered **Securities Claim**, or any obligation to pay **Loss** arising out of any legal liability that an **Organization** has to a claimant, except as respects a covered **Securities Claim** against such **Organization**.

With respect to: (i) **Defense Costs** jointly incurred by; (ii) any joint settlement entered into by; and/or (iii) any judgment of joint and several liability against any **Organization** and any **Insured** in connection with any **Claim** other than a **Securities Claim**, any such **Organiza-tion** and any such **Insured** and the **Insurer** agree to use their best efforts to determine a fair and proper allocation of the amounts as between any such **Organization**, any such **Insured** and the **Insurer**, taking into account the relative legal and financial exposures, and the relative benefits obtained by any such **Insured** and any such **Organization**. In the event that a determination as to the amount of **Defense Costs** to be advanced under the policy cannot be agreed to, then the **Insurer** shall advance **Defense Costs** excess of any applicable retention amount which the **Insurer** states to be fair and proper until a different amount shall be agreed upon or determined pursuant to the provisions of this policy and applicable law.

This Clause 8 shall not be applicable to **Crisis Loss**. Nevertheless the **Insurer** does not, under this policy, assume any duty to defend.

9. **PRE–AUTHORIZED SECURITIES DEFENSE ATTORNEYS**

Affixed as Appendix A hereto and made a part of this policy is a list of Panel Counsel law firms ("**Panel Counsel Firms**"). The list provides the **Insureds** with a choice of law firms from which a selection of legal counsel shall be made to conduct the defense of any **Securities Claim** made against such **Insureds**.

The **Insureds** shall select a **Panel Counsel Firm** to defend the **Securities Claim** made against the **Insureds** in the jurisdiction in which the **Securities Claim** is brought. In the event the **Claim** is brought in a jurisdiction not included on the list, the **Insureds** shall select a **Panel Counsel Firm** in the listed jurisdiction which is the nearest geographic jurisdiction to either where the **Securities Claim** is brought or where the corporate headquarters of the **Named Entity** is located. In such instance the **Insureds** also may, with the express prior written consent of the **Insurer**, which consent shall not be unreasonably withheld, select a non–**Panel Counsel Firm** in the jurisdiction in which the **Securities Claim** is brought to function as "local counsel" on the **Claim** to assist the **Panel Counsel Firm** which will function as "lead counsel" in conducting the defense of the **Securities Claim**.

With the express prior written consent of the **Insurer**, an **Insured** may select a **Panel Counsel Firm** different from that selected by another **Insured** defendant if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable. The list of **Panel Counsel Firms** may be amended from time to time by the **Insurer**. However, no firm shall be removed from the specific list attached to this policy during the **Policy Period**, without the consent of the **Named Entity**.

10. **DISCOVERY CLAUSE**

Except as indicated below, if the **Named Entity** shall cancel or the **Named Entity** or the **Insurer** shall refuse to renew this policy, the **Named Entity** shall have the right to a period of either one, two or three years following the effective date of such cancellation or nonrenewal (the "**Discovery Period**") upon payment of the respective "**Additional Premium Amount**" described below in which to give to the **Insurer** written notice pursuant to Clause 7(a) and 7(c) of the policy of: (i) **Claims** first made against an **Insured**; and (ii) circumstances of which an **Organization** or an **Insured** shall be come aware, in either

75011 (2/00)   *COPY*                    11

case during said **Discovery Period** and solely with respect to a **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by this policy.

The **Additional Premium Amount** for: (1) one year shall be no more than 75% of the **Full Annual Premium**; (2) two years shall be no more than 150% of the **Full Annual Premium**; and (3) three years shall be no more than 225% of the **Full Annual Premium**. As used herein, "**Full Annual Premium**" means the premium level in effect immediately prior to the end of the **Policy Period**.

Notwithstanding the first paragraph of Clause 5, if the **Named Entity** shall cancel or the **Insurer** or the **Named Entity** shall refuse to renew this policy, then the **Named Entity** shall also have the right to requestan offer from the **Insurer** of a **Discovery Period** (with respect to **Wrongful Acts** occurring prior to the end of the **Policy Period**) with an aggregate limit of liability applicable to **Claims** made against the **Insured** during such **Discovery Period** which is in addition to, and not part of, the applicable **Limit of Liability** set forth in Item 3 of the Declarations. The **Insurer** shall quote such a **Discovery Period** pursuant to such terms, conditions, exclusions and additional premium as it deems appropriate in its sole and absolute discretion.

In the event of a **Transaction** as defined in Clause 12(a), the **Named Entity** shall have the right to request an offer from the **Insurer** of a **Discovery Period** (with respect to **Wrongful Acts** occurring prior to the effective time of the **Transaction**). The **Insurer** shall offer such **Discovery Period** pursuant to such terms, conditions, exclusions and additional premium as the **Insurer** may reasonably decide. In the event of a **Transaction**, the right to a **Discovery Period** shall not otherwise exist except as indicated in this paragraph.

The **Discovery Period** is not cancelable and the additional premium charged shall be fully earned at inception. This Clause 10 shall not apply to any cancellation resulting from non-payment of premium. The rights contained in this Clause 10 shall terminate unless written notice of election of a **Discovery Period** together with any additional premium due is received by the **Insurer** no later than thirty (30) subsequent to the effective date of the cancellation, nonrenewal or **Transaction**.

## 11. CANCELLATION CLAUSE

This policy may be canceled by the **Named Entity** at any time only by mailing written prior notice to the **Insurer** or by surrender of this policy to the **Insurer** or its authorized agent. This policy may only be canceled by or on behalf of the **Insurer** in the event of non-payment of premium by the **Named Entity**. In the event of non-payment of premium by the **Named Entity**, the **Insurer** may cancel this policy by delivering to the **Named Entity** or by mailing to the **Named Entity**, by registered, certified, or other first class mail, at the **Named Entity's** address as shown in Item 1(a) of the Declarations, written notice stating when, not less than 15 days thereafter, the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice. The **Policy Period** terminates at the date and hour specified in such notice, or at the date and time of surrender. The **Insurer** shall have the right to the premium amount for the portion of the **Policy Period** during which the policy was in effect.

If this policy shall be canceled by the **Named Entity**, the **Insurer** shall retain the customary short rate proportion of the premium herein. If the period of limitation relating to the giving of notice as set forth in this Clause 11 is also set forth in any law controlling the construction thereof, then such period shall be deemed to be amended so as to be equal to the minimum period of limitation set forth in the controlling law.

75011 (2/00)     *COPY*                    12

## 12. ORGANIZATIONAL CHANGES

(a) If during the **Policy Period**:

    (1) the **Named Entity** shall consolidate with, merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert; or

    (2) any person or entity or group of persons or entities acting in concert shall acquire **Management Control** of the **Named Entity**;

(any of such events being a **"Transaction"**), then this policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective time of the **Transaction**, but there shall be no coverage afforded by any provision of this policy for any actual or alleged **Wrongful Act** occurring after the effective time of the **Transaction**. This policy may not be canceled after the effective time of the **Transaction** and the entire premium for this policy shall be deemed earned as of such time. The **Named Entity** shall also have the right to an offer by the **Insurer** of a **Discovery Period** described in the fourth paragraph of Clause 10 of this policy.

(b) Subsidiary *Additions:* **"Subsidiary"** also means any for-profit entity that is not formed as a partnership of which the **Named Entity** first had **Management Control** during the **Policy Period**, whether directly or indirectly through one or more other **Subsidiaries**, and:

    (1) whose assets total less than 25% of the total consolidated assets of each and every **Organization** as of the inception date of this policy; or

    (2) whose assets total 25% or more than the total consolidated assets of each and every **Organization** as of the inception date of this policy, but such entity shall be a **"Subsidiary"** only: (i) for a period of sixty (60) days from the date the **Named Entity** first had **Management Control** of such entity; or (ii) until the end of the **Policy Period**, which ever ends or occurs first (hereinafter **"Auto-Subsidiary Period"**);

provided that the **Named Entity** or any other **Insured** shall report such **Subsidiary** to the **Insurer**, in writing, prior to the end of the **Policy Period**.

The **Insurer** shall extend coverage for any **Subsidiary** described in 12(b)(2) above, and any **Insured Person** thereof, beyond its respective **Auto-Subsidiary Period** if during such **Auto-Subsidiary Period**, the **Named Entity** shall have provided the **Insurer** with full particulars of the new **Subsidiary** and agreed to any additional premium and amendment of the provisions of this policy required by the **Insurer** relating to such **Subsidiary**. Further, coverage as shall be afforded to any **Subsidiary** and any **Insured Person** thereof is conditioned upon the **Named Entity** paying when due any additional premium required by the **Insurer** relating to such **Subsidiary**.

(c) *Insured Persons* and *Outside Entity Executives:* Coverage will automatically apply to all new **Insured Persons** of and **Outside Entity Executives** of an **Organization** following the inception date of this policy.

(d) *Other Organizational Changes:* In all events, coverage as is afforded under this policy with respect to a **Claim** made against any **Organization** and/or any **Insured Person** thereof shall only apply for **Wrongful Acts** committed or allegedly committed after the effective time such **Organization** became an **Insured Person** and such **Insured Person** became an **Insured Person**, and prior to the effective time that such **Organization** ceases to be an **Organization** or such **Insured Person** ceases to be an **Insured Person**. An **Organization** ceases to be an **Organization** when the **Named Entity** no longer maintains **Management Control** of an **Organization** either directly or indirectly through one or more of its **Subsidiaries**.

75011 (2/00)   *COPY*                              13

### 13. SUBROGATION

In the event of any payment under this policy, the **Insurer** shall be subrogated to the extent of such payment to all of each and every **Organization's** and **Insured's** rights of recovery thereof, and each such **Organization** and **Insured** shall execute all papers required and shall do everything that may be necessary to secure such rights including the execution of any and all documents necessary to enable the **Insurer** effectively to bring suit in the name of each such **Organization** and each such **Insured**. In no event, however, shall the **Insurer** exercise its rights of subrogation against an **Insured** under this policy unless such **Insured** has been convicted of a deliberate criminal act, or been determined to have in fact committed a deliberate fraudulent act, or been determined to have in fact obtained any profit or advantage to which such **Insured** was not legally entitled.

### 14. OTHER INSURANCE AND INDEMNIFICATION

Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance, unless such other insurance is written only as specific excess insurance over the **Limit of Liability** provided by this policy. This policy shall specifically be excess of any other valid and collectible insurance pursuant to which any other insurer has a duty to defend a **Claim** for which this policy may be obligated to pay **Loss**.

In the event of a **Claim** made against an **Outside Entity Executive**, coverage as is afforded by this policy, whether under Coverage B(ii) or Coverage C, shall be specifically excess of: (1) any indemnification provided by an **Outside Entity**; and (2) any insurance coverage afforded to an **Outside Entity** or its **Executives** applicable to such **Claim**. Further, in the event such other **Outside Entity** insurance is provided by the **Insurer** or any other company of American International Group, Inc. (AIG) (or would be provided but for the application of the retention amount, exhaustion of the limit of liability or failure to submit a notice of a claim as required) then the **Insurer's** maximum aggregate **Limit of Liability** for all **Loss** under this policy, as respects any such **Claim**, shall be reduced by the amount of the limit of liability (as set forth on the Declarations) of the other AIG insurance provided to such **Outside Entity**.

### 15. NOTICE AND AUTHORITY

It is agreed that the **Named Entity** shall act on behalf of its **Subsidiaries** and each and every **Insured** with respect to the giving of notice of **Claim**, the giving and receiving of notice of cancellation, the payment of premiums and the receiving of any return premiums that may become due under th is policy, the receipt and acceptance of any endorsements issued to form a part of this policy and the exercising or declining of any right to a **Discovery Period**.

### 16. ASSIGNMENT

This policy and any and all rights hereunder are not assignable without the written consent of the **Insurer**.

### 17. ALTERNATIVE DISPUTE RESOLUTION PROCESS

It is hereby understood and agreed that all disputes or differences which may arise under or in connection with this policy, whether arising before or after termination of this policy, including any determination of the amount of **Loss**, shall be submitted to the alternative dispute resolution ("**ADR**") process set forth in this clause.

Either the **Insurer** or an **Insured** may elect the type of **ADR** process discussed below; provided, however, that such **Insured** shall have the right to reject the **Insurer's** choice of the type of **ADR** process at any time prior to its commencement, in which case such **Insured's** choice of **ADR** process shall control.

75011 (2/00)   *COPY*                                   14

The **Insurer** and each and every **Insured** agrees that there shall be two choices of **ADR** process: (1) non-binding mediation administered by the American Arbitration Association, in which the **Insurer** and any such **Insured** shall try in good faith to settle the dispute by mediation under or in accordance with its then-prevailing Commercial Mediation Rules; or (2) arbitration submitted to the American Arbitration Association in accordance with its then-prevailing Commercial Arbitration Rules, in which the arbitration panel shall consist of three disinterested individuals. In either mediation or arbitration, the mediator or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. The mediator or arbitrators shall also give due consideration to the general principles of the law of the state where the **Named Entity** is incorporated in the construction or interpretation of the provisions of this policy. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the arbitrators' award shall not include attorneys fees or other costs. In the event of mediation, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until the mediation shall have been terminated and at least 120 days shall have elapsed from the date of the termination of the mediation. In all events, each party shall share equally the expenses of the **ADR** process.

