IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO: 09-80554-CIV-MARRA/JOHNSON

OFFICE DEPOT, INC.,                          :
                                             :
    Plaintiff,                            :
                                             :
    vs.                                   :
                                             :
NATIONAL UNION FIRE INSURANCE                :
COMPANY OF PITTSBURGH, PA. and               :
AMERICAN CASUALTY INSURANCE                  :
COMPANY OF READING, PA.                      :
                                             :
    Defendants.                           :
_____     :

**DEFENDANT NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PA.'S RESPONSE IN OPPOSITION TO
OFFICE DEPOT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Office Depot's Motion for Partial Summary Judgment [D.E. 102] should be denied. Office Depot purchased (1) limited coverage under Coverage B(i) as an entity for a "Securities Claim" made against Office Depot as an "Organization," and (2) broader coverage under Coverage B(ii) for Office Depot's obligation to indemnify its individual directors, officers, and employees for a Claim, which here was the issuance of the SEC subpoenas and the written notices that a proceeding might be commenced against them ("Wells Notice"). The investigation costs at issue do not fall within either coverage.

Office Depot never addresses the limited scope of Coverage B(i), which is the sole coverage it purchased as an Organization for a very narrow and specific type of claim: namely, a "Securities Claim." [D.E. 101, Ex. 1 Coverage B(i) and § 2(n)]. Only Insured Persons -- Office Depot's officers and directors -- have the broader coverage for a "Claim," as well as for a "Securities Claim" and an "Employment Practices Claim." Office Depot likewise never

addresses the fact that investigations of an Organization are expressly excepted from the definition of a "Securities Claim" in Section 2(y), which states that a "Securities Claim" means "a **Claim**, <u>other than an</u> administrative or regulatory proceeding against, or <u>investigation of an</u> **Organization** … alleging a violation of " the securities laws.  (underlining added).

Nor does Office Depot ever address the fact that the costs it incurred in relation to the SEC investigation and Office Depot's own internal Audit Committee investigation were not costs "resulting solely from" either the shareholders' securities lawsuits later asserted against Office Depot, which National Union has acknowledged were a Securities Claim, or the later Claims against its officers and directors when the SEC issued subpoenas and Wells Notices to them.  Instead, those costs resulted from the investigations themselves.  Under Section 2(f), however, "Defense Costs" covered under the Policy are only those "resulting solely from" a "Claim" (which under Section 2(b) specifically includes a "Securities Claim").

Although Office Depot acknowledges the controlling doctrines of policy construction, it then disregards those doctrines to (1) read terms in isolation, (2) ignore the express coverage-determinative terms, and (3) re-write the Policy to create coverage that is specifically excluded. The Court should reject Office Depot's strained interpretation in an effort to convert the coverage of this specialized Policy into much broader coverage nowhere provided in the Policy. Because the Policy terms are unambiguous on their face, the Court should not resort to extraneous evidence, including expert testimony, to afford the coverage Office Depot seeks.

Office Depot's motion essentially rests on its assertion that it was reasonable for it to voluntarily cooperate with the SEC investigation and to conduct its own internal investigation, and hence the costs it incurred in those investigations should be covered by the Policy.  But neither the quantum of Office Depot's investigation costs, nor the practical reasons why it

responded the way it did to the SEC's investigation, have anything to do with whether insurance coverage for those costs exists under the Policy.  Rather, the Policy's express terms govern the coverage that Office Depot purchased and that coverage does not change just because only certain of Office Depot's costs are covered under those terms.  As the court pointedly noted in <u>In re Ambassador Group, Inc., Litigation</u>, 738 F. Supp. 57, 62 (E.D.N.Y. 1990), "[a]ny doubts movants' attorney may eloquently and artfully create cannot avoid the Policy's plain terms or the limited coverage it provides."

I.     **THE INTERPRETATION OF THE POLICY IS THE SAME UNDER BOTH FLORIDA AND NEW YORK LAW.**

The Court need not resolve the choice-of-law issue in ruling on the motions for summary judgment because both Florida and New York are uniform as to the Policy's interpretation. <u>Eastern Air Lines, Inc. v. The Ins. Co. of Pa.</u>, No. 96 CIV 7113(MGC), 2001 WL 1111514, at *5 (S.D.N.Y. Sept. 21, 2001) (noting uniformity in law governing contract interpretation under laws of Florida and New York and concluding there was accordingly no need to resolve the choice-of-law issue to rule on summary judgment).