Either choice of **ADR** process may be commenced in New York, New York; Atlanta, Georgia; Chicago, Illinois; Denver, Colorado; or in the state indicated in Item 1(a) of the Declarations as the mailing address for the **Named Entity**. The **Named Entity** shall act on behalf of each and every **Insured** in deciding to proceed with an **ADR** process under this clause.

## 18. ACTION AGAINST INSURER

Except as provided in Clause 17 of the policy, no action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, or until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against such **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the **Insurer**.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the **Insurer** as a party to any action against any **Insured** or **Organization** to determine the **Insured's** liability, nor shall the **Insurer** be impleaded by any **Insured Person**, their spouse, any **Organization** or any legal representative of the foregoing.

## 19. BANKRUPTCY

Bankruptcy or insolvency of any **Organization** or any **Insured Person** shall not relieve the **Insurer** of any of its obligations hereunder.

It is further understood and agreed that the coverage provided under this policy is intended to protect and benefit the **Insured Persons**. Further, if a liquidation or reorganization proceeding is commenced by the **Named Entity** and/or any other **Organization** (whether voluntarily or involuntarily) under Title 11 of the United States Code (as amended), or any similar state, local or foreign law (collectively "**Bankruptcy Law**") then, in regard to a covered **Claim** under this policy, the **Insureds** hereby:

(a) waive and release any automatic stay or injunction to the extent it may apply in such proceeding to the proceeds of this policy under such **Bankruptcy Law**; and

(b) agree not to oppose or object to any efforts by the **Insurer** or any **Insured** to obtain relief from any stay or injunction applicable to the proceeds of this policy as a result of the commencement of such liquidation or reorganization proceeding.

75011 (2/00)   *COPY*                              15

## 20. SPOUSAL AND LEGAL REPRESENTATIVE EXTENSION

If a **Claim** against an **Insured Person** includes a **Claim** against: (i) the lawful spouse of such **Insured Person**; or (ii) a property interest of such spouse, and such **Claim** arises from any actual or alleged **Wrongful Act** of such **Insured Person**, this policy shall cover **Loss** arising from the **Claim** made against that spouse or the property of that spouse to the extent that such **Loss** does not arise from a **Claim** for any actual or alleged act, error or omission of such spouse. This policy shall cover **Loss** arising from a **Claim** made against the estates, heirs, or legal representatives of any deceased **Insured Person**, and the legal representatives of any **Insured Person**, in the event of incompetency, insolvency or bankruptcy, who was an **Insured Person** at the time the **Wrongful Acts** upon which such **Claim** is based were committed.

## 21. RENEWAL APPLICATION PROCEDURE

If this policy is a renewal of, a replacement of, or succeeds in time any policy (providing similar coverage) issued by the **Insurer**, or any of its affiliates, then in granting coverage under this policy it is agreed that the **Insurer** has relied upon the **Application** as being accurate and complete in underwriting this policy. This Clause 21 together with the **Application** constitute the complete **Application** that is the basis of this policy and form a part hereof, and is material to the risk assumed by the **Insurer**. No written renewal application form need be completed by the **Named Entity** in order to receive a renewal quote from the **Insurer**, although the **Insurer** reserves the right to require specific information upon renewal.

## 22. ORDER OF PAYMENTS

In the event of **Loss** arising from a covered **Claim** for which payment is due under the provisions of this policy, then the **Insurer** shall in all events:

(a) first, pay **Loss** for which coverage is provided under Coverage A and Coverage C of this policy; then

(b) only after payment of **Loss** has been made pursuant to Clause 22(a) above, with respect to whatever remaining amount of the **Limit of Liability** is available after such payment, at the written request of the chief executive officer of the **Named Entity**, either pay or withhold payment of such other **Loss** for which coverage is provided under Coverage B(ii) of this policy; and then

(c) only after payment of **Loss** has been made pursuant to Clause 22(a) and Clause 22(b) above, with respect to whatever remaining amount of the **Limit of Liability** is available after such payment, at the written request of the chief executive officer of the **Named Entity**, either pay or withhold payment of such other **Loss** for which coverage is provided under Coverages B(i) and D of this policy.

In the event the **Insurer** withholds payment pursuant to Clause 22(b) and/or Clause 22(c) above, then the **Insurer** shall at such time and in such manner as shall be set forth in written instructions of the chief executive officer of the **Named Entity** remit such payment to an **Organization** or directly to or on behalf of an **Insured Person**.

The bankruptcy or insolvency of any **Organization** or any **Insured Person** shall not relieve the **Insurer** of any of its obligations to prioritize payment of covered **Loss** under this policy pursuant to this Clause 22.

## 23. HEADINGS

The descriptions in the headings of this policy are solely for convenience, and form no part of the terms and conditions of coverage.

75011 (2/00)   *COPY*                               16

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

**ALASKA**

**Davis Wright Tremaine**
*David W. Oesting*
701 W. Eighth Avenue, Suite 800, Anchorage, AK 99501-3468 (907)257-5300

**Foster Pepper & Shefelman**
*Tim J. Filer*
1007 W. Third Ave., Ste. 100, Anchorage, AK 99501 (907)222-7100

**CALIFORNIA**

**Bingham McCutchen, LLP**
*David M. Balabanian / Dale E. Barnes*
3 Embarcadero Center, San Francisco, CA 94111 (415)393-2626

*Mary T. Huser*
1900 University Avenue, East Palo Alto, CA 94303-1212 (650)849-4914

*Susan L. Hoffman*
355 South Grand Avenue, Los Angeles, CA 90071-1560 (213)680-6416

**Cooley Godward Kronish, LLP**
*William E. Grauer (858)550-6050 / Philip C. Tencer (858)550-6068 / Koji F. Fukumura (858)550-6008*
4401 Eastgate Mall, San Diego, CA 92121-1909 (858)550-6000

*Stephen C. Neal (650)843-5182 / William S. Freeman (650)843-5037 / John C. Dwyer (650)843-5228*
3175 Hanover Street, Palo Alto, CA 94304-1130 (650)843-5000

*Paul A. Renne (415)693-2073 / John C. Dwyer (650)843-5228*
One Maritime Plaza, 20th Floor, San Francisco, CA 94111-3580 (415)693-2000

**Davis Wright Tremaine**
*Martin Fineman*
One Embarcadero Center, Suite 600, San Francisco, CA 94111-3834 (415)276-6500

**DLA Piper Rudnick Gray Cary US, LLP**
*Shirli Fabbri Weiss / David Priebe*
2000 University Avenue, East Palo Alto, CA 94303 (650)833-2000

*Shirli Fabbri Weiss / Robert Brownlie*
4365 Executive Drive, Suite 1100, San Diego, CA 92121 (858)677-1400

**Fenwick & West, LLP**
*Susan S. Muck*
Embarcadero Center West, 275 Battery Street, San Francisco, CA 94111 (415)875-2300

**Gibson, Dunn & Crutcher, LLP**
*Dean J. Kitchens*
333 S. Grand Avenue, Los Angeles, CA 90071-3197 (213)229-7543

Revised (10/06)                          Page 1

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

**COPY**

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

Jonathan C. Dickey
1881 Page Mill Road, Palo Alto, CA 94304 (650)849-5300

Wayne W. Smith / Meryl L. Young
Jamboree Center, 4 Park Plaza, Suite 1400, Irvine, CA 92614-8557 (949)451-3800

**Heller, Ehrman, White & McAuliffe**
Douglas M. Schwab / M. Laurence Popofsky / Michael J. Shepard
333 Bush Street, San Francisco, CA 94104-2878 (415)772-6000

Darryl L. Snider / Jerry L. Marks
601 South Figueroa Street, 40th Floor, Los Angeles, CA 90017-5758 (213)689-0200

Norman J. Blears
275 Middlefield Road, Menlo Park, CA 94025-3506 (650)324-7000

David E. Kleinfeld
4350 La Jolla Village Drive, 7th Floor, San Diego, CA 92122-1246 (858)450-8400

**Irell & Manella, LLP**
David Siegel / Daniel P. Lefler
1800 Avenue of the Stars, Suite 900, Los Angeles, CA 90067-4276 (310)277-1010

**Katten Muchin Rosenman, LLP**
Bruce Vanyo (310)788-4401
2029 Century Park, East, Suite 2600, Los Angeles, CA 90067-3012 (310)788-4400

**Latham & Watkins**
Paul H. Dawes (650)463-2626 / John C. Tang (650)328-4600
135 Commonwealth Drive, Menlo Park, CA 94025-1105 (650)328-4600

Miles N. Ruthberg (213)891-8754 / Pamela S. Palmer (213)891-8435 / Mark W. Rappel (213)891-8156 /
Peter W. Devereaux (213)891-8622 / Charles W. Cox (213)891-8178 / Jamie L. Wine (213)485-1234
633 West Fifth Street, Suite 4000, Los Angeles, CA 90071 (213)485-1234

Michael J. Weaver (619)238-3012 / Peter H. Benzian (619)236-1234 / Julia E. Parry (619)236-1234
600 West Broadway, Suite 1800, San Diego, CA 92101-3375 (619)236-1234

Paul H. Dawes (650)463-2626 / Peter A. Wald (415)395-8006 / Darius C. Ogloza (415)391-0600 / James
K. Lynch (415)395-8265 / Michele F. Kyrouz
505 Montgomery Street, Suite 1900, San Francisco, CA 94111-2562 (415)391-0600

Miles N. Ruthberg (213)891-8754 / Peter W. Devereaux (213)891-8622 / Pamela S. Palmer
(213)891-8435 / Jon D. Anderson (714)755-8217 / Virginia S. Grogan (714)755-8206
650 Town Center Drive, 20th Floor, Costa Mesa, CA 92626 (714)540-1235

**Morgan, Lewis & Bockius, LLP**
Franklin Brockway Gowdy / Vincent Paul Finigan, Jr. / Kent M. Roger
One Market, Spear Street Tower, San Francisco, CA 94105 (415)442-1000

John F. Hartigan / Richard S. Odom
300 South Grand Avenue, 22nd Floor, Los Angeles, CA 90071-3132 (213)612-2500

Revised (10/06)                          Page 2

Please visit our website at **www.briefbase.com** to view additional firms that may have been
added to the panel counsel list since this policy was issued.

**COPY**

## APPENDIX A
### SECURITIES CLAIMS PANEL COUNSEL LIST

**Morrison & Foerster, LLP**
*Melvin R. Goldman (415)268-7311 / Paul T. Friedman (415)268-7444 / Jordan D. Eth (415)268-7176 / Darryl P. Rains (650)813-5866*
425 Market Street, San Francisco, CA 94105 (415)268-7000

*Robert S. Stern (213)892-5484 / Mark R. McDonald (213)892-5810*
555 West 5th Street, Suite 3500, Los Angeles, CA 90013 (213)892-5200

**Munger, Tolles & Olson**
*Dennis L. Kinnaird (213)683-9264 / John W. Spiegel (213)683-9152 / George M. Garvey (213)683-9153*
355 South Grand Avenue, 35th Floor, Los Angeles, CA 90071-1560 (213)683-9100

**O'Melveny & Myers, LLP**
*Seth Aronson (213)430-7486 / Amy J. Longo (213)430-8351*
400 South Hope St., 15th Floor, Los Angeles, CA 90071-2899 (213)430-6000

*Michael G. Yoder (949)823-7936 / Phillip R. Kaplan*
610 Newport Center, 17th Floor, Newport Beach, CA 92660 (949)760-9600

*Daniel H. Bookin (415)984-8786 / Michael F. Tubach*
275 Battery Street, San Francisco, CA 94111 (415)984-8700

**Orrick Herrington & Sutcliffe, LLP**
*W. Reece Bader*
1000 Marsh Road, Menlo Park, CA 94025 (650)614-7400

*William F. Alderman*
Old Federal Reserve Bank Building, 400 Sansome Street, San Francisco, CA 94111
(415)392-1122

**Paul, Hastings, Janofsky & Walker, LLP**
*Howard M. Privette / William F. Sullivan / John A. Reding / Peter M. Stone / Christopher H. McGrath*
515 South Flower Street, Twenty-Fifth Floor, Los Angeles, CA 90071 (213)683-6000

**Pillsbury Winthrop Shaw Pittman, LLP**
*Bruce A. Ericson (415)983-1560*
50 Fremont Street, San Francisco, CA 94105 (415)983-1000

*Richard M. Segal*
101 West Broadway, Suite 1800 (SBC Building), San Diego, CA 92101 (619)234-5000

*Robert L. Wallan*
725 South Figueroa Street, Suite 2800, Los Angeles, CA 90017 (213)488-7100

*Bruce A. Ericson (415)983-1560*
2475 Hanover Street, Palo Alto, CA 94304-1114 (650)233-4500

**Shearman & Sterling**
*Jeffrey S. Facter (415)616-1205 / Stephen D. Hibbard (415)616-1174*
555 California Street, San Francisco, CA 94104 (415)616-1100

Revised (10/06)                    Page 3

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

*COPY*

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

**Simpson Thacher & Bartlett**
*Chet Kronenberg / Seth A. Ribner*
1999 Avenue of the Stars, 29th Floor, Los Angeles, CA 90067 (310)407-7500

*George M. Newcombe / James G. Kreissman*
3373 Hillview Avenue, Palo Alto, CA 94304 (650)251-5000

**Skadden, Arps, Slate, Meagher & Flom, LLP and Affiliates**
*James E. Lyons (415)984-6470*
Four Embarcadero Center, San Francisco, CA 94111 (415)984-6400