II.     **OFFICE DEPOT'S PROPOSED INTERPRETATIONS OF THE POLICY SHOULD BE VIEWED AGAINST ITS BUSINESS SOPHISTICATION.**

Office Depot does not address the Policy's insuring provision or its express definition of a "Securities Claim" as a "Claim," other than an . . . investigation of" Office Depot.  [<u>See</u> D.E. 101, Ex. 1 § 2(y).]  Instead, Office Depot attempts to create an ambiguity in other terms of the Policy to create coverage for its investigation costs.  But a plain reading of the Policy, read as a whole, shows it is unambiguous.  Office Depot's creative arguments cannot create an ambiguity that does not exist.

Under New York law, courts do not "reach out" to find ambiguities in the policy language.  <u>In re Ambassador Group, Inc., Litigation</u>, 738 F. Supp. at 63.  Nor does the doctrine

of *contra proferentem* apply where the insured is "sophisticated and was instrumental in crafting various parts of the agreement, and that plaintiff, while not an insurance company, had equal bargaining power and acted like an insurance company by maintaining a self-insured retention." Cummings, Inc. v. Atlantic Mut. Ins. Co., 56 A.D.3d 288, 290 (N.Y. App. Div. 2008); Dapuzzo v. Globalvest Mgmt. Co. L.P., 263 F. Supp. 2d 714, 729 (S.D.N.Y. 2003) (". . .the Second Circuit has noted that New York law has become increasingly reluctant, except 'as a matter of last resort', to apply the rule construing ambiguous contract terms against the drafter and that the doctrine is 'generally inappropriate if both parties are sophisticated.'").

The same is true under Florida law.  See e.g., The Sch. Bd. of Broward County v. The Great Am. Ins. Co., 807 So. 2d 750, 752 (Fla. 4th DCA 2002) (rejecting construction of insurance policy against drafter because insured was sophisticated business that negotiated terms of policy); RTG Furniture Corp. v. Indus. Risk Insurers, 616 F. Supp. 2d 1258, 1265 (S.D. Fla. 2008) (general rule of strict construction against insurer does not apply when insured is sophisticated and had specialized brokers negotiating policy coverage).

Office Depot has over $15 billion in worldwide sales.  [D.E. 101, Exs. 7-8.]  It has a Global Risk Management department that has purchased executive and organizational coverage since at least November 2000.  [See D.E. 104-3, Dec. K. Schroeder, ¶¶ 2-3.]  It used an insurance broker to negotiate this Policy, and was itself involved in negotiating terms.  [See National Union's Response to Office Depot's Statement Facts, Exhibit 1, Dep. K. Schroeder, 96:4-12, May 14, 2010.]  Its strained interpretations of the Policy should be rejected in light of its business sophistication.

Furthermore, ambiguities are construed against the drafter only as a last resort if the contract is ambiguous after applying the general rules of contract construction.  Schering Corp.

v. Home Ins. Co., 712 F.2d 4, 10 (2d Cir. 1983) (established law of New York is to construe ambiguity against drafter as last resort); Sphinx v. Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 412 F.3d 1224, 1227 (11th Cir. 2005) (same under Florida law).

## III.   EXPERT TESTIMONY CANNOT CREATE AN AMBIGUITY.

Office Depot submitted expert opinions in support of its Motion.  [D.E. 104, Exs. 1 and 2.]  That extrinsic evidence should not be considered in interpreting the Policy, which is a legal determination for the Court to make without reference to expert opinions.  See, e.g., Long Island Lighting Co. v. Allianz Underwriters Ins. Co., 301 A.D.2d 23, 32 n. 2 (N.Y. App. Div 2002) ("We also note that whether a contract is ambiguous is a question of law for the court, as to which expert testimony is not cognizable"); Clarendon Am. Ins. Co. v. Bayside Rest., LLC, No. 8:05-cv-1662-T-17-TGW, 2006 WL 2729486, at *1-2 (M.D. Fla. Sept. 26, 2006) (refusing to consider expert opinions to interpret insurance policy at summary judgment stage because that interpretation is legal issue for court).

## IV.   THE PLAIN LANGUAGE OF THE POLICY DOES NOT PROVIDE COVERAGE FOR OFFICE DEPOT'S INVESTIGATION COSTS.

The Court's interpretation of the coverage under this Policy begins with a plain reading of its terms.  See In re Prudential Lines, Inc., 170 B.R. 222, 233 (S.D.N.Y. 1994); First Speciality Ins. Co. v. GRS Mgmt. Assoc. Inc., No. 08-81356-CIV, 2009 WL 2524613, at *4 (S.D. Fla. Aug. 17, 2009) (resolving coverage dispute on summary judgment by reading plain language of the policy).  The Court cannot read terms in isolation; rather, it must give meaning to each term in the Policy in light of the Policy as a whole.  In re Prudential Lines, Inc., 170 B.R. at 233.  Under these established principles, there is no coverage for the costs that Office Depot incurred in

connection with either the SEC's investigation or Office Depot's own Audit Committee's internal investigation.