**Sullivan & Cromwell**
*Robert A. Sacks*
1888 Century Park, East, Los Angeles, CA 90067-1725 (310)712-6600

**Wilson, Sonsini, Goodrich & Rosati**
*Boris Feldman / Steven M. Schatz / Jerome Biro (650)320-4858 / Nina Locker (650)320-4888 / Douglas Clark (650)320-4824 / Keith Eggleton (650)320-4893*
650 Page Mill Road, Palo Alto, CA 94304-1050 (650)493-9300

**COLORADO**

**Cooley Godward Kronish, LLP**
*James E. Nesland*
380 Interlocken Crescent, Suite 900, Broomfield, CO 80021-8023 (720)566-4000

**Gibson, Dunn & Crutcher, LLP**
*George Curtis*
1801 California Street, Suite 4100, Denver, CO 80202 (303)298-5700

**Hogan & Hartson**
*Daniel F. Shea*
One Tabor Center, 1200 Seventeenth St., Suite 1500, Denver, CO 80202 (303)899-7300

**DELAWARE**

**Blank Rome, LLP**
*Thomas P. Preston / Neal C. Belgam*
Chase Manhattan Centre, 1201 Market Street, Suite 800, Wilmington, DE 19801 (302)425-6473

**Wolf, Block, Schorr and Solis-Cohen, LLP**
*Barry Klayman*
Wilmington Trust Center, 1100 N. Market Street, Suite 1001, Wilmington, DE 19801
(302)777-5860

**DISTRICT OF COLUMBIA**

**Arnold & Porter**
*Scott B. Schreiber (202)942-5672*
555 Twelfth Street, N.W., Washington, DC 20004-1206 (202)942-5000

Revised (10/06)                              Page 4

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

*COPY*

## APPENDIX A
### SECURITIES CLAIMS PANEL COUNSEL LIST

**Cahill Gordon & Reindel**
*Donald J. Mulvihill*
1990 K Street, N.W., Suite 950, Washington, DC 20006 (202)862-8900

**DLA Piper Rudnick Gray Cary US, LLP**
*David Clarke, Jr. (202)861-6300 / Robert J. Mathias (410)580-4209 / James D. Mathias / Mark Muedeking (202)861-3900 / Deborah R. Meshulam (202)861-6470*
1200 Nineteenth Street, NW, Washington, DC 20036-2412 (202)861-3900

**Fulbright & Jaworski, LLP**
*Stephen M. McNabb*
Market Square, 801 Pennsylvania Ave., NW, Washington, DC 20004-2623 (202)662-0200

**Gibson, Dunn & Crutcher, LLP**
*F. Joseph Warin / John C. Millian*
1050 Connecticut Ave., N.W., Washington, DC 20036-5306 (202)955-8500

**Greenberg Traurig, LLP**
*Joe R. Reeder*
800 Connecticut Avenue, NW, Suite 500, Washington, DC 20006 (202)331-3100

**Hogan & Hartson**
*Ty Cobb*
555 Thirteenth Street, NW, Washington, DC 20004 (202)637-5600

**Latham & Watkins**
*Laurie B. Smilan (703)456-5220 / Michele E. Rose (703)456-5225 / William R. Baker, III (202)637-1001 / Everett C. (Kip) Johnson, Jr. (202)637-2260 / Christian Word (703)456-5226 .*
555 Eleventh Street, NW, Suite 1000, Washington, DC 20004-1304 (202)637-2200

**LeBoeuf, Lamb, Greene & MacRae, LLP**
*Ralph C. Ferrara (202)986-8020*
1875 Connecticut Avenue, NW, Suite 1200, Washington, DC 20009-5715 (202)986-8000

**O'Melveny & Myers, LLP**
*Jeffrey Kilduff (202)383-5383*
1625 Eye Street, NW, Washington, DC 20006 (202)383-5300

**Patton Boggs, LLP**
*Ronald S. Liebman*
2550 M Street, N.W., Washington, DC 20037 (202)457-6000

**Shearman & Sterling**
*Jonathan L. Greenblatt (202)508-8070 / Thomas S. Martin (202)508-8040*
801 Pennsylvania Ave., N.W., Washington, DC 20004-2604 (202)508-8000

**Sidley Austin Brown & Wood, LLP**
*Thomas C. Green (202)736-8069 / Mark D. Hopson (202)736-8188 / Michael D. Warden (202)736-8080*
1501 K Street, N.W., Washington, DC 20005 (202)736-8000

**Sullivan & Cromwell**
*Daryl A. Libow / Margaret K. Pfeiffer*
1701 Pennsylvania Avenue, N.W., Washington, DC 20006-5805 (202)956-7500

Revised (10/06)                    Page 5

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

**COPY**

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

**Williams & Connolly, LLP**
*John K. Villa*
725 Twelfth Street, N.W., Washington, DC 20005 (202)434-5000

**Willkie Farr & Gallagher**
*Kevin B. Clark (202)303-1105*
1875 K Street, N.W., Washington, DC 20006-1238 (202)303-1000

**WilmerHale**
*Charles A. Davidow*
2445 M Street, N.W., Washington, DC 20037 (202)663-6000

**FLORIDA**

**Akerman Senterfitt & Eidson, PA**
*Brian P. Miller (305)982-5626*
SunTrust International Center, 28th Floor, Miami, FL 33131 (305)374-5600

*J. Thomas Cardwell*
Citrus Center, 17th Floor, 255 South Orange Ave., Orlando, FL 32801 (407)843-7860

**Carlton Fields**
*Steven J. Brodie (305)539-7302 / Nancy H. Henry*
4000 International Place, 100 S.E. 2nd Street, Suite 4000, Miami, FL 33131 (305)530-0050

*Gary L. Sasso*
One Progress Plaza, 200 Central Avenue, Suite 2300, St. Petersburg, FL 33701-4352
(727)821-7000

*Steven J. Brodie (305)539-7302*
4221 West Boy Scout Boulevard, 10th Floor, Tampa, FL 33607 (813)223-7000

**Greenberg Traurig, LLP**
*Bradford D. Kaufman*
777 South Flagler Drive, Suite 300, East, West Palm Beach, FL 33401 (561)650-7900

*Hilarie Bass, Esq.*
1221 Brickell Avenue, Miami, FL 33131 (305)579-0500

**Holland & Knight, LLP**
*Tracy A. Nichols / Mitchell Eliot Herr / Gregory A. Baldwin / Louise Brais*
701 Brickell Avenue, Suite 3000, Miami, FL 33131 (305)374-8500

*Tracy A. Nichols / George E. Schulz, Jr.*
50 North Laura Street, Suite 3900, Jacksonville, FL 32202 (904)353-2000

*Tracy A. Nichols / Michael L. Chapman*
100 North Tampa Street, Suite 4100, Tampa, FL 33602 (813)227-8500

*Robert R. Feagin, III / Elizabeth L. Bevington*
315 South Calhoun Street, Suite 600, Tallahassee, FL 32301 (850)224-7000

Revised (10/06)                    Page 6

Please visit our website at **www.briefbase.com** to view additional firms that may have been
added to the panel counsel list since this policy was issued.

**COPY**

## APPENDIX A
### SECURITIES CLAIMS PANEL COUNSEL LIST

Tracy A. Nichols / Scott Newman
625 North Flagler Drive, Suite 700, West Palm Beach, FL 33401 (561)833-2000

William Wilson
200 South Orange Avenue, Suite 2600, Orlando, FL 32801 (407)425-8500

**McGuireWoods, LLP**
David M. Wells / Stephen D. Busch (804)775-4378
Bank of America Tower, 50 North Laura Street, Jacksonville, FL 32202 (904)798-3200

**Squire Sanders & Dempsey, LLP**
Lewis F. Murphy (305)577-2957 / Wendy Leavit (305)577-2894
200 South Biscayne Boulevard, Suite 4000, Miami, FL 33131-2398 (305)577-7000

**White & Case, LLP**
Charles C. Kline, Esq.
Wachovia Financial Center, 200 S. Biscayne Blvd., Suite 4900, Miami, FL 33131-2352
(305)371-2700

**GEORGIA**

**Alston & Bird, LLP**
Peter Q. Bassett (404)881-7343 / Todd R. David (404)881-7357
One Atlantic Center, 1201 West Peachtree Street, Atlanta, GA 30309-3424 (404)881-7000

**King & Spalding**
M. Robert Thornton / Michael R. Smith
1188 Peachtree Street, NE, Atlanta, GA 30309 (404)572-4600

**Paul, Hastings, Janofsky & Walker, LLP**
J. Allen Maines
600 Peachtree Street, N.E., Twenty-Fourth Floor, Atlanta, GA 30308-2222 (404)815-2400

**Smith, Gambrell & Russell, LLP**
John G. Despriet
Promenade II, Suite 3100, 1230 Peachtree Rd., N.E, Atlanta, GA 30309-3592 (404)815-3730

**Womble, Carlyle, Sandridge & Rice**
Robert R. Ambler, Jr. (404)879-2424 / Nisbet S. Kendrick (404)888-7488
One Atlantic Center, 1201 West Peachtree, Suite 3500, Atlanta, GA 30309 (404)872-7000

**ILLINOIS**

**DLA Piper Rudnick Gray Cary US, LLP**
Samuel B. Isaacson / Michael S. Poulos
203 North LaSalle Street, Suite 1800, Chicago, IL 60601-1293 (312)368-4000

**Katten Muchin Rosenman, LLP**
David H. Kistenbroker / Pamela G. Smith / Leah J. Domitrovic / Steven L. Bashwiner / Mary Ellen
Hennessy / Bonita L. Stone
525 W. Monroe Street, Suite 1600, Chicago, IL 60661-3693 (312)902-5200

Revised (10/06)                    Page 7

Please visit our website at **www.briefbase.com** to view additional firms that may have been
added to the panel counsel list since this policy was issued.

*COPY*

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**Kirkland & Ellis**
*Robert J. Kopecky*
200 East Randolph Drive, Chicago, IL 60601 (312)861-2000

**Sidley Austin Brown & Wood, LLP**
*Hillie R. Sheppard / Eugene A. Schoon / Walter C. Carlson*
Bank One Plaza, 10 South Dearborn Street, Chicago, IL 60603 (312)853-7734

**Sonnenschein, Nath & Rosenthal**
*Christopher Q. King*
8000 Sears Tower, Chicago, IL 60606 (312)876-8224

**MARYLAND**

**DLA Piper Rudnick Gray Cary US, LLP**
*Mark Muedeking (410)580-3000*
6225 Smith Avenue, Baltimore, MD 21209 (410)580-3000

**MASSACHUSETTS**

**Bingham McCutchen, LLP**
*Jordan D. Hershman*
150 Federal Street, Boston, MA 02110-1726 (617)951-8000

**Edwards Angell Palmer & Dodge, LLP**
*John D. Hughes*
101 Federal Street, Boston, MA 02110-1800 (617)951-3373

**Foley Hoag, LLP**
*Nicholas C. Theodorou (617)832-1163 / Lisa C. Wood (617)832-1117*
Seaport World Trade Center, West, 155 Seaport Boulevard, Boston, MA 02210-2600
(617)832-1000

**Goodwin Procter, LLP**
*Stephen D. Poss / Brian E. Pastuszenski / R. Todd Cronan / James S. Dittmar / Carl E. Metzger*
Exchange Place, 53 State Street, Boston, MA 02109-2881 (617)570-1000

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, PC**
*Peter M. Saparoff / Patrick J. Sharkey*
One Financial Center, Boston, MA 02111 (617)542-6000

**Ropes & Gray**
*John D. Donovan, Jr.*
One International Place, Boston, MA 02110-2624 (617)951-7566

**Skadden, Arps, Slate, Meagher & Flom, LLP and Affiliates**
*Thomas J. Dougherty*
One Beacon Street, Boston, MA 02108 (617)573-4820

**WilmerHale**
*Jeffrey B. Rudman / William H. Paine / Andrea J. Robinson*
60 State Street, Boston, MA 02109 (617)526-6000

Revised (10/06)                    Page 8

Please visit our website at **www.briefbase.com** to view additional firms that may have been
added to the panel counsel list since this policy was issued.