As shown in National Union's Motion for Summary Judgment [see generally, D.E. 101], the coverage afforded Office Depot as an "Organization" under Coverage B(i) is limited to a "Securities Claim" made against it, and the definition of a "Securities Claim" under Section 2(y), is "a Claim other than an administrative or regulatory proceeding against, or investigation of an Organization ... alleging a violation of" the securities laws.  [See D.E. 101, pp. 7-11 and Ex. 1 §2(y).] (underlining added).   The SEC's Formal Order of Investigation, which Office Depot wrongly contends constituted a Securities Claim, was by its very terms an investigation to determine whether there was reason to believe Office Depot had violated the securities laws. The Order did not allege any violation of the securities laws by Office Depot, as required by the Policy's definition of a Securities Claim.  Instead, the Order specified the SEC was investigating a "possible violation" of the securities laws.  [D.E. 101, Ex. 16.]

Furthermore, coverage for Office Depot's indemnification of its officers and directors under Coverage B(ii) is limited to "Loss" which includes "Defense Costs" for a "Claim" against them.   With respect to an "investigation" of an "Insured Person" (here, the officers and directors), a "Claim" is defined in Section (2)(b)(3) to exist either (1) "once such Insured Person is identified in writing by such investigating authority as a person against whom a proceeding described in Definition (b)(2) may be commenced," or (2) "in the case of an investigation by the SEC . . ., after the service of a subpoena upon such Insured Person."  (underlining supplied). Although National Union has acknowledged coverage for those costs, Office Depot seeks recovery of other costs incurred in the investigation before any subpoena or Wells Notice was issued to an Insured Person.

Importantly, Section 2(f) defines "Defense Costs" as those "resulting solely from" a Claim (which includes a Securities Claim). [D.E. 101, Ex. 1 § 2(f).]  Office Depot completely ignores that limitation.  National Union has acknowledged (subject to its reservation of rights) coverage for Office Depot's costs resulting solely from the Securities Claims asserted against it (the securities lawsuits), as well as costs resulting solely from the officers' and directors' receipt of an SEC subpoena or a Wells Notice.  [See D.E. 101, Ex. 20 and D.E. 103, ¶ 24.]

## V.     OFFICE DEPOT'S NOTICE OF CIRCUMSTANCES DOES NOT CREATE COVERAGE FOR ITS INVESTIGATION COSTS.

Section 7 is titled "Notice/Claim Reporting Provisions."  Office Depot states that under Clause 7(c) of that section, "if a timely notice of circumstances is submitted, a subsequent Claim relates back so long as the Claim alleges Wrongful Acts related to the previous notice."  [D.E. 102, p. 10.]  Arguing that its Notice of Circumstances contained allegations of Wrongful Acts that were related to the later-filed Claims and Securities Claims, Office Depot asserts that all costs incurred in connection with those Wrongful Acts, including the costs of the SEC investigation and its own internal investigation, are covered.  Not so.

To begin with, "Wrongful Acts" are simply matters that can give rise to a later claim if properly reported by a Notice of Circumstances.  They do not themselves give rise to coverage.  Only a "Claim" or a "Securities Claim" gives rise to coverage, and until such Claims are actually made, there is nothing more than a potential claim, for which there is no coverage.  As the court explained in National Stock Exchange v. Federal Insurance Co., No. 06 C1603, 2007 WL 1030293, at *6 (N.D. Ill. Mar. 30, 2007) "[i]f the parties intended to define 'Defense Costs' as including costs incurred in defending or investigating potential claims, they should have stated as such. . . ." Id.

Instead of doing that, "Defense Costs" are defined as costs "resulting solely from the investigation, adjustment, defense and/or appeal of a Claim . . . ." [D.E. 101, Ex. 1 §2(f)] (underlining added). That cannot happen until a Claim is made against an Insured Person or Securities Claim is made against Office Depot. Office Depot's argument improperly requires the Court to ignore the Policy's carefully defined triggering events for coverage.

Second, Office Depot improperly fails to read Clause 7(c) in conjunction with Section 5, even though Section 5 expressly cross-references Clause 7(c). See In re Prudential Lines, Inc., 170 B.R. at 233 (stating the court cannot read terms in isolation but rather must give meaning to each term in the policy). Section 5, titled, "Limit of Liability (For All Loss, Including Defense Costs)," states "a **Claim** which is made subsequent to the **Policy Period** . . . pursuant to Clause 7(b) or 7(c) is considered made during the **Policy Period** . . . ." (underlining added). Section 5 shows that Clause 7(c) is only applicable to a Claim made "subsequent" to the Policy Period.