*COPY*

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**MINNESOTA**

**Dorsey & Whitney, LLP**
*Brian E. Palmer / Edward J. Pluimer / J. Jackson / Peter W. Carter / Roger J. Magnuson*
50 South Sixth Street, Suite #1500, Minneapolis, MN 55402-1498 (612)340-2600

**Faegre & Benson, LLP**
*Robert L. Schnell / Thomas L. Kimer*
90 South Seventh Street, Minneapolis, MN 55402-3901 (612)336-3000

**Winthrop & Weinstine, PA**
*David P. Pearson (612)604-6692 / Thomas H. Boyd*
Suite 3500, 225 South 6th Street, Minneapolis, MN 55402-4629 (612)604-6400

**NEW YORK**

**Arnold & Porter**
*Kent A. Yalowitz / Scott B. Schreiber (202)942-5672*
399 Park Avenue, New York, NY 10022-4690 (212)715-1000

**Blank Rome, LLP**
*Robert J. Mittman (212)885-5555*
The Chrysler Building, 405 Lexington Avenue, New York, NY 10174 (212)885-5555

**Cadwalader, Wickersham & Taft**
*Gregory A. Markel / Howard R. Hawkins, Jr. / Jonathan M. Hoff*
One World Financial Center, New York, NY 10281 (212)504-6000

**Cahill Gordon & Reindel**
*Charles A. Gilman / Immanuel Kohn / Thomas J. Kavaler*
Eighty Pine Street, New York, NY 10005 (212)701-3000

**Clifford Chance US, LLP**
*James B. Weidner / John K. Carroll / Mark Holland*
31 West 52nd Street, New York, NY 10019-6131 (212)878-8000

**Cravath, Swaine & Moore**
*Evan R. Chesler / Francis P. Barron / Julie A. North / Keith R. Hummel / Paul C. Saunders / Peter T. Barbur / Richard W. Clary / Robert H. Baron / Ronald S. Rolfe / Rory O. Millson / Thomas G. Rafferty*
Worldwide Plaza, 825 Eighth Avenue, New York, NY 10019-7475 (212)474-1000

**DLA Piper Rudnick Gray Cary US, LLP**
*Joseph G. Finnerty, III / Keara M. Gordon / David E. Nachman / John J. Clarke*
1251 Avenue of the Americas, New York, NY 10020-1104 (212)835-6000

**Fried, Frank, Harris, Shriver & Jacobson**
*William G. McGuinness / Alexander R. Sussman / Debra M. Torres / Douglas H. Flaum / John A. Borek*
One New York Plaza, New York, NY 10004 (212)859-8000

**Fulbright & Jaworski, LLP**
*Robert D. Owen*
666 Fifth Avenue, New York, NY 10103-3198 (212)318-3000

Revised (10/06)                              Page 9

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

*COPY*

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**Gibson, Dunn & Crutcher, LLP**
*Wesley G. Howell / Robert F. Serio / Mitchell A. Karlan (212)351-3827*
200 Park Avenue, New York, NY 10166-0193 (212)351-4000

**Greenberg Traurig, LLP**
*Robert A. Horowitz / Brian S. Cousin (212)801-9200*
885 Third Avenue, 21st Floor, New York, NY 10022 (212)801-3134

**Katten Muchin Rosenman, LLP**
*David H. Kistenbroker / Robert W. Gottlieb / Joel W. Sternman*
575 Madison Avenue, New York, NY 10022-2585 (212)940-8800

**Kaye, Scholer, Fierman, Hays & Handler**
*Fredric W. Yerman*
425 Park Avenue, New York, NY 10022 (212)836-8663

**Kirkland & Ellis**
*Yosef J. Riemer*
Citicorp Center, 153 East 53rd Street, New York, NY 10022-4675 (212)446-4800

**Kramer Levin Naftalis & Frankel, LLP**
*Gary P. Naftalis / Alan R. Friedman / Robert N. Holtzman / Jonathan M. Wagner*
1177 Avenue of the Americas, New York, NY 10036 (212)715-9100

**Mayer, Brown Rowe & Maw**
*Richard A. Spehr / Steven Wolowitz*
1675 Broadway, New York, NY 10019 (212)506-2500

**Milbank, Tweed, Hadley & McCloy**
*Michael L. Hirschfeld / Scott A. Edelman*
1 Chase Manhattan Plaza, New York, NY 10005 (212)530-5149

**Morgan, Lewis & Bockius, LLP**
*Leslie Caldwell / Stuart M. Sarnoff*
101 Park Avenue, New York, NY 10178-0060 (212)309-6000

**Morrison & Foerster, LLP**
*Anthony M. Radice (212)468-8020 / Jack C. Auspitz (212)468-8046*
1290 Avenue of the Americas, New York, NY 10104 (212)468-8000

**Paul, Hastings, Janofsky & Walker, LLP**
*Barry Sher / James D. Wareham*
Park Avenue Tower, 75 E. 55th Street, New York, NY 10022 (212)318-6000

**Paul, Weiss, Rifkind, Wharton & Garrison**
*Daniel J. Beller / Martin Flumenbaum / Claudia Hammerman / Brad S. Karp / Daniel J. Kramer / Mark F. Pomerantz / Richard A. Rosen*
1285 Avenue of the Americas, New York, NY 10019-6064 (212)373-3000

**Proskauer Rose, LLP**
*Gregg M. Mashberg*
1585 Broadway, New York, NY 10036-8299 (212)969-3000

Revised (10/06)                    Page 10

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

*COPY*

**APPENDIX A**
## SECURITIES CLAIMS PANEL COUNSEL LIST

**Schulte Roth & Zabel, LLP**
*Betty Santangelo / Howard O. Godnick / Irwin J. Sugarman / Robert M. Abrahams*
919 Third Avenue, New York, NY 10022 (212)756-2000

**Shearman & Sterling**
*Jeremy G. Epstein (212)848-4169 / Steven F. Molo (212)848-7456 / Brian H. Polovoy (212)848-4703 / Stuart J. Baskin (212)848-4974*
599 Lexington Avenue, New York, NY 10022 (212)848-8000

**Sidley Austin Brown & Wood, LLP**
*Theodore N. Miller (213)896-6646 / Barry W. Rashkover / Steven M. Bierman / Robert Pietrzak*
787 Seventh Avenue, New York, NY 10019 (212)839-5300

**Simpson Thacher & Bartlett**
*Bruce D. Angiolillo / Michael J. Chepiga / Paul C. Curnin / Roy L. Reardon*
425 Lexington Avenue, New York, NY 10017 (212)455-2000

**Skadden, Arps, Slate, Meagher & Flom, LLP and Affiliates**
*Jonathan J. Lerner*
Four Times Square, New York, NY 10036 (212)735-2550

**Stroock & Stroock & Lavan, LLP**
*Laurence Greenwald / Melvin A. Brosterman / Robert Lewin*
180 Maiden Lane, New York, NY 10038 (212)806-5400

**Sullivan & Cromwell**
*D. Stuart Meiklejohn / Gandolfo V. DiBlasi / John L. Hardiman / John L. Warden / Philip L. Graham, Jr. / Richard H. Klapper*
125 Broad Street, New York, NY 10004-2498 (212)558-4000

**Wachtell, Lipton, Rosen & Katz**
*Paul Vizcarrondo (212)403-1208 / Ted Mirvis*
51 W. 52nd Street, 29th Floor, New York, NY 10019 (212)403-1000

**Weil, Gotshal & Manges, LLP**
*Greg A. Danilow / Irwin H. Warren / Joseph Allerhand / Jonathan D. Polkes (212)310-8881*
767 Fifth Avenue, New York, NY 10153 (212)310-8000

**Willkie Farr & Gallagher**
*Michael R. Young / Richard L. Posen / Stephen W. Greiner*
787 Seventh Avenue, New York, NY 10019-6099 (212)728-8000

**WilmerHale**
*Peter Vigeland / Robert B. McCaw*
520 Madison Ave., New York, NY 10022 (212)230-8800

**OHIO**

**Jones, Day, Reavis & Pogue**
*John M. Newman, Jr. / John W. Edwards, II*
North Point, 901 Lakeside Avenue, Cleveland, OH 44114 (216)586-3939

Revised (10/06)                          Page 11

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

*COPY*

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**OREGON**

**Davis Wright Tremaine**
*John F. McGrory*
2300 First Interstate Tower, 1300 S.W. Fifth Avenue, Portland, OR 97201 (503)241-2300

**Foster Pepper & Shefelman**
*Tim J. Filer / Roger D. Mellem*
101 S.W. Main Street, 15th Floor, Portland, OR 97204-3223 (503)221-0607

**Lane Powell Spears Lubersky, LLP**
*Milo Petranovich / Robert E. Maloney*
601 S.W. Second Avenue, Suite 2100, Portland, OR 97204 (503)778-2100

**Stoel Rives, LLP**
*Lois O. Rosenbaum*
900 SW 5th Avenue, Suite 2600, Portland, OR 97204 (503)224-3380

**PENNSYLVANIA**

**Blank Rome, LLP**
*Ian M. Comisky / Alan J. Hoffman*
One Logan Square, Philadelphia, PA 19103 (215)569-5500

**Buchanan Ingersoll & Rooney, PC**
*John R. Leathers*
One Oxford Centre, 20th Floor, 301 Grant Street, Pittsburgh, PA 15219-8800 (412)562-8800

**Dechert, LLP**
*Jeffrey G. Weil (215)994-2538 / Seymour Kurland (215)994-2235*
4000 Bell Atlantic Tower, 1717 Arch Street, Philadelphia, PA 19103-2793 (215)994-4000

**Morgan, Lewis & Bockius, LLP**
*Marc J. Sonnenfeld*
1701 Market Street, Philadelphia, PA 19103-2921 (215)963-5000

**Pepper Hamilton, LLP**
*Barbara W. Mather / Jon A. Baughman / Laurence Z. Shiekman (215)981-4347 / M. Duncan Grant / Robert L. Hickok (215)981-4583 / Thomas E. Zemaitis*
3000 Two Logan Square, Eighteenth and Arch Streets, Philadelphia, PA 19103-2799 (215)981-4000

**Wolf, Block, Schorr and Solis-Cohen, LLP**
*Jay A. Dubow / Jerome J. Shestack / M. Norman Goldberger / Mark L. Alderman*
1650 Arch Street, 22nd Floor, Philadelphia, PA 19103-2097 (215)977-2058

**TEXAS**

**Akin, Gump, Strauss, Hauer & Feld, LLP**
*Paul R. Bessette (512)499-6250 / Edward S. Koppman / Orrin L. Harrison, III*
1700 Pacific Avenue, Suite 4100, Dallas, TX 75201 (214)969-2800

Revised (10/06)                    Page 12

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

*COPY*

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

*Paul R. Bessette (512)499-6250*
1111 Louisiana Street, 44th Floor, Houston, TX 77002–5200 (713)220–5800

**Beirne, Maynard & Parsons, LLP**
*Jeffrey R. Parsons (713)960-7302*
1300 Post Oak Boulevard, Suite 2500, Houston, TX 77056–3000 (713)623–0887

**Carrington, Coleman, Sloman & Blumenthal, LLP**
*Fletcher L. Yarbrough / Bruce W. Collins / Tim Gavin*
901 Main Street, Suite 5500, Dallas, TX 75202 (214)855–3000

**Fulbright & Jaworski, LLP**
*Frank G. Jones / Robert S. Harrell / Gerard G. Pecht*
1301 McKinney, Suite 5100, Houston, TX 77010 (713)651–5151

*Karl G. Dial / Michael A. Swartzendruber*
2200 Ross Avenue, Suite 2800, Dallas, TX 75201 (214)855–8000

**Jenkens & Gilchrist, PC**
*John Gilliam, Esq.*
1100 Louisiana, Suite 1800, Houston, TX 77002–5214 (713)951–3300

*John Gilliam, Esq.*
1445 Ross Avenue, Suite 3200, Dallas, TX 75202 (214)855–4306

**King & Spalding**
*Mark K. Glasser*
1100 Louisiana, Suite 4000, Houston, TX 77002 (713)751–3212

**Locke Liddell & Sapp, LLP**
*Bradley W. Foster (214)740-8664 / C.W. Flynn (214)740-8654 / John H. McElhaney (214)740-8458*
2200 Ross Avenue, Suite 2200, Dallas, TX 75201–6776 (214)740–8000

*Charles R. Parker (713)226-1469*
3400 JPMorgan Chase Tower, 600 Travis, Houston, TX 77002 (713)226–1200

*Bradley W. Foster (214)740-8664 / C.W. Flynn (214)740-8654 / John H. McElhaney (214)740-8458*
100 Congress Avenue, Suite 300, Austin, TX 78701–4042 (512)305–4700

**Thompson & Knight, LLP**
*Timothy R. McCormick*
333 Clay Street, Suite 3300, Houston, TX 77002 (713)654–8111

*Timothy R. McCormick*
Burnett Plaza, Suite 1600, 801 Cherry Street, Unit #1, Fort Worth, TX 76102–6881 (817)347–1700

*Timothy R. McCormick*
1700 Pacific Avenue, Suite 3300, Dallas, TX 75201 (214)969–1103

*Timothy R. McCormick*
98 San Jacinto Boulevard, Suite 1200, Austin, TX 78701 (512)469–6100

Revised (10/06)                    Page 13

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

*COPY*

## APPENDIX A
## SECURITIES CLAIMS PANEL COUNSEL LIST

**Vinson & Elkins, LLP**
*Walter B. Stuart / N. Scott Fletcher*
First City Tower, 1001 Fannin St., Suite 2300, Houston, TX 77002-6760 (713)758-2222

**Weil, Gotshal & Manges, LLP**
*Ralph I. Miller*
100 Crescent Court, Dallas, TX 75201 (214)746-7700

*Ralph I. Miller*
700 Louisiana–Suite 1600, Houston, TX 77002 (713)546-5000

**VIRGINIA**

**Cooley Godward Kronish, LLP**
*Robert R. Vieth, Partner*
One Freedom Square, Reston Town Ctr., 11951 Freedom Dr., Reston, VA 20190-5656
(703)456-8000

**Greenberg Traurig, LLP**
*Joe R. Reeder / John Scalia (703)749-1300*
1750 Tysons Boulevard, 12th Fl., Tysons Corner, VA 22102 (703)749-1300

**Latham & Watkins**
*Laurie B. Smilan (703)456-5220 / Michele E. Rose (703)456-5225 / Christian Word (703)456-5226*
Two Freedom Square, 11955 Freedom Drive, Suite 500, Reston, VA 20190-5651 (703)456-1000

**McGuireWoods, LLP**
*Stephen D. Busch (804)775-4378 / Charles McIntyre*
1750 Tysons Boulevard, Suite 1800, McLean, VA 22102 (703)712-5000

*Stephen D. Busch (804)775-4378*
One James Center, 901 East Cary Street, Richmond, VA 23219 (804)775-1000

**WilmerHale**
*Charles E. Davidow (202)663-6241*
1600 Tysons Boulevard, 10th Floor, Tysons Corner, VA 22102 (703)251-9700

**Wilson, Sonsini, Goodrich & Rosati**
*Lyle Roberts / Trevor Chaplick (703)734-3100*
2 Fountain Square, Reston Town Ct., 11921 Freedom Drive, Suite 600, Reston, VA 20190-5634
(703)734-3100

**WASHINGTON**

**Davis Wright Tremaine**
*Stephen M. Rummage / Ladd B. Leavens*
2600 Century Square, 1501 Fourth Avenue, Seattle, WA 98101-1688 (206)622-3150

**DLA Piper Rudnick Gray Cary US, LLP**
*Stellman Keehnel*
701 Fifth Avenue, Suite 7000, Seattle, WA 98104 (206)839-4800

Revised (10/06)                    Page 14

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

COPY

**APPENDIX A**
**SECURITIES CLAIMS PANEL COUNSEL LIST**

**Foster Pepper & Shefelman**
Tim J. Filer / Roger D. Mellem
1111 Third Avenue, Suite 3400, Seattle, WA 98101-3299 (206)447-8998

**Heller, Ehrman, White & McAuliffe**
George E. Greer
701 Fifth Avenue, Suite 6100, Seattle, WA 98104-7098 (206)447-0900

**Lane Powell Spears Lubersky, LLP**
James B. Stoetzer (206)277-9511 / Rudy A. Englund / Larry S. Gangnes / Christopher B. Wells
1420 Fifth Avenue, Suite 4100, Seattle, WA 98101-2338 (206)223-7000

**Perkins Coie, LLP**
Harry H. Schneider, Jr. / Ronald L. Berenstain
1201 Third Avenue, Ste. 4800, Seattle, WA 98101-3099 (206)583-8888

**Wilson, Sonsini, Goodrich & Rosati**
Barry M. Kaplan
701 Fifth Avenue, Suite 5100, Seattle, WA 98104 (206)883-2500

Revised (10/06)          Page 15

Please visit our website at **www.briefbase.com** to view additional firms that may have been added to the panel counsel list since this policy was issued.