The only Claims that were made subsequent to the Policy Period were the Claims arising from the issuance of the SEC's subpoenas and Wells Notice to Office Depot's officers and directors. Under Clause 7(c), those Claims were covered by the Policy because they were properly reported during the Policy Period by virtue of the Notice of Circumstances. On the other hand, the Securities Claims against Office Depot itself were made during the Policy Period. Those Securities Claims were noticed in accordance with Clause 7(a), which requires Claims made during the Policy Period to be reported during the Policy Period and says nothing at all about relation-back.

Read as a whole, Section 5 shows that Clause 7(c) simply provides a reporting mechanism by which Office Depot could obtain coverage for Claims first made subsequent to the Policy Period. It does not operate to create more coverage for a Claim made and reported

after the Policy Period than would exist if the Claim was made and reported during the Policy Period, nor does it create broader coverage than the insuring provisions set forth in Coverage B(i) and (ii).  Yet that is exactly the absurd result Office Depot improperly seeks by its argument. Gen. Star Indem. Co. v. W. Fla. Village Inn, Inc., 874 So. 2d 26, 30 Fla. 2d DCA 2004) (court applies plain language of policy in light of all policy terms and avoids construction leading to absurd result); Brunetto v. Mass. Mut. Life Ins. Co., 200 F. Supp. 2d 380, 382 (S.D.N.Y. 2002) (stating same under New York law).

Office Depot's failure to address Section 5 is especially telling because Office Depot's insurance expert relies on a statement in the CODA Premier "Directors and Officers Policy" that a "Claim that is subsequently made against the Insureds arising out of such circumstances shall be treated as a Claim made during the first Policy Year in which the Insured or the Company gave such notice."  [D.E. 104-1, ¶ 15.]  Mr. Granof then states that if this Policy included the same "Policy Year" limitation, National Union would have a "much stronger basis for arguing that the costs of investigating the potential claims underlying the Notice of Circumstances are not covered."  [Id. ¶ 16.]  Office Depot and its expert ignore that, by virtue of Section 5, the Policy does contains a "Policy Year" limitation.

Office Depot's argument fails for yet another, independent reason.  It cannot be disputed that the costs Office Depot seeks to recover were incurred in response to the SEC investigation and Office Depot's Audit Committee investigation, and Office Depot's production of voluminous documents and testimony in them.  As shown in National Union's Motion for Summary Judgment, neither of those investigations was a Securities Claim.  They did not allege that Office Depot had violated the securities laws, as required by the Policy's definition of a "Securities Claim."  Rather, both were seeking to determine whether there had been any such

violations.  Nor was any Claim made against Office Depot's officers and directors during those investigations until the SEC issued a subpoena or Wells Notice to them.

Consequently, the costs incurred in connection with those investigations did not result solely from a Securities Claim or Claim -- they were incurred for other purposes, i.e., the investigations themselves.  Office Depot's corporate representative admitted as much, conceding that "the direct reason for the investigation costs was certainly to be responsive to the SEC inquiry . . . ."  [D.E. 105, Ex. 4a, Dep. S. Calkins, 128:15-21 and 127:15-22.]  Although he asserted the work also was done in "contemplation of potential litigation" down the line, the dual purpose of such means the costs of that work did not "result[] solely from" the actual making of a Claim or Securities Claim, as required under the Policy.  Id.

To the contrary, no costs could "result[] solely from" a Claim or Securities Claim until such a Claim was made.  The court made this point in National Stock Exchange, stating "[c]ommon sense dictates that a Claim must first exist in order for plaintiff to defend or investigate it."  2007 WL 1030293 at *6.  The fact that post-Policy Claims against Office Depot's officers and directors were considered made during the Policy Period by virtue of the Notice of Circumstances does not alter the actual purposes for which the costs at issue were incurred in the first instance.  To find otherwise would read the term "solely" out of the Policy definition of "Defense Costs" and ignore the limiting effect of that Policy term.

Furthermore, Office Depot's argument ignores the established rule of policy construction that "the existence or non-existence of an exclusionary provision in an insurance contract is not at all relevant until it has been concluded that the policy provides coverage for the insured's claimed loss."  Siegle v. Progressive Consumer Ins. Co., 819 So. 2d 732, 740 (Fla. 2002).  As the Second Circuit explained in Commercial Union Ins. Co. v. Flagship Marine Servs., Inc., "the

absence of an exclusion cannot create coverage; the words used in the policy must themselves express an intention to provide coverage for liability for the kind of occurrence or injury alleged by the claimant."  190 F.3d 26, 33 (2d Cir. 1999) (internal citations and quotations omitted).