*COPY*

**APPENDIX B**

I.   **DEFINITIONS**

(a)   **"Crisis"** means:

(1)   a **Delisting Crisis**; or

(2)   one of the following events which, in the good faith opinion of the Chief
Financial Officer of an **Organization** did cause or is reasonably likely to
cause a **"Material Effect on an Organization's Common Stock Price"**:

(i)   *Negative earning or sales announcement*

The public announcement of an **Organization's** past or future
earnings or sales, which is substantially less favorable than any of
the following: (i) an **Organization's** prior year's earnings or sales
for the same period; (ii) an **Organization's** prior public statements
or projections regarding earnings or sales for such period; or (iii)
an outside securities analyst's published estimate of an **Organ-
ization's earnings or sales.**

(ii)   *Loss of a patent, trademark or copyright or major customer or contract*

The public announcement of an unforeseen loss of: (i) an
**Organization's** intellectual property rights for a patent, trademark
or copyright, other than by expiration; (ii) a major customer or
client of an **Organization**; or (iii) a major contract with an
**Organization**.

(iii)   *Product recall or delay*

The public announcement of the recall of a major product of an
**Organization** or the unforeseen delay in the production of a major
product of an **Organization**.

(iv)   *Mass tort*

The public announcement or accusation that an **Organization** has
caused the bodily injury, sickness, disease, death or emotional
distress of a group of persons, or damage to or destruction of any
tangible group of properties, including the loss of use thereof.

(v)   *Employee layoffs or loss of key executive officer(s)*

The public announcement of layoffs of **Employees** of an **Organiza-
tion.** The death or resignation of one or more key **Executives** of
the **Named Entity.**

(vi)   *Elimination or suspension of dividend*

The public announcement of the elimination or suspension of a
regularly scheduled dividend previously being paid by an
**Organization**.

(vii)   *Write-off of assets*

The public announcement that an **Organization** intends to write off
a material amount of its assets.

75013 (2/00)   *COPY*                                    1

(viii)  *Debt restructuring or default*

The public announcement that an **Organization** has defaulted or intends to default on its debt or intends to engage in a debt restructuring.

(ix)  *Bankruptcy*

The public announcement that an **Organization** intends to file for bankruptcy protection or that a third party is seeking to file for involuntary bankruptcy on behalf of an **Organization**; or that bankruptcy proceedings are imminent, whether voluntary or involuntary.

(x)  *Governmental or regulatory litigation*

The public announcement of the commencement or threat of commencement of litigation or governmental or regulatory proceedings against an **Organization**.

(xi)  *Unsolicited takeover bid*

An unsolicited written offer or bid by any person or entity other than an **Insured** or any affiliate of any **Insured**, whether publicly announced or privately made to an **Executive** of an **Organization**, to effect a **Transaction** (as defined in Clause 12(a) of the policy) of the **Named Entity**.

A **Crisis** shall first commence when an **Organization** or any of its **Executives** shall first become aware of such **Crisis**. A **Crisis** shall conclude once a **Crisis Firm** advises an **Organization** that such **Crisis** no longer exists or when the **CrisisFund**[SM] has been exhausted.

(b)  "**Crisis Firm**" means any public relations firm, crisis management firm or law firm as listed in section III of this Appendix B. Any "**Crisis Firm**" may be hired by an **Organization** to perform **Crisis Services** without further approval by the **Insurer**.

(c)  "**Crisis Loss**" means the following amounts incurred during the pendency of a **Crisis** for which an **Organization** is legally liable:

(1)  the reasonable and necessary fees and expenses incurred by a **Crisis Firm** in the performance of **Crisis Services** for an **Organization**;

(2)  the reasonable and necessary fees and expenses incurred in the printing, advertising or mailing of materials; and

(3)  travel costs incurred by **Executives**, employees or agents of an **Organization** or of the **Crisis Firm**, arising from or in connection with the **Crisis**.

(d)  "**Crisis Services**" means those services performed by a **Crisis Firm** in advising an **Insured** or any **Employee** of an **Organization** on minimizing potential harm to an **Organization** from the **Crisis** (including but not limited to maintaining and restoring investor confidence in an **Organization**), and solely with respect to **Delisting Crisis Loss**, any legal services performed by a **Crisis Firm** in responding to a **Delisting Crisis**.

.75013 (2/00)   *COPY*                           2

(e)  "**Delisting Crisis**" means written notice to an **Organization** that such **Organization's** securities will be or have been delisted from an **Exchange**.

(f)  "**Exchange**" means NASDAQ, the American Stock Exchange, the New York Stock Exchange and the Singapore Exchange.

(g)  "**Material Effect on an Organization's Common Stock Price**" means, within a period of 24 hours, that the price per share of an **Organization's** common stock shall decrease by the greater of $2.00, or 15% net of the percentage change in the Standard & Poor's Composite Index.

## II.  EXCLUSIONS

The term **Crisis** shall not include any event relating to:

(i)  any **Claim** which has been reported, or any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

(ii)  the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants**; or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**; provided, however, the foregoing shall not apply if the policy contains any provision or endorsement modifying or deleting, in part or in whole, exclusion (k) of the policy; or

(iii)  the hazardous properties of nuclear materials; provided, however, the foregoing shall not apply to any **Crisis** arising from the ownership of, operation of, construction of, management of, planning of, maintenance of or investment in any nuclear facility.

## III.  PRE–APPROVED CRISIS FIRMS

(a)  For all **Crisis** (including a **Delisting Crisis**, **Crisis Firm(s)** means any public relations firm listed in (1) – (7) below:

(1)  ABERNATHY MACGREGOR SCANLON
501 Madison Avenue
New York, NY 10022
(212) 371–5999
Contact: James T. MacGregor

(2)  BURSON–MARSTELLER
230 Park Avenue South
New York, NY  10003–1566
(212) 614–5236
Contact: Michael Claes

(3)  PATTON BOGGS, LLP
2550 M Street, N.W.
Washington, D.C., 20037
(202) 457–6000
Contact: Thomas H. Boggs

(4)  KEKST AND COMPANY
437 Madison Avenue
New York, NY 10022
(212) 593–2655
Contact: Andrew Baer

(5)  ROBINSON LERER & MONTGOMERY
75 Rockefeller Plaza, 6th floor
New York, NY 10019
(212) 484–7721
Contact: Michael Gross

(6)  SARD VERBINNEN & CO.
630 Third Avenue
New York, NY 10017
(212) 687–8080
Contact: Paul Verbinnen or George Sard

(7)    SITRICK & COMPANY
2029 Century Park East
Suite 1750
Los Angeles, CA 90067
(310) 788-2850
Contact: Michael Sitrick

(b)    Solely for **Delisting Crisis**, **"Crisis Firm(s)"** shall also include any **Panel Counsel Firm** (as defined in Clause 9) approved to handle **Securities Claims**.

75013 (2/00)   *COPY*      4

**ENDORSEMENT# 1**

This endorsement, effective *12:01 am*    *November 30, 2006*    forms a part of
policy number  *965-63-88*
issued to *OFFICE DEPOT, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

## FLORIDA CANCELLATION/NONRENEWAL ENDORSEMENT

Wherever used in this endorsement: 1) "we", "us", "our", and "Insurer" mean the insurance company which issued this policy, and 2) "you", "your", "named Insured", "First Named Insured", and "Insured" mean the Named Corporation, Named Organization, Named Sponsor, Named Insured, or Insured stated in the declarations page; and 3) "Other Insured(s)" means all other persons or entities afforded coverage under the policy.

It is hereby agreed and understood that the cancellation provision of this policy is to be deleted in its entirety and to be replaced with the following:

A.    The Insured shown in the Declarations may cancel this policy by mailing or delivering to the Insurer advance written notice of cancellation.

B.1.   Cancellation for Policies in Effect Ninety (90) Days or Less

   If this policy has been in effect ninety (90) days or less the Insurer may cancel this policy by mailing or delivering to the Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

   a)   Ten (10) days before the effective date of cancellation if the Insurer cancels for nonpayment of premium; or

   b)   Twenty (20) days before the effective date of cancellation if the Insurer cancels for any other reason, except the Insurer may cancel immediately if there has been:

      1.   A material misstatement or misrepresentation; or
      2.   A failure to comply with underwriting requirements established by the Insurer.

B.2.   Cancellation for Policies in Effect for More Than Ninety (90) Days

   If this policy has been in effect for more than ninety (90) days the Insurer may cancel this policy only for one or more of the following reasons:

   a)   Nonpayment of premium;

   b)   The policy was obtained by a material misstatement;

   c)   There has been a failure to comply with underwriting requirements established by us within ninety (90) days of the date of effectuation of coverage;

   d)   There has been a substantial change in the risk covered by the policy; or

   e)   The cancellation is for all insureds under such policies for a given class of insureds.

### END 001

76105 (5/00)   *COPY*                    Page 1 of 2

## ENDORSEMENT# *1*   (continued)

If the Insurer cancels this policy for any of these reasons, the Insurer will mail or deliver to the First Named Insured written notice of cancellation, accompanied by the reasons for the cancellation at least:

1.   Ten (10) days before the effective date of cancellation if cancellation is for the reason stated in B2(a) above; or

2.   Forty–five (45) days before the effective date of cancellation if cancellation is for the reasons stated in B 2(b), (c), (d) or (e) above.

The following is added:

C.1.  Non–Renewal

a)   If the Insurer decides not to renew this policy the Insurer will mail or deliver to the Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least forty–five (45) days prior to the expiration of this policy.

b)   Any notice of nonrenewal will be mailed or delivered to the Insured's last mailing address known to the Insurer. If notice is mailed, proof of mailing will be sufficient proof of notice.

C.2.  Renewal

a)   The Insurer shall give the named insured at least forty–five (45) days advance written notice of the renewal premium.

**ALL OTHER TERMS, CONDITIONS, AND EXCLUSIONS SHALL REMAIN THE SAME.**

_____

**AUTHORIZED REPRESENTATIVE**

*END 001*

### ENDORSEMENT# 2

This endorsement, effective *12:01 am*        *November 30, 2006*        forms a part of
policy number    *965-63-88*
issued to *OFFICE DEPOT, INC.*

by       *National Union Fire Insurance Company of Pittsburgh, Pa.*

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### COVERAGE TERRITORY ENDORSEMENT

Payment of loss under this policy shall only be made in full compliance with all United
States of America economic or trade sanction laws or regulations, including, but not
limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury
Department's Office of Foreign Assets Control ("OFAC").

_____
**AUTHORIZED REPRESENTATIVE**

*END 002*

89644 (7/05)    *COPY*                    Page 1 of 1

ENDORSEMENT# 3

This endorsement, effective *12:01 am*   *November 30, 2006*   forms a part of
policy number   *965-63-88*
issued to *OFFICE DEPOT, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

## COINSURANCE FOR SECURITIES CLAIMS

In consideration of the premium charged, it is hereby understood and agreed that solely
as respects **Securities Claims**, the following Clause is added to the policy:

**COINSURANCE CLAUSE**

With respect to: (1) **Indemnifiable Loss**; and/or (ii) **Loss** under Coverage B(i), the **Insurer**
shall be liable to pay *80*      % of such **Loss** excess of the applicable Retention amount
described in the Declarations up to the **Limit of Liability** described in the Declarations, it
being a condition of this insurance that the remaining *20*      % of each and every such
**Loss** shall be carried by the **Insured** and/or the **Organization** at their own risk and be
uninsured.