Thus, Office Depot has the burden to prove that its claim is covered in the first instance, and it cannot satisfy that burden by citing the absence of an exclusion.  Thompson v. Power Auth. of State of N.Y., 217 A.D.2d 495, 496 (N.Y.A.D. 1st Dept. 1995) (stating under New York insured has burden of proving a claim is covered by policy); Key Custom Homes, Inc. v. Mid-Continent Cas. Co., 450 F. Supp. 2d 1311, 1316 (M.D. Fla. 2006) (same under Florida law). Office Depot wrongly relies on Fayad v. Clarendon Nat'l. Ins. Co., 899 So. 2d 1082 (Fla. 2005), for its argument that unless something is excluded, it is covered.  [D.E. 102, p. 10.]  The policy in Fayad was an "all-risk" policy that covered everything unless expressly excluded.  Fayad, 899 So. 2d at 1089.  This Policy is not an all-risk policy.

Quite to the contrary, the insuring provisions of this claims-made Policy make it clear that coverage only is afforded for matters specifically defined as a Claim against an Insured Person or a Securities Claim against Office Depot.  No coverage exists until such a claim actually is made.

In sum, the fact that the provision for a "Notice of Circumstances" does not contain a sentence excluding costs of investigations of the reported Wrongful Acts does not create ambiguity in this Policy, which expressly provides that:  (1) it only covers a Securities Claim against Office Depot as an Organization or a Claim against Office Depot's officers and directors, (2) investigations of Office Depot as an "Organization" are not a Securities Claim, (3) the Claims against the officers and directors arose only upon the issuance of a SEC subpoena or Wells Notice, and (4) "Defense Costs" are covered only if they "result[] solely from" a "Claim" or

"Securities Claim."  Costs incurred in relation to the SEC investigation and Office Depot's own internal audit investigation did not "result[] solely from" the later-made Claims and Securities Claims.

**VI.    THE DEFINITION OF A SECURITIES CLAIM UNAMBIGUOUSLY EXCLUDES COSTS RESULTING FROM INVESTIGATIONS OF OFFICE DEPOT ITSELF.**

> **a.    The Definitions of Claim and Securities Claim Provide Different Coverage for Different Insureds.**

Office Depot contends that because the definition of a Claim at Section 2(b) states "'**Claim'** shall include any **Securities Claim**," and the definition of Securities Claim in Section 2(y) requires it to be a "**Claim**," these definitions are "completely circular" and "hopelessly ambiguous." [D.E. 102, p. 12.] Office Depot further argues there is no way to tell whether these definitions are supposed to expand or limit coverage and therefore the Policy is ambiguous with respect to coverage for the costs of an investigation of Office Depot.  Id.  Office Depot then asserts that its costs incurred responding to such investigation are covered under this Policy.  Id.

Saying there is an ambiguity does not mean there is one and Office Depot's argument is plainly wrong.  Office Depot wholly ignores that it seeks coverage for its investigation costs as an "Organization," and the insuring clause of the Policy provides that coverage for Office Depot as an "Organization" is limited to coverage for a "Securities Claim."  [See D.E. 101, Ex. 1 Coverage B(i) and §2(n).]  The definition of a "Securities Claim" in Section 2(y) includes a "Claim other than an … investigation of an Organization . . . ."  (underlining added).  Only Insured Persons -- the officers and directors -- are insured for the costs of an investigation after they receive a subpoena or Wells Notice.

Provisions are not ambiguous simply because they are "complex and require analysis . . . ."  Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So. 2d 161, 165 (Fla. 2003).  Read together,

the definitions here make perfect sense. "Insured Persons" -- Office Depot's officers and directors, not Office Depot as "an Organization" -- are broadly covered under Coverage B(ii) for a "Claim," including a "Securities Claim" as well as any "Employment Practices Claim." They are covered for investigation costs after they receive a subpoena or Wells Notice. On the other hand, Office Depot is covered under Coverage B(i) only for a very specific type of Claim -- a "Securities Claim," which is defined to be a "Claim other than an … investigation" of Office Depot. The officers and directors, in short, have all the same coverage as the company itself, but also have additional coverage as well. Office Depot improperly asks this Court to disregard the plain language of the definitions of a "Securities Claim" and a "Claim."

Office Depot also ignores the fact that if the definitions of Claim and Securities Claim were meant to expand coverage for an Organization in the way Office Depot argues, the Policy would not limit Office Depot's organizational coverage to a "Securities Claim." Instead, all Insureds would simply have the same coverage -- *i.e.*, coverage for a "Claim." The Policy specifically provides otherwise, and the purpose of defining coverage differently between the Insured Persons and Office Depot itself was to achieve the exact result that Office Depot now tries to avoid -- the Organization is covered only for a "Securities Claim," which does not include investigations of the "Organization." [D.E. 101, Ex. 1 § 2(y).]

Office Depot makes a vain effort to avoid the plain language of the definition of a "Securities Claim" by pointing to the first clause in the definition of a "Claim" at Section 2(b)(1), which refers generally to "a written demand for monetary, non-monetary or injunctive relief." Office Depot asserts that creates coverage for its costs incurred in investigations. [D.E. 102, p. 12-13.] It does no such thing.