With respect to all **Non-Indemnifiable Loss**, the **Insurer** shall be liable to pay 100% of
such **Loss**, excess of the retention amount described in Item 4 of the Declarations up to
the **Limit of Liability** described in Item 3 of the Declarations.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

**AUTHORIZED REPRESENTATIVE**

89347 (5/05)   *COPY*

*END 003*

Page 1 of 1

**ENDORSEMENT# 4**

This endorsement, effective *12:01 am*      *November 30, 2006*      forms a part of
policy number   *965-63-88*
issued to   *OFFICE DEPOT, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that the Insurer shall not be liable to make any payment for **Loss** in connection with any **Claim** made against any **Insured**:

A.   alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, the **Hazardous Properties** of Nuclear Material, including but not limited to:

   (1)   **Nuclear Material** located at any **Nuclear Facility** owned by, or operated by or on behalf of, the **Organization**, or discharged or dispersed therefrom; or

   (2)   **Nuclear Material** contained in spent fuel or waste which was or is at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of the **Organization**; or

   (3)   the furnishing by an **Insured** or the **Organization** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **Nuclear Facility**; or

   (4)   **Claims** for damage or other injury to the **Organization** or its shareholders which allege, arise from, are based upon, are attributed to or in any way involve, directly or indirectly, the **Hazardous Properties** of Nuclear Material.

B.   (1)   which is insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability underwriters, or Nuclear Insurance Association of Canada, or would be insured under any such policy but for its termination or exhaustion of its limit of liability; or,

   (2)   with respect to which: (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the **Insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

As used in this endorsement:

" **Hazardous Properties**" include radioactive, toxic or explosive properties.

*COPY*          *END 4*

**ENDORSEMENT# 4**   (Continued)

This endorsement, effective *12:01 am*   *November 30, 2006*   forms a part of
policy number   *965-63-88*
issued to   *OFFICE DEPOT, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

" **Nuclear facility**" means:

    (a)    any nuclear reactor;

    (b)    any equipment or device designed or used for
          (1) separating the isotopes of uranium or plutonium,
          (2) processing or utilizing spent fuel, or
          (3) handling, processing or packaging wastes;

    (c)    any equipment or device used for the processing, fabricating or alloying of
        special nuclear material if at any time the total amount of such material in
        the custody of the Insured at the premises where such equipment or device
        is located consists of or contains more than 25 grams of plutonium or
        uranium 233 or any combination thereof, or more than 250 grams of
        uranium 235; and

    (d)    any structure, basin, excavation, premises or place prepared or used for the
        storage or disposal of waste, and includes the site on which any of the
        foregoing is located, all operations conducted on such site and all premises
        used for such operations.

" **Nuclear Material**" means source material, special nuclear material or byproduct material.

" **Nuclear Reactor**" means any apparatus designed or used to sustain nuclear fission in a
self-supporting chain reaction or to contain a critical mass of fissionable material.

" **Source Material**," " **Special Nuclear Material**," and " **Byproduct Material**" have the
meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

" **Spent Fuel**" means any fuel element or fuel component, solid or liquid, which has been
used or exposed to radiation in a nuclear reactor.

" **Waste**" means any waste material (1) containing by product material and (2) resulting
from the operation by any person or organization of any **Nuclear Facility** included within the
definition of nuclear facility under paragraph (a) or (b) thereof.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

                                                        AUTHORIZED REPRESENTATIVE

*COPY*          **END 4**

**ENDORSEMENT# 5**

This endorsement, effective *12:01 am*      *November 30, 2006*      forms a part of
policy number  *965-63-88*
issued to   *OFFICE DEPOT, INC.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

**SPECIFIC INVESTIGATION/CLAIM/LITIGATION/EVENT OR ACT EXCLUSION**

In consideration of the premium charged, it is hereby understood and agreed that, without limiting the effectiveness of Clause 4. **EXCLUSIONS** (d) or (e) of the policy, the **Insurer** shall not be liable to make any payment for **Loss** in connection with: (i) any of the **Claim(s)**, notices, events, investigations or actions referred to in item (1) below; (hereinafter " **Events**"); (ii) the prosecution, adjudication, settlement, disposition, resolution or defense of: (a) any **Event(s)**; or (b) any **Claim(s)** arising from any **Event(s)**; or (iii) any **Wrongful Act**, underlying facts, circumstances, acts or omissions in any way relating to any **Event(s)**.

EVENTS

(1)   Employment practices claim that is referenced in the settlement between Office Depot Inc., and Federal Insurance company.

It is further understood and agreed that the **Insurer** shall not be liable for any **Loss** in connection with:

(A)   any restatement, retraction, amendment or revision of in part or in whole:

  (i)   any document or statement filed or submitted or required to be filed or submitted with the Securities and Exchange Commission or any other similar federal, state or local agency (including but not limited to any 10K's, 10Q's or annual reports); or

  (ii)   any written or oral statement made regarding the assets, revenues, sales or financial condition of the **Organization;**

  resulting from, arising out, based upon or attributable to any **Event** or the resolution of said **Events;** and

(B)   any **Claim** alleging, arising out of, based upon, attributable to or in any way related directly or indirectly, in part or in whole, to an **Interrelated Wrongful Act** (as that term is defined below), regardless of whether or not such **Claim** involved the same or different **Insureds**, the same or different legal causes of action or the same or different claimants or is brought in the same or different venue or resolved in the same or different forum.

For the purposes of this endorsement an " **Interrelated Wrongful Act**" means: (i) any fact, circumstance, act or omission alleged in any **Event(s)** and/or (ii) any **Wrongful Act** which is the same as, similar or related to or a repetition of any **Wrongful Act** alleged in any **Event(s)**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSION REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

**COPY**          **END 5**

69 of 93

**ENDORSEMENT# 6**

This endorsement, effective *12:01 am        November 30, 2006*        forms a part of
policy number   *965-63-88*
issued to   *OFFICE DEPOT, INC.*

by        *National Union Fire Insurance Company of Pittsburgh, Pa.*

## "NO LIABILITY" PROVISION DELETED AND
## SECURITIES CLAIM RETENTION APPLIES TO ALL LOSS

In consideration of the premium charged, it is hereby understood and agreed that the policy is hereby amended as follows:

The Definition of and all provisions referring to " **No Liability**" are hereby deleted in their entirety.

Clause 6 RETENTION CLAUSE is deleted in its entirety and replaced by the following:

6.    **RETENTION CLAUSE**

For each **Claim**, the **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention amounts stated in Items 4(a), 4(b) and 4(c) of the Declarations, such Retention amounts to be borne by an **Organization** and/or the **Insured Person** and remain uninsured, with regard to all **Loss** other than **Non-Indemnifiable Loss**. The Retention amount specified in:

Item 4(a) applies to **Loss** that arises out of a **Securities Claim;**

Item 4(b) applies to **Loss** that arises out of an **Employment Practices Claim;** and

Item 4(c) applies to **Loss** that arises out of any **Claim** other than a **Securities Claim** or an **Employment Practices Claim.**

A single Retention amount shall apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or related **Wrongful Acts**.

In the event a **Claim** triggers more than one of the Retention amounts stated in Items 4(a), 4(b) and 4(c) of the Declarations, then, as to that **Claim**, the highest of such Retention amounts shall be deemed the Retention amount applicable to **Loss** (to which a Retention is applicable pursuant to the terms of this policy) arising from such **Claim.**

No Retention amount is applicable to **Crisis Loss** or **Non-Indemnifiable Loss.**

*COPY*            *END 6*

**ENDORSEMENT# *6***     **(Continued)**

This endorsement, effective *12:01 am*    *November 30, 2006*    forms a part of
policy number   *965-63-88*
issued to   *OFFICE DEPOT, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

Item 4 of the Declarations is hereby deleted in its entirety and replaced by the following:

| 4 | **RETENTION:** | Not applicable to **Non-Indemnifiable Loss** | | | |
|---|---|---|---|---|---|
| 4(a) | **Securities Claims:** | $2,500,000 | 4(b) | **Employment Practices Claims:** | N/A |
| 4(c) | All other Claims: | $2,500,000 | | | |

ALL OTHER TERMS, CONDITIONS AND LIMITATIONS REMAIN UNCHANGED.

*COPY*      *END 6*

AUTHORIZED REPRESENTATIVE

**ENDORSEMENT# 7**

This endorsement, effective *12:01 am   November 30, 2006*   forms a part of
policy number *965-63-88*
issued to *OFFICE DEPOT, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

**Crisis Fund Deleted**

In consideration of the premium charged, it is hereby understood and agreed that notwithstanding any other provision of this policy (including any endorsement attached hereto whether such endorsement precedes or follows this endorsement in time or sequence), insurance as is provided by COVERAGE D: **CRISISFUNDSM** INSURANCE is deleted in its entirety.

This policy shall not pay the **Crisis Loss** (including **Delisting Crisis Loss**) of an **Organization**.

All provisions of this policy as they relate to insurance as would be provided to **Crisis Loss** under Coverage D, are hereby deleted in their entirety. However, the provisions of this policy shall remain in full force and effect as they relate to insurance as is provided to **Loss** under Coverage A, Coverage B and Coverage C.

It is further understood and agreed that Subsection (c) of Clause 22 is hereby deleted in its entirety and replaced with the following:

(c)   only after payment of **Loss** has been made pursuant to Clause 22(a) and Clause 22(b) above, then with respect to whatever remaining amount of the Limit of Liability is available after such payment, at the written request of the chief executive officer of the Named Entity, either pay or withhold payment of such other **Loss** for which coverage is provided under Coverage B(I) of this policy.

IT IS FURTHER UNDERSTOOD AND AGREED THAT IN NO EVENT SHALL THIS ENDORSEMENT HAVE THE EFFECT OF EXPANDING COVERAGE AS IS PROVIDED BY COVERAGE A, COVERAGE B OR COVERAGE C OF THIS POLICY.

ALL OTHER TERMS, CONDITIONS AND LIMITATIONS REMAIN UNCHANGED.

*COPY*        *END 7*        AUTHORIZED REPRESENTATIVE

## ENDORSEMENT# 8

This endorsement, effective *12:01 am*      *November 30, 2006*      forms a part of
policy number  *965-63-88*
issued to    *OFFICE DEPOT, INC.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

## EMPLOYMENT PRACTICES CLAIMS EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Employment Practices Claim(s)** made against any **Insured**.


ALL OTHER TERMS, CONDITIONS AND LIMITATIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*COPY*          *END 8*

## ENDORSEMENT# 9

This endorsement, effective *12:01 am*     *November 30, 2006*     forms a part of
policy number   *965-63-88*
issued to   *OFFICE DEPOT, INC.*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### CONDUCT EXCLUSIONS AMENDED– FINAL DETERMINATION

In consideration of the premium charged, it is hereby understood and agreed that
Exclusions (a), (b) and (c) are deleted in their entirety and replaced by the following:

(a)     arising out of, based upon or attributable to the gaining of any profit or
advantage to which a judgment or final adjudication or an alternative dispute
resolution proceeding adverse to the **Insured** establishes the **Insured** was not
legally entitled;

(b)     arising out of, based upon or attributable to payments to an **Insured** of any
remuneration without the previous approval of the stockholders or members
of an **Organization**, if a judgment or final adjudication or an alternative
dispute resolution proceeding adverse to the **Insured** establishes that such
payment without such previous approval was illegal;

(c)     arising out of, based upon or attributable to the committing of any deliberate
criminal or deliberate fraudulent act by the Insured if a judgment or final
adjudication or an alternative dispute resolution proceeding adverse to the
**Insured(s)** establishes that such deliberate criminal or deliberate fraudulent
act was committed;

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*COPY*          *END 9*

_____
AUTHORIZED REPRESENTATIVE

**ENDORSEMENT# *10***

This endorsement, effective *12:01 am*  *November 30, 2006*  forms a part of
policy number  *965-63-88*
issued to  *OFFICE DEPOT, INC.*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

**DISCOVERY CLAUSE AMENDED**

In consideration of the premium charged, it is hereby understood and agreed that the policy (and any endorsement amending Clause 10. DISCOVERY CLAUSE) is hereby amended to the extent necessary for the policy to provide the following:

Clause 10. DISCOVERY CLAUSE is hereby deleted in its entirety and replaced with the following:

**10.   DISCOVERY CLAUSE**

Except as indicated below, if the **Named Entity** shall cancel or the **Named Entity** or the **Insurer** shall refuse to renew this policy, the **Named Entity** shall have the right upon payment of an **Additional Premium** of 150% of the **Full Annual Premium**, to a period of one year following the effective date of such cancellation or nonrenewal (the "**Discovery Period**"), in which to give to the **Insurer** written notice pursuant to Clause 7(a) and 7(c) of the policy of: (i) **Claims** first made against an **Insured**; and (ii) circumstances of which an **Organization** or an **Insured** shall become aware, in either case during said **Discovery Period** and solely with respect to a **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by this policy. As used herein, "**Full Annual Premium**" means the premium level in effect immediately prior to the end of the **Policy Period**.

In the event of a **Transaction** as defined in Clause 12(a), the **Named Entity** shall have the right to request an offer from the **Insurer** of a **Discovery Period** (with respect to **Wrongful Acts** occurring prior to the effective time of the **Transaction**). The **Insurer** shall offer such **Discovery Period** pursuant to such terms, conditions, exclusions and additional premium as the **Insurer** may reasonably decide. In the event of a **Transaction**, the right to a **Discovery Period** shall not otherwise exist except as indicated in this paragraph.