First, Office Depot's argument ignores that Section 2(f)'s definition of a "Claim" includes a specific provision dealing with regulatory investigations such as the SEC's investigation, which expressly provides that such investigation costs are covered once a Wells Notice or subpoena is issued to an Insured Person. [D.E. 101, Ex. 1 § 2(b)(2).] Furthermore, as discussed below, Section 2(b)(2) provides certain triggering events, such as the "service of a complaint," that give rise to covered Defense Costs. Under Office Depot's argument that any regulatory request for discovery during an investigation is covered under the general provision for a demand for non-monetary relief, both of these specific provisions would be rendered meaningless.

Florida's First District made exactly this point in rejecting an argument similar to Office Depot's in Acosta, Inc. v. Nat'l Union Fire Ins. Co. of Pittsbrugh, Pa., 35 Fla. Weekly D967, 2010 WL 1709176, at *12 (Fla. 1st DCA 2010). As that court aptly put it, "[i]f a 'claim' were simply 'a demand for money damages or other relief, regardless of the form in which that demand is presented,' there would have been no reason for the drafter of the policy to provide any alternative to the first type of claim listed in the policy." Id. (internal citation omitted). That is exactly the case here as well.

Furthermore, the only type of Claim Office Depot has coverage for under Coverage B(i) as an "Organization" is a "Securities Claim." The specific definition of a "Securities Claim" to only include a Claim "other than" an investigation controls over the general reference to a demand for "non-monetary . . . relief" as part of the definition of a "Claim." Idearc Media Corp. v. M.R. Friedman & G.R. Friedman, P.A., 985 So. 2d 1159, 1161 (Fla. 3d DCA 2008) (stating basic rule of contract construction that the specific terms control over general terms); Waldman v. New Phone Dimension, Inc., 109 A.D.2d 702, 704 (N.Y. App. Div. 1985) (stating same under

New York law).  Under Office Depot's argument, its costs in response to any demand for documents or testimony during an investigation of it would be covered, even though investigations are not a "Securities Claim."  That would be an absurd result.

      **b.**      **SEC Investigations are Different from SEC Administrative Proceedings.**

Office Depot relies on *Black*'s dictionary in arguing that the SEC's investigation is an "administrative proceeding" and it cites several cases for its argument that investigations are the same as "proceedings."  [D.E. 102, p. 14-15 and fn. 9.]  Office Depot seeks to thereby come within the Policy provision that coverage exists for an administrative proceeding simultaneously conducted against Office Depot and an Insured Person. [D.E. 101, Ex. 1, § 2(y).]  Section 2(b)(2) of the Policy provides that an "administrative proceeding" is "commenced by: (i) service of a complaint or similar pleading; (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or (iii) receipt or filing of a notice of charges."  [D.E. 101, Ex. 1 §2(b)(2).]   Neither the SEC nor Office Depot's Audit Committee "commenced" an "administrative proceeding" against Office Depot by any of those acts.

Under controlling precedents, moreover, an SEC investigation is not an administrative proceeding.  The SEC can investigate whether there have been violations of the securities laws.  If the investigation shows there is reason to believe they have been violated, the SEC can commence an administrative proceeding to make <u>adjudicative</u> determinations regarding those violations.

Because of its adjudicative nature, due process protections are afforded in an administrative proceeding that are not afforded in an investigation.  The Supreme Court made that point in <u>Hannah v. Larche</u>, 363 U.S. 440, 442 (1960):

> [W]hen governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies

use the procedures which have traditionally been associated with the judicial process. On the other hand, when governmental action does not partake of an adjudication, as for example, when a general fact-finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used.

Id. at 442. It specifically identified the SEC as an agency that "distinguishes between adjudicative and investigative proceedings. . . ." Id. at 447 (citations and footnotes omitted) (emphasis added); see also Wells v. SEC, No. 96-6237, 1997 WL 274270, at *3 (2d Cir. May 22, 1997) (relying on Hannah and stating "the Supreme Court has distinguished between investigative and adjudicative proceedings by administrative agencies in describing what due process requires"); Gold v. SEC, 48 F.3d 987, 991-992 (7th Cir. 1995) (same). In this case, the SEC never moved from an investigation to an adjudicative proceeding with due process rights.

Like the SEC, Sections 2(b)(2) and 2(b)(3) of the Policy specifically distinguish between investigations and administrative proceedings. There would be no need for this limitation if an "administrative investigation" was encompassed within the definition of "administrative proceeding." Instead, that limitation would be meaningless.