The **Discovery Period** is not cancelable and the additional premium charged shall be fully earned at inception. This Clause 10 shall not apply to any cancellation resulting from non-payment of premium. The rights contained in this Clause 10 shall terminate unless written notice of election of a **Discovery Period** together with any additional premium due is received by the **Insurer** no later than thirty (30) days subsequent to the effective date of the cancellation, nonrenewal or **Transaction**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____
AUTHORIZED REPRESENTATIVE

*COPY*          **END 10**

## ENDORSEMENT# 11

This endorsement, effective *12:01 am    November 30, 2006*    forms a part of
policy number  *965-63-88*
issued to    *OFFICE DEPOT, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### Punitive Damages Endorsement

In consideration of the premium charged, it is hereby understood and agreed that Definition (p) " **Loss**" is hereby amended by deleting the second paragraph thereof and replacing it with the following:

> Notwithstanding the foregoing paragraph, **Loss** shall specifically include (subject to this policy's other terms, conditions and limitations, including but not limited to exclusions relating to profit or advantage, deliberate fraud or deliberate criminal acts): (1) civil penalties assessed against any **Insured Person** pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. ' 78dd-2(g)(2)(B); and (2) with respect to **Claims** other than **Employment Practices Claims**, punitive, exemplary and multiplied damages imposed upon an **Insured**. Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such penalties and punitive, exemplary and multiplied damages.

It is further understood and agreed that solely in regard to the coverage provided by this endorsement the **Insurer** shall not be liable to make any payment for **Loss** in connection with any **Claim** made against an **Insured** arising out of, based upon or attributable to the committing in fact of a dishonest act or any willful violation of any statute, rule or law. For the purpose of determining the applicability of the foregoing exclusion the facts pertaining to and knowledge possessed by any **Insured Person** shall not be imputed to any other **Insured Person**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*COPY*        *END 11*        _____
AUTHORIZED REPRESENTATIVE

**ENDORSEMENT# 12**

This endorsement, effective *12:01 am*    *November 30, 2006*    forms a part of
policy number   *965-63-88*
issued to   *OFFICE DEPOT, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

**Amend Post Policy Reporting Period to 45 days**

In consideration of the premium charged, it is hereby understood and agreed that Clause 7(a)(2) is hereby deleted in its entirety and replaced with the following:

(2)    within 45 days after the end of the **Policy Period** or the **Discovery Period** (if applicable), as long as such **Claim** was first made against an **Insured** within the final 30 days of the **Policy Period** or the **Discovery Period** (if applicable).

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*COPY*          *END 12*

**ENDORSEMENT# *13***

This endorsement, effective *12:01 am*       *November 30, 2006*       forms a part of
policy number    *965-63-88*
issued to    *OFFICE DEPOT, INC.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

## SEVERABILITY OF THE APPLICATION ENDORSEMENT

## (FULL INDIVIDUAL SEVERABILITY; TOP 3 ORGANIZATION POSITIONS IMPUTED TO ORGANIZATION; NON-RESCINDABLE)

In consideration of the premium charged, it is hereby understood and agreed that the following Clause is added to the policy at the end thereof:

**SEVERABILITY**

In granting coverage under this policy, it is agreed that the **Insurer** has relied upon the statements, warranties and representations contained in the **Application** as being accurate and complete. All such statements, warranties and representations are the basis for this policy and are to be considered as incorporated into this policy.

With respect to any statements, warranties and representations contained in the **Application**, and solely with respect to the issue of whether coverage shall be afforded under this endorsement pursuant to subparagraphs (1), (2) and (3) below, no knowledge possessed by an **Insured Person** shall be imputed to any other **Insured Person**. However, in the event that any of the statements, warranties or representations is not accurately and completely disclosed in the **Application**, no coverage shall be afforded for any **Claim** alleging, arising out of, based upon, attributable to or in consequence of the subject matter of any incomplete or inaccurate statements, warranties or representations under:

(1)     Clause 1. Insuring Agreements, COVERAGE A, with respect to any **Insured Person** who knew of such inaccurate or incomplete statements, warranties or representations;

(2)     Clause 1, Insuring Agreements, Coverage B(ii), with respect to any **Organization** to the extent it indemnifies any **Insured Person** referenced in (i), above; and

(3)     Clause 1, Insuring Agreements, Coverage B(i), with respect to any **Organization** if any past or present chief executive officer, chief operating officer or chief financial officer of the **Named Entity** knew of such inaccurate or incomplete statements, warranties or representation,

whether or not such **Insured Person** knew that such facts were not accurately and completely disclosed in the **Application**.

**COPY**            **END *13***

**ENDORSEMENT# *13*   (Continued)**

This endorsement, effective *12:01 am*   *November 30, 2006*   forms a part of policy number *965-63-88*
issued to *OFFICE DEPOT, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

The **Insurer** shall not be entitled under any circumstances to rescind coverage under the Policy with respect to any **Insured**, but such coverage will be subject to all other terms, conditions and exclusions of the policy.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*COPY*          *END 13*

_____
AUTHORIZED REPRESENTATIVE

## ENDORSEMENT# 14

This endorsement, effective *12:01 am*   *November 30, 2006*   forms a part of
policy number   *965-63-88*
issued to *OFFICE DEPOT, INC.*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

### EXTRADITION COVERAGE
### (2/2000 Version)

In consideration of the premium charged, it is understood and agreed that, where permitted by law:

1.  "**Claim**" also means any:

    (a)   official request for **Extradition** of any **Insured Person**; or

    (b)   the execution of a warrant for the arrest of an **Insured Person** where such execution is an element of **Extradition**.

2.  "**Defense Costs**" also means reasonable and necessary fees, costs and expenses incurred through legal counsel and consented to by the **Insurer** resulting from an **Insured Person** lawfully:

    (a)   opposing, challenging, resisting or defending against any request for or any effort to obtain the **Extradition** of that **Insured Person**; or

    (b)   appealing any order or other grant of **Extradition** of that **Insured Person**.

3.  "**Extradition**" means any formal process by which an **Insured Person** located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation.

4.  Clause 9 does not apply to **Defense Costs** solely relating to **Extradition** even if the underlying **Wrongful Acts** relate to a **Securities Claim**.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

_____

**AUTHORIZED REPRESENTATIVE**

© 2006 American International Group, Inc., All rights reserved.
*END 014*

91490 (8/06)   *COPY*   Page 1 of 1

**ENDORSEMENT# *15***

This endorsement, effective *12:01 am      November 30, 2006*      forms a part of
policy number   *965-63-88*
issued to   *OFFICE DEPOT, INC.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### INSURED V. INSURED EXCLUSION AMENDED

In consideration of the premium charged, it is hereby understood and agreed that Clause 4. EXCLUSIONS is amended by adding the following subsection (6) to the end of Exclusion (i):

(6)   any **Securities Claim**, provided that such **Securities Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any **Organization** or any **Executive** of an **Organization**; provided, however, solely with respect to this subsection (6):

(a)   an **Executive's** engaging in any protected activity specified in 18 U.S.C. 1514A(a) ("whistleblower" protection pursuant to the Sarbanes-Oxley Act of 2002) or any protected activity specified in any other "whistleblower" protection pursuant to any similar state, local or foreign securities laws; shall not be deemed to trigger this exclusion.

Notwithstanding the forgoing exception, this exclusion (i) shall apply where the actions of any **Executive** includes the filing of any proceeding or voluntarily testifying, voluntarily participating in or voluntarily assisting (other than de minimis assistance) in the filing or prosecution of any proceeding against an Insured relating to any violation of any rule or regulation of the Securities and Exchange Commission or any similar provision of any federal, state, local or foreign rule or law relating to fraud against shareholders, other than such actions in connection with a proceeding that is brought by the Securities and Exchange Commission, any similar state, local or foreign regulatory body that regulates securities, or any state, local or foreign law enforcement authority.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

*COPY*          **END 15**

_____
AUTHORIZED REPRESENTATIVE

## ENDORSEMENT# *16*

This endorsement, effective *12:01 am    November 30, 2006*          forms a part of
policy number   *965-63-88*
issued to *OFFICE DEPOT, INC.*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|
| 75010 | 02/00 | D00200 Admitted - Dec |
| 81285 | 01/03 | Tria Dec Disclosure Form |
| 75011 | 02/00 | D00200 Admitted - Policy |
| APPMAN | 10/06 | SECURITIES CLAIM PANEL COUNSEL LIST (Please see www.briefbase.com for the current list of panel counsel firms.) |
| 75013 | 02/00 | APPENDIX B CRISISFUND |
| 76105 | 05/00 | FLORIDA AMENDATORY - CANCELLATION/NONRENEWAL |
| 89644 | 07/05 | COVERAGE TERRITORY ENDORSEMENT (OFAC) |
| 89347 | 05/05 | COINSURANCE FOR SECURITIES CLAIMS |
| MNSCPT | | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT |
| MNSCPT | | SPECIFIC INVESTIGATION/CLAIM/LITIGATION/EVENT OR ACT EXCLUSION |
| MNSCPT | | "NO LIABILITY" PROVISION DELETED AND |
| MNSCPT | | Crisis Fund Deleted |
| MNSCPT | | EMPLOYMENT PRACTICES CLAIMS EXCLUSION |
| MNSCPT | | AMENDMENT TO "IN FACT" |
| MNSCPT | | DISCOVERY CLAUSE AMENDED |
| MNSCPT | | Punitive Damages Endorsement |
| MNSCPT | | Amend Post Policy Reporting Period to 45 days |
| MNSCPT | | SEVERABILITY OF THE APPLICATION ENDORSEMENT |
| 91490 | 08/06 | EXTRADITION COVERAGE ENDORSEMENT |
| MNSCPT | | INSURED V. INSURED EXCLUSION AMENDED |
| 78859 | 10/01 | FORMS INDEX ENDORSEMENT |

**END 016**

78859 (10/01)  **COPY**                    Page 1 of 2

**ENDORSEMENT# *16***

This endorsement, effective *12:01 am*      *November 30, 2006*          forms a part of
policy number   *965-63-88*
issued to *OFFICE DEPOT, INC.*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

FORMS INDEX ENDORSEMENT

The contents of the Policy is comprised of the following forms:

| FORM NUMBER | EDITION DATE | FORM TITLE |
|---|---|---|

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

*END 016*

78859 (10/01)                    **Page 2 of 2**

IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF FLORIDA

OFFICE DEPOT, INC.,                    )
                                       )
          Plaintiff,                   )
                                       )
     vs.                               )          CIVIL ACTION FILE
                                       )          NO.
NATIONAL UNION FIRE INSURANCE )
COMPANY OF PITTSBURGH, PA.,            )
                                       )
          Defendant.                   )
                                       )
_____)

**COMPLAINT FOR BREACH OF CONTRACT
AND DECLARATORY RELIEF**

# EXHIBIT B

## Bearden, Michael

| | |
|---|---|
| **From:** | Amanda Duval [ADuval@arcxs.com] |
| **Sent:** | Wednesday, July 11, 2007 7:31 AM |
| **To:** | ali.wilson@aig.com; jpietrucha@gaic.com; vcohn@cug.com; Tracy.Forsyth@axiscapital.com; jmannering@rsui.com; david.deberry@thehartford.com; claims@archinsurance.com; USClaimNoticeBh@axiscapital.com; c-claim@aig.com; 'Cherie Nevill-Gliddon |
| **Cc:** | Steve-Calkins; Dionne-Blake; Kathy-Schroeder; Robert Crocitto; Peter Taub; Nilsa Robinson |
| **Subject:** | FW: OFFICE DEPOT, INC. - Directors & Officers Liability - NOTICE OF CIRCUMSTANCE related to James Covert's Dow Jones Newswire of June 29, 2007 |

**Attachments:** Dow Jones Newswires 6-29-07.pdf

RE:     OFFICE DEPOT, INC.
       Directors & Officers Liability Coverage
       National Union Policy No.: 965-63-88
       Excess Directors & Officers Liability Coverage
       American Casualty Company (CNA) Policy No.: 169551735
       Great American Policy No.: DFX0009954
       St. Paul Travelers Policy No.: EC09001022
       Old Republic Policy No.: CUG 31432
       RSUI Policy No.: NHS623446
       Axis Reinsurance Policy No.: RNN 710789-01-2006
       Twin City Fire (Hartford) Policy No.: 00 DA 0215379-06
       Arch Policy No.: DOX0011519-01
       Excess Directors & Officers Liability Coverage
       Starr Excess International Policy No.: 6285427
       Allied World Assurance Co. Ltd Policy No.: C001256/005
       Arch Reinsurance Ltd Policy No.: DOX0018955-00
       Policy Period: 11/30/06 to 11/30/07

     Notice of Circumstance:   Dow Jones Newswires (by James Covert) dated 6/29/07

Please see the attached Dow Jones Newswire authored by James Covert and released on June 29, 2007 pertaining to weak economic conditions hurting Office Depot's Sales and the timing in which some Wall Street analysts received same.

Based upon the information contained in the attached Dow Jones Newswire, Office Depot, Inc has requested that we (ARC Excess & Surplus, LLC) place their current D&O carriers on notice of potential claim pursuant to and in accordance with Policy Section 7(c) of the primary National Union Fire Insurance Company (Primary $25M) and all corresponding follow form Excess D&O Policies.

Please review the attached newswire and provide your respective claim acknowledgment at your earliest opportunity.

Should you have any questions, please call me at (516) 408-5767. E-mail address: RCrocitto@arcxs.com

Best Regards,

Amanda Duval
ARC Excess & Surplus, LLC
1122 Franklin Avenue
P.O. Box 9240

10/21/2008

Garden City, NY 11530-9240
Direct Dial: (516) 408-5742
Direct Fax: (516) 408-5743
E-Mail:  ADuval@arcxs.com

10/21/2008

[ 2007-06-23 ]

By James Covert, Of DOW JONES NEWSWIRES

NEW YORK (Dow Jones)--Office Depot Inc. (ODP) warned investors late
Thursday that weak economic conditions are hurting its sales. Some Wall
Street analysts, however, got the message a week ago.