Office Depot cites Foster v. Summit Med. Sys., Inc., 610 N.W. 2d 350, 354-55 (Minn. Ct. App. 2000) and Minuteman Intern'l, Inc. v. Great Am. Ins. Co., No. 03 C 6067, 2004 WL 603482, at *4 (N.D. Ill. Mar. 22, 2004), two cases where carriers did not dispute that SEC investigations were covered under the particular terms of their policies. [D.E. 102, p. 14.] Office Depot also cites cases that addressed the term "proceeding" outside of the context of securities regulation or the SEC. See Tele Tech of Conn. Corp. v. Dep't of Pub. Util. Control, 855 A.2d 174, 185 (Conn. 2004); Muckleshoot Indian Tribe v. Wash. Dep't of Ecology, 50 P.3d 668, 677 (Wash. Ct. App. 2002); Crane v. Az. Republic, 972 F.2d 1511, 1518 (9th Cir. 1992). None of these cases address the points National Union makes here, and they certainly do not

overcome <u>Hannah</u>, which establishes that SEC administrative proceedings are different from SEC investigations.

Office Depot also cites two cases where, unlike here, the policy did not define what constituted a claim.  <u>See</u> <u>Polychron v. Crum & Forster Ins. Co.</u>, 916 F.2d 461, 463 (8th Cir. 1990) ("word 'claim' not defined in the Policy"); <u>Richardson Electronics, Ltd. v. Fed. Ins. Co.</u>, 120 F. Supp. 2d 698, (N.D. Ill. 2000) ("The term 'claim' is not defined in the policy . . ."). Here the definition of Securities Claim expressly excepts investigations of Office Depot as an Organization, and a "Claim" is defined in terms of triggering events that only occurred here when the SEC subpoenas and Wells Notices were issued to Insured Persons.

Other cases rest on policy language much broader than the Policy language here.  For instance, Office Depot cites to <u>National Stock Exchange</u>, 2007 WL 1030293 at *3, where the court concluded that defense costs incurred by an individual insured were covered after the date the SEC issued a formal order.  <u>Id.</u>  The policy at issue there, however, specifically defined a "Claim" as a "formal administrative or regulatory proceeding commenced by the filing of a notice of charges, <u>formal investigative order</u>, or similar document." <u>Id.</u> (underlying supplied).

In sharp contrast, the definition of a Claim in Section 2(b) <u>does not</u> include a "formal investigative order" directed to Office Depot as an Organization.  Instead, Section 2(b) only provides coverage for costs incurred in an investigation after the service of an SEC subpoena or a Wells Notice upon an Insured Person.  The SEC's January 2008 Formal Order does not satisfy those express coverage requirements.  Nor does it allege a violation of the securities laws as required under Section 2(y)'s definition of a Securities Claim.

Office Depot also relies on <u>Pepsico, Inc. v. Cont. Cas. Co.</u>, 640 F. Supp. 656 (S.D.N.Y. 1986), to argue that its investigation costs and the costs to restate its financials are covered.

[D.E. 102, p. 19.]  The case provides no support for that.  The Pepsico court actually excluded the costs Pepsico paid to restate its financials.  640 F. Supp. at 661.  Furthermore, Pepsico did not involve organizational coverage, and hence it does not address the effect that an express exclusion for coverage of organizational investigation costs, like the exclusion in the Policy here for the costs of investigations of Office Depot, would have had on its coverage analysis. Moreover, the decision does not disclose any definition of a claim and it cannot be determined if it is like the one in Office Depot's Policy.

Office Depot's reliance on Joseph P. Bornstein, Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 828 F.2d 242 (4th Cir. 1987), is similarly misplaced.  [D.E. 102, pp. 15.]  In Bornstein, the issue was whether an insured person was covered for the costs related to a grand jury investigation and indictment.  Id. at 243-44.  The issue was whether the provision affording coverage there for a "proceeding brought by a government regulatory agency seeking non-pecuniary relief" covered grand jury costs.  Id. at 244.  Unlike Bornstein, Section 2(y) of this Policy excludes coverage for investigations of Office Depot as an "Organization" and only covers investigations of Insured Persons after the triggering events identified in the Policy.

### c.   There Was No Simultaneous Administrative Proceeding Maintained Against Office Depot And An Insured Person.

Office Depot points to the coverage afforded where there is an administrative proceeding simultaneously against the Organization and an Insured Person.  [D.E. 102, pp. 15-16.]  Office Depot then states that "[t]here is no dispute that simultaneous investigatory proceedings were commenced as early as July 31, 2007, when the SEC directed Office Depot to preserve all the records of numerous employees and officers who are Insured Persons, as defined in the AIG policy."  [Id.] (underlining supplied).  But that directive was issued as part of the SEC's investigation of Office Depot as an Organization and, as shown above, that investigation was not

an "administrative proceeding" against anyone.  [See D.E. 101, p. 15.]  Instead, the SEC was merely investigating "possible" violations.  [Id., Ex. 16.]