One analyst said he received a phone call from Office Depot's investor
relations department last Friday, just days before the end of the office
supply chain's fiscal quarter. Another analyst says he got the call
Monday afternoon. Office Depot didn't provide specifics on its outlook
for profits or sales, but did re-emphasize warnings about the business
environment and soft spending by small business customers that it made
two months ago, these analysts said.

Office Depot acknowledged that it has had recent conversations with
analysts, but says nothing material was disclosed. Still, most of the 18
analysts that cover Office Depot cut their earnings estimates between
last Friday and the middle of this week, sending the company's shares
lower. In addition, options traders took on an unusually large number of
positions last Friday that would pay off if Office Depot's stock fell.

Lawyers said the disclosures may run counter to the spirit of the
Securities and Exchange Commission's Regulation FD, which is aimed at
preventing selective disclosure of material information to analysts.
Companies are supposed to reveal such information to the entire market
at the same time. The incident also represents a stumble for a company
that, under the leadership of Chief Executive Steve Odland, has made it
a point not to give sales or earnings guidance to Wall Street.

"They've put themselves in a situation where they're going to have
defend what they did," said Gary Brown, chairman of corporate law at
Baker, Donelson, Bearman, Caldwell & Berkowitz. "It underscores the
importance of avoiding these one-on-one discussions with analysts."

SEC spokesman Kevin Callahan declined to comment on the issue Friday.
Office Depot spokesman Brian Levine said Thursday that conversations the
company held over the past few days with so-called sell-side analysts,
who produce research for the institutional sales teams at large
commercial and investment banks, were "part of our regular dialogue with
the Street" and said specific earnings numbers weren't discussed.

"We did not provide any new or material information," Levine said in an
e- mail. "We only discussed information that was previously disclosed
publicly."

Later Thursday, after the stock market's close, Office Depot took the
rare step of updating its business outlook. The company, which stopped
giving financial forecasts after a management change in 2005, said in a
securities filing that the weak business trends it mentioned during an
April conference call on its first quarter earnings have persisted. The
company now expects its comparable sales to decline 4% to 5% in the
second quarter. That's steeper than the 3% decline seen during the first
quarter.

"These lower domestic sales are expected to have a negative impact on
the company's earnings as well despite cost containment efforts," Office
Depot said in the filing.

Office Depot shares were down 4.9% Friday at $30.26. Last Friday, the
shares fell 2.3%. They opened lower Monday, dropping another 2.9% to
close at $32.32.

Trading in options on Office Depot shares was unusually brisk last
Friday, with strong demand for options to sell shares at a fixed price.
Options giving the right to sell Office Depot shares for $35 by the

5

third week of July traded more than 3,000 contracts Friday, representing
300,000 shares of stock. Since then, those options have nearly doubled
in value, market participants said.

Office Depot didn't give analysts the specific numbers on sales included
in the Thursday securities filing, analysts said. Still, they said the
tone of their conversations hinted at weak earnings. In some calls,
Office Depot officials mentioned that other companies including FedEx
Corp. (FDX) and Best Buy Co. (BBY) have recently reported disappointing
results, two analysts said.

"If you read between the lines - and it wasn't hard to do it - you
probably wanted to take your numbers down," one analyst said.

Indeed, more than a dozen analysts had cut their profit outlooks by
early Wednesday, according to Thomson Financial. "Channel checks suggest
that sluggish trends have persisted into the second quarter," Goldman
Sachs said in a research note last Friday afternoon, trimming its full
year earnings per share estimate by 7 cents, to $2.24. Monday afternoon,
Bear Stearns cut its full year estimate by 6 cents a share to $2.20,
citing "challenging trends at retail."

The staggered timing of the revisions was partly a result of the
staggered timing of the phone calls, two analysts said. Office Depot's
failure to warn all investors at the same time could catch the attention
of regulators, says Arthur Levitt, who was chairman of the SEC in 2000
when Regulation FD was enacted.

"Without knowing all the details, I'd still say this certainly violates
the spirit, if not the actual rule, of (Regulation) Fair Disclosure,"
Levitt says.

Office Depot's situation bears some similarities with previous cases the
SEC has brought alleging violations of Regulation FD at companies
including Raytheon Co. (RTN), said William D. Sherman, a partner at
Morrison & Foerster. In the Raytheon case, the company's chief financial
officer made a series of calls in early 2001 to analysts to let them
know their estimates for the company's first quarter results were too
high. The analysts lowered their estimates after the calls. Raytheon
settled the matter without paying a penalty.

Office Depot's Thursday filing may help it make a case that it made a
good faith effort to fix the problem, Sherman said.

-By James Covert, Dow Jones Newswires; 201-938-5360;
james.covert@dowjones.com

(Mohammed Hadi contributed to this article.)


  (END) Dow Jones Newswires
  06-29-07 1321ET
  Copyright (c) 2007 Dow Jones & Company, Inc.


     Subject Codes: I/OTS, I/RTS, I/XDJGI, I/XPFX, I/XISL, I/XNYA,
I/XRUS, I/XSP5, G/SEC, G/USG, N/DJIN, N/DJN, N/DJWB, N/CAC, N/CNW,
N/DJPN, N/DJS, N/DJSS, N/DJWI, N/FCTV, N/REG, N/TSY, N/WEI, M/CYC,
M/NMD, R/FL, R/NME, R/US, R/USS

Company Codes: ODP

6

IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF FLORIDA

OFFICE DEPOT, INC.,                    )
                                       )
          Plaintiff,                   )
                                       )
     vs.                               )          CIVIL ACTION FILE
                                       )          NO.
NATIONAL UNION FIRE INSURANCE )
COMPANY OF PITTSBURGH, PA.,            )
                                       )
          Defendant.                   )
                                       )
                                       )
_____ )

## COMPLAINT FOR BREACH OF CONTRACT
## AND DECLARATORY RELIEF

# EXHIBIT C



**AIG Domestic Claims, Inc.**
**Corporate Directors & Officers**
175 Water Street, Fifth Floor
New York, NY, 10038

Reed C. Kleinle
Complex Claims Director
212.458.1095 *(Direct)*
877.769.7252 *(Fax)*
reed.kleinle@aig.com

August 22, 2007

Robert D. Crocitto
ARC Excess & Surplus, LLC
1122 Franklin Avenue, 3rd floor
P.O. Box 9240
Garden City, NY  11530-9240

Re:  **Insured:**      **Office Depot, Inc.**
     **Matter:**       **Dow Jones Newswire by James Covert dated June 29, 2007; and**
                        **Securities and Exchange Commission letter dated July 17, 2007**
     **Policy No.:**   **965-63-88, Executive and Organization Liability Policy (the "Policy")**
     **Claim No.:**    **649-001494**

Dear Mr. Crocitto:

We are working with National Union Fire Insurance Company of Pittsburgh, PA ("National Union") on the above-referenced matter, which has been assigned to me for handling.  Kindly direct all future correspondence and communication to my attention using the above assigned claim number.

The purpose of this letter is to (1) apprise the Organization[1] as to National Union's preliminary coverage evaluation and reservation of rights, based on the information currently available to National Union; (2) advise that National Union accepts this matter as a Notice of Circumstances which may reasonably be expected to give rise to a Claim; (3) recommend that the Organization notify all other insurers that have issued insurance policies that might provide coverage with respect to this matter; and (4) request that the Organization or any insured seeking coverage provide us with additional information that it may presently have, or that it may obtain in the future relating to this matter, including but without limitation any such information that, in the Organization's view, might cause National Union to revisit its initial evaluation set forth herein.

We acknowledge receipt of your letter dated July 11, 2007 which enclosed a copy of the Dow Jones Newswire by James Covert dated June 29, 2007.  We also acknowledge receipt of your email dated July 20, 2007 which attached the Securities and Exchange Commission inquiry letter dated July 17, 2007.

---

[1] Capitalized terms, unless defined in this letter, are defined in the Insurance Policy.

Robert D. Crocitto
August 22, 2007
Page 2 of 3

Our comments herein are based upon the information submitted to us to date, and we note that this matter appears to be in an early stage, with the relevant facts not yet fully developed. As a result, our review is necessarily preliminary and subject to a reservation of all rights available under the Policy, applicable law or equity.

**The Policy**

Your notification referenced National Union's Executive and Organization Liability Insurance Policy No. 965-63-88, which is a claims made and reported policy. The Policy has an aggregate liability limit of $25,000,000 for the policy period November 30, 2006 through November 30, 2007. The Policy has a Retention of $2,500,000 applicable to each Securities Claim or other Claim.

With respect to Coverage A, B and C, solely with respect to Claims first made against an Insured during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of the Policy, and subject to the other terms, conditions and limitations of the Policy, the Policy affords the following coverage:

Coverage A (Executive Liability Insurance) of the Policy provides coverage for the Loss of any Insured Person arising from a Claim made against them for any Wrongful Act of such Insured Person, except when and to the extent that the Organization has indemnified such Insured Person.

Coverage B(ii) (Organization Insurance: Indemnification of an Insured Person) provides coverage for the Loss of the Organization arising from a Claim made against an Insured Person for any Wrongful act of such Insured Person, but only to the extent that the Organization has indemnified the Insured Person.

Coverage B(i) (Organization Liability) provides coverage for the Loss of the Organization arising from a Securities Claim made against the Organization for any Wrongful Act of the Organization.[2]

**Coverage Review**

National Union accepts the documents[3] submitted as a Notice of Circumstances which may reasonably be expected to give rise to a Claim in accordance with the Notice and Claim Reporting provisions in Section 7 of the Policy. Section 7 provides, in pertinent part:

---

[2] The Policy also offers coverage under Coverage C for Outside Entity Executive Liability Insurance and Coverage D for Crisisfund Insurance. Neither of these coverages appears to be implicated by this matter at this time. Please advise if the Organization has, or in the future obtains, any information or documents that might cause National Union to revisit this initial determination.

[3] The documents consist of your letter dated July 11, 2007, the Dow Jones Newswire by James Covert dated June 29, 2007, and the Securities and Exchange Commission inquiry letter dated July 17, 2007.

Services Provided by Members of
American International Group, Inc.

Robert D. Crocitto
August 22, 2007
Page 3 of 3

7.    *Notice/Claim Reporting Provisions*

(c)    *If during the Policy Period or during the Discovery Period (if applicable) an
       Organization or an Insured shall become aware of any circumstances which may
       reasonably be expected to give rise to a Claim being made against an Insured and shall
       give written notice to the Insurer of the circumstances, the Wrongful Act allegations
       anticipated, and the reasons for anticipating such a Claim, with full particulars as to
       dates, persons and entities involved, then a Claim which is subsequently made against
       such Insured and reported to the Insurer alleging, arising out of, based upon or
       attributable to such circumstances or alleging any Wrongful Act which is the same as or
       related to any Wrongful Act alleged or contained in such circumstances, shall be
       considered made at the time such notice of such circumstances was given.*

In the event that the Organization or any insured seeking coverage under the Policy possesses or
obtains any additional relevant information that could affect coverage for this matter, kindly
forward that information promptly and we will consider it in light of the Policy's terms and
conditions.

We continue to reserve all of National Union's rights and privileges, at law and in equity, under
the Policy, including, without limitation, the right to apply other provisions or exclusions of the
Policy as appropriate, and the right to supplement this coverage evaluation as circumstances may
warrant.  Nothing contained in this letter is intended nor should it be construed as a waiver of
any term, condition or provision of the Policy.

If you have any questions with respect to the foregoing, please feel free to contact me.

Very truly yours,

*Reed C. Kleinle*

Reed C. Kleinle


cc via email:

Kathy L. Schroeder
Director, Risk Management
Office Depot, Inc.
2200 Old Germantown Rd.
Delray Beach, FL  33445-8223
kathy.schroeder@officedepot.com

JS 44 (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   **NOTICE: Attorneys MUST Indicate All Re-filed C**

**Apr. 10, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA.- MIAMI

D.C.

ELECTRONIC

## I. (a) PLAINTIFFS

OFFICE DEPOT, INC.

**DEFENDANTS**

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

**(b)** County of Residence of First Listed Plaintiff   Palm Beach
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   New York
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Joanne M. O'Connor, Esquire  (Bar No.  0498807)
Jones Foster Johnston & Stubbs, PA, 505 South Flagler Drive,
Suite 1100, West Palm Beach, FL 33401 (561-659-3000)

Attorneys (If Known)

**(d)** Check County Where Action Arose: ☐ MIAMI- DADE  ☐ MONROE  ☐ BROWARD  ☑ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE
HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☑ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☑ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

09 CV 80554   KAM / LRJ

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☑ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Re-filed- (see VI below)  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).

(See instructions second page:)

a) Re-filed Case ☐ YES ☑ NO   b) Related Cases ☑ YES ☐ NO

JUDGE Hurley   DOCKET NUMBER   07-81038, 07-81059

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

28 USC Sec. 1332, 2201, 2202. Claim for declaratory relief re: insurance coverage per 28 USC 2201, damages for breach of contract and claim per F.S. 627.428.
LENGTH OF TRIAL via  7  days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ Excess of $10 Million   CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE   4/9/09

FOR OFFICE USE ONLY

AMOUNT  350⁰⁰   RECEIPT #  72568 FP