Office Depot also asserts that its costs in connection with an internal Audit Committee investigation triggered by an employee's whistleblower letter pre-dating the SEC inquiry are covered.  [See D.E. 102, p. 3 and D.E. 101, p. 3, ¶ 6, Exs. 5-8.]  That is incorrect.  That internal investigation did not commence with any of the triggering events specified in Section 2(b)(2), nor did it allege any violation of the securities laws.

### d.   The Reasonableness of Office Depot's Responses Does Not Create Coverage.

In large part, Office Depot's plea for coverage has nothing to do with what the Policy says.  Instead, it rests on the fact that Office Depot reasonably responded to the SEC and Audit Committee investigations and thereby incurred the associated costs.   But Office Depot improperly conflates the practical reasons for its responses to the investigations with whether those responses were covered under the Policy.

This claims-made Policy provided limited coverage for specific matters identified by the Policy.  Office Depot very well may have acted reasonably in undertaking its extensive efforts in response to the SEC and the Audit Committee investigations.  Those practical realities, however, do not create insurance coverage for the enormous resulting costs that do not fit within the coverage afforded by the Policy's terms.  As the Court observed in In re Ambassador Group, Inc., Litigation, "'[t]he fact that [the insured] may have contracted for coverage that was of little use to it at the time [of the loss] [sic] does not mean that it is entitled to more beneficial coverage which it did not contract for.'"  738 F. Supp. at 62 (internal citations omitted).

National Union obviously never told Office Depot or any Insured Person that they should not conduct a factual investigation of these matters, that they should not gather documents or

preserve testimony that could be used in defending the securities lawsuits, or that they should "slam the door" in the SEC's face.  [D.E. 102, pp. 17-20.]  All National Union has ever said is that the enormous costs that Office Depot thereby incurred are not covered under this Policy.

## VII.   CONCLUSION

The plain language of the Policy does not provide coverage for Office Depot's costs of responding to investigations.  Office Depot's Motion should be denied.

Respectfully submitted,

s/Steven J. Brodie
Steven J. Brodie
Florida Bar No. 333069
sbrodie@carltonfields.com
Sylvia H. Walbolt
swalbolt@carltonfields.com
Florida Bar No. 33604
Gwynne A. Young
Florida Bar No. 185582
gyoung@carltonfields.com
CARLTON FIELDS, P.A.
100 S.E. 2nd Street
Suite 4000, International Place
Miami, Florida 33131
Telephone: (305) 530-0050
Facsimile: (305) 530-0055
Attorneys for Defendant National Union Fire
Insurance Company of Pittsburgh, Pa.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 6, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: <u>s/Gwynne A. Young</u>

## SERVICE LIST

*Office Depot, Inc. v. National Union Fire Insurance Company of Pittsburgh, P.A.*
Case No.: 09-80554-civ-MARRA/JOHNSON
United States District Court, Southern District of Florida

Sidney A. Stubbs
Florida Bar No: 095596
sstubbs@jones-foster.com
Joanne M. O'Connor
Florida Bar No: 0498807
joconnor@jones-foster.com
JONES, FOSTER, JOHNSTON & STUBBS, P.A.
505 South Flagler Drive
Suite 1100
West Palm Beach, FL 33402-3475
Telephone No: (561) 659-3000
Facsimile No: (561) 832-1454
Via CM/ECF

Edmund M. Kneisel
ekneisel@kilpatrickstockton.com
Brent W. Brougher
bbrougher@kilpatrickstockton.com
KILPATRICK STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309-4530
Telephone No: (404) 815-6500
Facsimile No: (404) 815-6555
Via CM/ECF

Steven J. Brodie
sbrodie@carltonfields.com
Gwynne A. Young
gyoung@carltonfields.com
Sylvia H. Walbolt
swalbolt@carltonfields.com
Kevin P. McCoy
kmccoy@carltonfields.com
CARLTON FIELDS, P.A.
100 S.E. 2nd Street
Suite 4000, International Place
Miami, Florida 33131
Telephone: (305) 530-0050
Facsimile: (305) 530-0055
Via CM/ECF

Neil S. Baritz
nbaritz@baritzcolman.com
Craig R. Glasser
cglasser@baritzcolman.com
BARITZ & COLMAN, LLP
1075 Broken Sound Parkway NW, Ste. 102
Boca Raton, FL 33487
Telephone No: (561) 864-5100
Facsimile No: (561) 864-5101
Via CM/ECF

Gary P. Seligman
gseligman@wileyrein.com
John E. Howell
jhowell@wileyrein.com
Daniel J. Standish
dstandish@wileyrein.com
WILEY REIN LLP
1776 K Street NW
Washington, D.C. 20006
Telephone No.: (202) 719-3587
Facsimile No.: (202) 719-7049
Via CM/ECF