IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CIVIL ACTION NO. 09-80554-Civ-Marra/Johnson

OFFICE DEPOT, INC.,                              )
                                                 )
                    Plaintiff,                   )
                                                 )
        vs.                                      )
                                                 )
NATIONAL UNION FIRE INSURANCE                    )
COMPANY OF PITTSBURGH, PA.,                      )
                                                 )
                    Defendant,                   )
                                                 )
AMERICAN CASUALTY COMPANY                        )
OF READING, PA.,                                 )
                                                 )
                    Intervenor Defendant.        )

**PLAINTIFF OFFICE DEPOT, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO NATIONAL UNION'S AND AMERICAN CASUALTY'S MOTIONS FOR <u>SUMMARY JUDGMENT ON THE ISSUE OF COVERAGE</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................................1

ARGUMENT AND CITATION OF AUTHORITIES................................................................3

I.      The "Relation-Back" Wording of Section 7(c) Requires Reimbursement of All "Defense Costs" Incurred by Office Depot Since July 11, 2007.........................................................3

II.     The Definitions of "Claim" and "Securities Claim" are Sufficiently Broad to Encompass SEC Investigatory "Proceedings." ......................................................................................8

III.    The SEC's Investigative Demands Constitute a Covered "Claim" Against Insured Persons. ............................................................................................................................12

IV.     Costs Incurred in Responding to the SEC Investigation, Including Audit Committee and Special Committee Costs Are Covered Defense Costs....................................................15

V.      Defendants Cannot Allocate "Defense Costs" Unilaterally Between Insured and Allegedly Uninsured Investigatory Expense ..................................................................177

CONCLUSION....................................................................................................................20

# **TABLE OF AUTHORITIES**

Page

**Cases**

*Associated Elect & Gas. Ins. Servs. v. Rigas,*
    382 F. Supp. 2d 685 (E.D. Pa. 2004) ...................................................................... 20

*Auto-Owners Ins. Co. v. Anderson*,
    756 So. 2d 29 (Fla. 2000) ......................................................................................... 6

*Auto-Owners Ins. Co. v. Pozzi Window Co.*,
    984 So. 2d 1241 (Fla. 2008) ..................................................................................... 6

*Beans v. Chohonis,*
    740 So. 2d 65 (Fla. 3d DCA 1999) ........................................................................... 9

*Bornstein v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
    828 F.2d 242 (4th Cir. 1987) .................................................................................... 11

*Fayad v. Clarendon Nat'l Ins. Co.*,
    899 So. 2d 1082 (Fla. 2005) .............................................................................. 6, 7, 9

*Foster v. Summit Med. Sys., Inc.*,
    610 N.W. 2d 350 (Minn. App. 2000) ........................................................................ 11

*Garcia v. Fed. Ins. Co.*,
    969 So. 2d 288 (Fla. 2007) ....................................................................................... 8

*Haber v. St. Paul Guardian Ins. Co.*,
    137 F.3d 691 (2d Cir. 1998) ..................................................................................... 7

*Hanna v. Larche*
    363 U.S. 420 (1960) .................................................................................................. 11

*Kenevan v. Empire Blue Cross & Blue Shield*,
    791 F. Supp. 75 (S.D.N.Y. 1992) ............................................................................. 7

*McCarthy v. Am. Int'l Group, Inc.*,
    283 F.3d 121 (2d Cir. 2002) ..................................................................................... 8

*Minuteman Int'l, Inc. v. Great Am. Ins. Co.*,
    No. 03 C 6067, 2004 WL 603482 (N.D. Ill. Mar. 22, 2004) ..................................... 11

*Nat'l Stock Exch. v. Fed. Ins. Co.*,
    No. 06 C 1603, 2007 WL 1030293 (N.D. Ill. Mar. 30, 2007) .................................. 9, 10, 11, 13

ii

**TABLE OF AUTHORITIES** (Cont'd)

Page

*National Union Fire Ins. Co. of Pittsburgh, Pa. v. Brown*,
  787 F. Supp. 1424 (S.D. Fla. 1991) ........................................................................ 18

*Pendergest-Holt v. Certain Underwriters at Lloyd's*,
  600 F.3d 562 (5th Cir. 2010) ................................................................................... 20

*Penzer v. Transp. Ins. Co.*,
  29 So. 3d 1000 (Fla. 2010) ........................................................................................ 9

*Polychron v. Crum & Forster Ins. Cos.*,
  916 F.2d 461 (8th Cir. 1990) ................................................................................... 11

*Richardson Elecs. Ltd. v. Fed. Ins. Co.*,
  120 F. Supp. 2d 698 (N.D. Ill. 2000) ...................................................................... 11

*Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*,
  913 So. 2d 528 (Fla. 2005) ........................................................................................ 8

*U.S. Fire Ins. Co. v. J.S.U.B., Inc.*,
  979 So. 2d 871 (Fla. 2007) ........................................................................................ 6

*Westview Assocs. v. Guar. Nat'l Ins. Co.*,
  740 N.E.2d 220 (N.Y. 2000).............................................................................. 6, 7, 9

**Rules**

Black's Law Dictionary (8th ed. 2004)........................................................................ 8

Random House Dictionary of the English Language (2d ed. 1987) ............................. 8

US2008 1416665.5

## <u>INTRODUCTION</u>

On June 11, 2010, the parties filed cross-motions for partial summary judgment regarding coverage for the costs Plaintiff Office Depot, Inc. ("Office Depot") has incurred in connection with investigatory proceedings initiated by the Securities and Exchange Commission ("SEC") on July 17, 2007.  Office Depot contends, *inter alia,* that the costs it has incurred in indemnifying individuals who have been the subject of the SEC's investigation (acknowledged by defendants to be "Claims" once subpoenas and "Wells Notices" issued) and the investigatory costs it has incurred in its own right are covered "Defense Costs."  Those costs have been and continue to be incurred in connection with related "Wrongful Acts" that became the subject not only of the SEC's investigation, but also of four lawsuits, subsequently consolidated, that were filed against Office Depot and certain Insured Persons in November, 2007.[1]  Because the underlying matters involve related, Wrongful Acts that allegedly violated the Securities Laws, they are "Claims" and "Securities Claims" that relate back and are deemed to have been "made" as of the date of the Notice of Circumstances that Office Depot sent to its carriers on July 11, 2007.

Defendant National Union Fire Ins. Co. of Pittsburg, Pa. ("National Union") and Defendant-intervenor American Casualty Co. of Reading, Pa. ("American Casualty")[2] seek partial summary judgment that effectively allocates coverage for Defense Costs between what the carriers acknowledge are covered Claims (the Securities Lawsuits, the SEC subpoenas, and

---

[1] *See Sheet Metal Workers Local 28 Pension Fund v. Office Depot, Inc.*, *et al.*, No. 07-81038 (the "Class Action Lawsuit"); and *Mason, et al., v. Office Depot, Inc., et al.,* No. 07-81059 (the "Derivative Lawsuit" and collectively with the Class Action Lawsuit, the "Securities Lawsuits") (DE 106).

[2] Defendant National Union issued the primary layer Directors and Officers Liability, No. 95-63-88 (the "Policy") to Office Depot, providing $25 million in limits.  Defendant-Intervenor American Casualty is the first layer "excess" carrier that issued a "following form" Directors and Officers Liability policy that would apply after exhaustion of the National Union limits.

US2008 1416665.5

the SEC Wells Notices) and Defense Costs incurred in connection with what the carriers contend is the uninsured portion of the SEC's investigation.  Arguing that the Policy excludes any coverage for "pre-claim" Defense Costs, defendants attempt to distinguish between the various stages of the SEC investigation, thereby isolating SEC investigatory costs from other costs and limiting any recovery of such costs only to work done solely in relation to covered Claims, *after* those Claims were made.  Office Depot submits that the allocation of Defense Costs defendants propose is not consistent with the Policy language, as reasonably interpreted by Office Depot:

- The relation back language in the Notice of Circumstances clause is not limited and does not contain any "bright line," exclusionary language barring coverage for pre-claim investigatory costs; therefore, Section 7(c), as reasonably interpreted, requires remibursement of all "Defense Costs" incurred by Office Depot since July 11, 2007.

- Office Depot has reasonably interpreted the definitions of "Claim" and "Securities Claim in its Policy to cover the significant costs Office Depot has incurred in connection with the SEC investigative proceedings, which have been commenced and continuously maintained against both Office Depot and Insured Persons since July 17, 2007.

- Soon after submission of the July 11, 2007 Notice of Circumstances, Insured Persons were identified in SEC correspondence (followed by a Formal Order of Private Investigation, subpoenas and Wells Notices) as persons against whom Securities Claims "may be commenced;" therefore, the SEC initiated "Claims" against Insured Persons that are deemed "made" as of July 11, 2007.

- Securities Lawsuits naming Office Depot and Insured Persons as defendants and alleging the same or related Wrongful Acts being investigated by the SEC were filed within a few months after the SEC commenced its investigation; therefore, the investigatory costs at issue were incurred in connection with related Claims and should be reimbursed by National Union.

- Defendants have no right under the Policy to unilaterally allocate Defense Costs between covered and allegedly uncovered claims, thereby wrongfully reducing Office Depot's covered Defense Costs by more than ninety-eight percent.

Under applicable law, the carrier-defendants are not entitled to the narrow construction of the Policy that they seek, particularly in light of the many ambiguities that were their creation and responsibility.  Instead, Office Depot's reasonable interpretation should prevail; and defendants' motions should be denied.

## ARGUMENT AND CITATION OF AUTHORITIES

I.      **The "Relation-Back" Wording of Section 7(c) Requires Reimbursement of All "Defense Costs" Incurred by Office Depot Since July 11, 2007.**

Office Depot has incurred substantial Defense Costs on its own behalf and on behalf of numerous Insured Persons called upon to respond to a lengthy SEC investigation that commenced in the summer of 2007 and continued after Securities Lawsuits were filed in the fall of 2007 alleging the same Wrongful Acts being investigated by the SEC.  Because the lawsuits and the parallel SEC investigation address the same, related matters involving alleged violations of Securities Laws, the Claims that the carriers acknowledge have been made relate back to July 11, 2007, the date that Section 7(c) of the Policy specifies is the date on which the Claims are deemed "made."  Defendants do not (and cannot) demonstrate that the Policy can only be interpreted one way, to bar coverage for all investigatory costs incurred before the Securities Lawsuits were filed and before SEC subpoenas and Wells Notices acknowledged to be Claims were issued.  Accordingly, all of Office Depot's Defense Costs incurred since July 11, 2007 in investigating the underlying Wrongful Acts alleged, including the costs of responding to the SEC's investigatory proceedings, should be reimbursed.

Defendants virtually ignore the outcome-determinative language of Section 7(c) of the Policy, which provides that after a Notice of Circumstances is submitted:

> then a **Claim** which is subsequently made against such **Insured** and reported to the **Insurer** alleging, arising out of, based upon or attributable to such circumstances or alleging a **Wrongful Act** which is the same as or related to any **Wrongful Act** alleged or contained in such circumstances *shall be considered made at the time such notice of such circumstances was given.*

(Office Depot Facts ¶8 [DE 103])(emphasis added).  The Policy insures against "Loss," which is defined to include "Defense Costs," which are in turn expressly defined to include "reasonable and necessary fees, costs and expenses consented to by the **Insurer** … resulting solely from the

US2008 1416665.5

*investigation, adjustment, defense* and/or appeal of a **Claim** [including a "Securities Claim"] against an **Insured**…." (*Id.* at ¶7)(emphasis added).   Office Depot forwarded a Notice of Circumstances to National Union and American Casualty on July 11, 2007, advising of a potential "Claim" relating to possible violation of the Securities Laws. (*Id.* at ¶11).  As National Union acknowledged, commencing no later than the filing of the Securities Lawsuits in November, 2007, Claims and Securities Claims were made against Office Depot and various Insured Persons.  The SEC subsequently issued subpoenas and Wells Notices to several Insured Persons, which National Union also acknowledged constitute covered Claims.  Those Claims relate back and are deemed "made" as of the date (July 11, 2007) of the Notice of Circumstances; therefore, Defense Costs incurred since then, including investigatory costs, are covered.

Defendants argue that the Court may not "re-write" the AIG Policy or add meaning that is not present or otherwise is contrary to the intentions of the parties (Am. Cas. Brief, p.8 [DE 88]; Nat'l Union Brief, p. 6 [DE 101]); however, that is precisely what Defendants seek to do.  Indeed, Defendants seek to re-write the Policy to "carefully delineate" a "bright line" standard for determining when a covered "Claim" has been made and when insured costs "solely" attributable to that Claim have been incurred.  (Am. Cas. Brief, pp. 9-10 & 12 [DE 88]; Nat'l Union Brief, pp. 10 & 13 [DE 101]).  There is no such "bright line" language in the Policy.  Thus, as shown by the Declaration of Perry S. Granof ("Granof Dec.") and Exhibits B-E thereto (DE 104-1),  National Union could have included in its policy form an express limitation clearly barring coverage for pre-claim investigatory costs, but National Union did not include such language in the Policy at issue.[3]  Instead, the language of the Policy provides that the date of the

_____

[3] As the record reflects, National Union recently amended its standard form of directors & officers liability policy to include the following, express language barring coverage for pre-

Notice of Circumstances (July 11, 2007) is the date on which all Claims arising out of the same or similar, related Wrongful Acts are deemed "made." It reasonably follows from this language that all Defense Costs, including investigatory costs, incurred after the date on which the related Claims are deemed "made" should be covered.

Because the "bright line," exclusionary language defendants' seek to engraft on Section 7(c) of the Policy does not exist, defendants focus their argument on the definition of "Securities Claim," which defendants contend bars coverage for the costs of investigation that Office Depot has incurred. Defendants' arguments are inconsistent with the language of the definition of "Defense Costs," the relation back language of Section 7(c), and the reasonable expectations of the policyholder regarding the coverage provided by the Policy. In its short argument addressing Section 7(c), American Casualty suggests that the clause only addresses the date on which a Claim is "considered made," and not the date on which "Defense Costs are deemed incurred." (Am. Cas. Brief, p. 20 [DE 88]). As a result, American Casualty, joined by National Union, argues that pre-claim investigatory costs are not covered. However, no Policy language distinguishes between pre-claim and post-claim Defense Costs. Such a limitation could have been included in the Policy, but it was not. Rather, because a subsequent Claim relates back and is considered "made" on the date of the Notice of Circumstances (here July 11, 2007),[4] all Defense Costs incurred in investigating the Claim after that date are covered.

---

Claim costs: *"Coverage for **Loss** arising from any such subsequent **Claim** shall only apply to **Loss** incurred after that subsequent **Claim** is actually made against an **Insured**."* (Granof Dec. ¶20 & Ex. E at p. 7 [DE 104-1])(emphasis added). No such language is contained in the Policy at issue in this case.

[4] National Union has expressly acknowledged that Office Depot's notice was a proper "Notice of Circumstances" that "may reasonably be expected to give rise to a 'Claim,' within the meaning of Section 7(c) at p. 10 of the Policy." (Office Depot Facts ¶15 [DE 103]). National Union did not complain of any deficiency in Office Depot's notice or in its follow-up communications and cannot do so now.

US2008 1416665.5

It is well-settled that to bar or limit coverage for a claim, an insurer must use unequivocal language in its policy, both with respect to what acts are excluded from coverage and regarding the categories of losses that are insured or excluded.  As ruled by the Supreme Court of Florida, a carrier must be "held responsible for *clearly setting forth what damages are excluded from coverage* under the terms of the policy."  *Fayad v. Clarendon Nat'l Ins. Co.*, 899 So. 2d 1082, 1086 (Fla. 2005) (emphasis added); *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000) (stating it was incumbent upon the insurer to exclude or limit liability coverage clearly and unambiguously).  As compared to other policies in which carriers have expressly limited the scope of the relation-back provisions to bar coverage for any Loss and Defense Costs incurred prior to the date on which an actual claim arises, no such limited, relation-back wording or express exclusion barring pre-claim costs exists in the AIG Policy.  (*See* Granof Dec. ¶¶13-20 & Exs. B-E [DE 104-1]).[5]

Defendants suggest that this case should be governed by the law of New York, despite the fact that the policy was issued to Office Depot in Florida, that Office Depot's corporate headquarters is in Florida, and that all of the underlying claims arose in Florida.  Office Depot disagrees, but does agree that there is no conflict between the law of Florida, as articulated in *Fayad*, and the law of New York.  Under the law of both states, "[e]xclusions must be specific and cannot be extended by mere interpretation or implication."  *Westview Assocs. v. Guar. Nat'l Ins. Co.*, 740 N.E.2d 220, 223 (N.Y. 2000).  Indeed, as articulated in numerous Florida and New York cases, where there are two equally reasonable interpretations of policy language, the reasonable interpretation proposed by the policyholder in favor of coverage must be adopted as a

---

[5] Courts commonly refer to other policy forms containing different language in construing the form at issue before the court.  *See, e.g., Auto-Owners Ins. Co. v. Pozzi Window Co.*, 984 So. 2d 1241, 1246-49 (Fla. 2008); *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877-80 (Fla. 2007); *Anderson*, 756 So. 2d at 36.

US2008 1416665.5

matter of law.  *Haber v. St. Paul Guardian Ins. Co.*, 137 F.3d 691, 695-698 (2d Cir. 1998).  In New York, like in Florida, an insurance carrier has the "heavy burden of demonstrating … that its interpretation of the insurance policy provisions is the only construction that fairly could be placed on the policy."  *Kenevan v. Empire Blue Cross & Blue Shield*, 791 F. Supp. 75, 79 (S.D.N.Y. 1992); *Westview Assocs.*, 740 N.E.2d at 223 (noting that ambiguous terms in a policy "*must be resolved against the insurer, as drafter of the agreement*" and granting summary judgment in favor of the insured where the insurer failed to establish that exclusion was stated in clear and unmistakable language and was subject to no other reasonable interpretation)(emphasis added).

National Union should have and could have included clear and unmistakable language in the Policy expressly barring coverage for pre-claim investigatory costs.  Having failed to do so, defendants are not entitled to summary judgment dismissing Office Depot's coverage claim. *See, e.g., Fayad*, 899 So. 2d at 1089 (denying insurer's motion for summary judgment where the insured's loss was not expressly excluded from coverage; relying "not only on the actual language used in [the insurer's] definition of earth movement, but also on the fact that [the insurer] *chose not to utilize language specifically excluding damage resulting from earth movement regardless of its cause*.") (emphasis added).  Office Depot's interpretation of the "relation back" language of the Notice of Circumstances clause is at least as reasonable as (and Office Depot submits much more reasonable than) defendants' interpretation, which depends on their proffer of a non-existent policy exclusion for pre-claim investigatory costs.  For that reason alone, defendants' motions should be denied.

## II.   The Definitions of "Claim" and "Securities Claim" Are Sufficiently Broad to Encompass SEC Investigatory "Proceedings."

It is undisputed that the definition of "Securities Claim" includes an "administrative or regulatory proceeding" against the insured organization, so long as such a "proceeding" is simultaneously and continuously maintained against Insured Persons.  (Office Depot Facts ¶5 [DE 103]).  Nevertheless, relying on various provisions of the Code of Federal Regulations ("CFR") regarding SEC enforcement proceedings, defendants contend that the SEC investigation is not a covered proceeding.  However, even assuming that the CFR would contradict Office Depot's argument, which is a false assumption, the CFR is not incorporated in the National Union Policy.[6]  As acknowledged by National Union's witnesses, the Policy does not contain *any* definition of what is or is not an "administrative or regulatory proceeding." (Office Depot Facts ¶6 [DE 103]).  Dictionary definitions of that terminology support Office Depot's reasonable interpretation of the otherwise undefined language.  Black's Law Dictionary (8th ed. 2004) defines an "administrative proceeding" to include a "hearing, *inquiry, investigation,* or trial before an administrative agency, usu. adjudicatory in nature but sometimes quasi-legislative." *Id.*  According to the Random House Dictionary of the English Language (2d ed. 1987), a regulatory proceeding is an activity, event, action at law, legal step or measure taken by a regulatory body pursuant to the laws and regulations that set forth its powers to conduct such investigations.  *Id..*  The Court should consider these definitions in assessing the reasonableness of Office Depot's interpretation.[7]

---

[6] The terms at issue in the policy must be construed in accordance with their plain and ordinary meaning, and not in accordance with specific regulations that are not incorporated into the policy.  *See Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005); *McCarthy v. Am. Int'l Group, Inc.*, 283 F.3d 121, 124 (2d Cir. 2002).

[7] "When interpreting insurance contracts, [courts] may consult references commonly relied upon to supply the accepted meanings of words."  *Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 291-92

8

Defendants contend that the set off of "investigation of an Organization," by commas, means that the Policy excludes coverage for investigatory costs. However, the confusing use of commas in the definitional clause is, at best, ambiguous. The Policy does not contain the type of clear and unmistakable exclusionary language required by Florida (and New York) law to bar coverage for Office Depot's investigatory costs. Office Depot has reasonably interpreted the ill-defined terminology in the Policy to include a "non-monetary" investigatory demand made as part of an administrative or regulatory proceeding. The SEC investigation has generated enormous Defense Costs in providing voluminous documents and testimony to the SEC by numerous individuals who are Insured Persons entitled to be indemnified and who have been fully indemnified against Loss by Office Depot. Because "the salient policy language is susceptible to two reasonable interpretations, one providing coverage and the other excluding coverage," the Court must construe the policy in favor of Office Depot and deny defendants' motions for summary judgment. *See Fayad*, 899 So. 2d at 1086; *Penzer v. Transp. Ins. Co.*, 29 So. 3d 1000, 1005 (Fla. 2010) ("Insurance contracts are construed according to their plain meaning, with any ambiguities construed against the insurer and in favor of coverage.") (internal quotation marks and citation omitted); *Westview Assocs.*, 740 N.E.2d at 223 (ambiguous terms in a policy "*must be resolved against the insurer, as drafter of the agreement.*") (emphasis added).

Defendants argue that the CFR should control Policy Interpretation; but this argument actually is refuted by the principal case both defendants rely upon to support their contention that investigatory costs cannot be covered. *See Nat'l Stock Exch. v. Fed. Ins. Co.*, No. 06 C 1603, 2007 WL 1030293, at *4 (N.D. Ill. Mar. 30, 2007)("*NSX*"). A copy of the *NSX* Complaint for Declaratory Judgment and Damage is attached to Office Depot's Request for Judicial Notice

---

(Fla. 2007); *Beans v. Chohonis*, 740 So. 2d 65, 67 (Fla. 3d DCA 1999) ("One looks to the dictionary for the plain and ordinary meaning of words.").

US2008 1416665.5

filed contemporaneously herewith.  The *NSX* case is distinguishable from Office Depot's case on several grounds.  First, as shown by the policy at issue in *NSX*, there was no issue of coverage for the stock exchange itself, as the policy did not include any coverage for the "organization."  *See NSX* Compl., Ex. 1.  The only coverage issue presented was whether or not the organization could recover the costs of indemnifying individual insureds for responding to the SEC investigation.  *See NSX*, 2007 WL 1030293, at *1-2.  Also, neither the complaint, nor the court's opinion suggest that any issue was presented regarding relation back of the SEC proceedings to an earlier notice of circumstances.  However, the outcome in *NSX* actually supports Office Depot's coverage claim.

Most significantly, addressing the key issue in controversy, the Illinois Court held that a "Formal Order of Private Investigation" could constitute a covered "Claim" against individuals, even though that order did not identify any such individual by name, ruling that generic references in the SEC's Order of Investigation to insured "officers" triggered coverage.  *NSX*, 2007 WL 1030293, at *5.  The court expressly rejected the carrier's argument that no "claim" could be deemed to have been made until after insured persons were *named individually* in an administrative enforcement proceeding.  *Id.*  This ruling is fully consistent with Office Depot's position.  Moreover, it should be noted that the SEC Order at issue in that case was very "bare bones," when compared to the much more lengthy Order of Private Investigation at issue in this case.  *NSX* Compl., Ex. 3.  The SEC Order in this case actually contains allegations directed solely to insured "officers and directors" and not to Office Depot itself.[8]  Similarly, in contrast to the SEC letters at issue in this case, which named corporate officers by title as early as July 17,

---

[8] For instance, subparagraph G of the Order, which relates to Section 13a-14 of the Exchange Act, did not refer to the corporation, but only referred to "the principal executive officer or officers and principal financial officer or officers of Office Depot…."  (Ex. 3 to Office Depot's Mot. File Seal).

2007 (Kleinle Dep. I, Ex. 9 [DE 105-4]) and then by name shortly thereafter, (*id.*, Ex. 16 at Attachment 2 [Ex. 5 to Office Depot's Mot. Seal]), the SEC letter at issue in *NSX* was directed *solely* to the *uninsured* organization.  *NSX* Compl., Ex. 2.

Like the defendants in this case, the insurer defendant in *NSX* also tried to defeat coverage by distinguishing SEC investigative proceedings from SEC administrative proceedings.[9]  However, in concluding that the SEC's investigation was a covered claim, the Court stated, "[i]t is also worth noting that the policy defines 'Claim' to include formal administrative or regulatory proceedings.  Although defendant argues that the SEC defines investigatory proceedings differently than administrative proceedings, *it does not address why SEC investigations are not part of formal regulatory proceedings.*"  2007 WL 1030293, at *4 n.4 (emphasis added).[10]  As ruled in *NSX*, construing the lengthy SEC investigation at issue here, which has encompassed numerous depositions and production of more than a million pages of

---

[9] National Union cites the language in *Hanna v. Larche* noting that the SEC distinguishes between "adjudicative" and "investigative" proceedings for purposes of due process.  363 U.S. 420, 446-48 (1960).  Such differences do not control this case, as the policy language at issue concerns "administrative or regulatory" proceedings, not "adjudicative proceedings."

[10] Numerous, other courts have held that an investigation by a government agency constitutes an insured administrative or regulatory proceeding that satisfies the definition of Claim or Securities Claim.  *See, Minuteman Int'l, Inc. v. Great Am. Ins. Co.*, No. 03 C 6067, 2004 WL 603482, at *4 (N.D. Ill. Mar. 22, 2004) ("Defendant [insurer] does not dispute that the SEC proceeding met the requirement of being … an 'administrative … proceeding'"); *Foster v. Summit Med. Sys., Inc.*, 610 N.W. 2d 350, 354 (Minn. App. 2000) ("The parties agree that the SEC investigation is an administrative proceeding …").  *See also Polychron v. Crum & Forster Ins. Cos.*, 916 F.2d 461, 463 (8th Cir. 1990) (holding investigation constituted a claim; insurer's characterization of the investigation as mere requests for information "underestimates the seriousness of such a probe"); *Bornstein v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 828 F.2d 242, 244 (4th Cir. 1987) (Justice Department grand jury investigation and subsequent indictment for tax law violations was "a proceeding …;" the policyholder's reasonable interpretation prevailed over the interpretation of the insurer); *Foster*, 610 N.W. 2d at 354; *Richardson Elecs. Ltd. v. Fed. Ins. Co.*, 120 F. Supp. 2d 698, 701 (N.D. Ill. 2000) (DOJ investigation constituted a claim as the officers and directors were required to comply with various demands for testimony and the production of documents).

US2008 1416665.5

documents, as a covered "regulatory proceeding" is a reasonable interpretation of the policy that should be accepted by this Court.

## III.    The SEC's Investigative Demands Constitute a Covered "Claim" Against Insured Persons.

For more than two years, National Union argued that the SEC investigation could not constitute a Claim or Securities Claims against any Insured until *after* the SEC issued subpoenas to individuals who are Insured Persons.  Putting aside the relation back argument under Policy Section 7(c), which Office Depot submits should control, defendants' argument that no Claim was made before the SEC issued subpoenas to Insured Persons is inconsistent with National Union's subsequent position accepting Wells Notices as covered Claims.  To begin, Office Depot's cooperation with the SEC investigation plainly benefited National Union; and neither National Union nor American Casualty advised Office Depot that it should *not* cooperate with the SEC and instead demand formal subpoenas.  (Calkins Dec. ¶23).

As noted above, counsel for National Union advised that the Wells Notices satisfied the Policy language that defines a Claim to include:

> (3) a civil, criminal, administrative or regulatory investigation of an Insured Person:
>
> (i) once such **Insured Person** is identified in writing by such investigating authority *as a person against whom a proceeding described in Definition (b)(2) may be commenced*;

(Office Depot Facts ¶4 [DE 103])(emphasis added).  Subpart (b)(2) of the definition in turn refers to "*a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief* …."  (*Id.*)(emphasis added).  National Union's corporate representative could not explain what a "regulatory … proceeding for … non-monetary … relief might be.  (Kleinle Dep. I pp. 28-30 [DE 105-4]).  National Union does not dispute that a civil or criminal lawsuit or a formal administrative enforcement proceeding would qualify as a Claim

12

(*id.*); but to trigger coverage, all that is required is that the SEC identify an Insured Person as a person against whom such a proceeding "may be commenced."[11]  That happened on July 17, 2007, when Insured Persons were named, by job title, as persons against whom proceedings "may be commenced." (Calkins Dec. ¶7).  *See NSX*, 2007 WL 1030293, at *5 (rejecting defendant's assertions that the SEC must identify specific individuals, by name, rather than by job title, as targets of its proceedings).  Like the SEC's Order of Investigation in *NSX*, the letter of July 17, 2007 specifically advised that the SEC was investigating possible violations of the federal securities laws by Office Depot and by "*its officers, directors* [and] *employees.*" (Calkins Dec. ¶7 & Ex. 3 to Office Depot's Mot. File Seal).  Almost immediately, the individuals affected recognized that they were subjects of the SEC investigation and that, consistent with letters received from Office Depot's Board of Directors, they should retain separate counsel to represent their interests.  (Declaration of Steve Odland ("Odland Dec.") ¶4; Calkins Dec. ¶4 & Ex. A.1 to Office Depot's Supp. Mot. Seal).

By letters dated July 31, 2007 and September 7, 2007, the SEC again confirmed that its investigation focused on both Office Depot and on Insured Persons, specifically identifying Insured Persons, by name, as subjects of the investigation.  (*See* Office Depot Facts ¶14 [DE 103]).  In the Fall of 2007, the SEC forwarded letters to individual counsel for Insured Persons, seeking testimony and documents.  (*Id.* ¶18).  On January 10, 2008, the SEC issued its Order of

---

[11] American Casualty's contention that the SEC proceedings are not a Securities Claim because the SEC did not affirmatively allege a specific Securities Law violation ignores the multiple references to the securities laws in the SEC's letters and accompanying form 1662 and in the Formal Order of Private Investigation.  This contention also ignores the "notwithstanding" language at the end of the defining clause specifically designating an  "administrative or regulatory proceeding" as a covered Securities Claim, so long as "such proceeding is also commenced and continuously maintained against an insured Person."  (Office Depot Facts ¶5 [DE 103]).

Private Investigation, which, as noted above, included paragraphs that focused exclusively on the conduct of Insured Persons.  *See* note 8 and accompanying text, *supra.*

Each of the letters the SEC issued to Insured Persons was accompanied by a "Form 1662" and questionnaire requesting background information in connection with the SEC investigation.  (*Id.*).  All of the letters referred to the same SEC file no., Matter No. FL-3332 and included the following important warning:  "The Division of Enforcement w[ould] not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests have been produced."  (*Id.*).  The Form 1662 referenced criminal provisions of the United States Code, including possible actions for "false, fictitious or fraudulent" statements and possible perjury prosecutions.  (*See* Calkins Dec. ¶ 18).  The forms also advised Insured Persons being asked to submit information that any submissions or testimony provided to the SEC could be used by the SEC during subsequent enforcement proceedings and that as the matter progressed, any settlement would be limited to the "claims … in [the] investigative, civil, or administrative matter" and not any criminal proceedings that "might be, brought."  (*Id.*).  The same, informative Form 1662 also was enclosed with the SEC subpoenas and later with the Wells Notices that National Union has acknowledged qualify as covered Claims.  (Office Depot Facts ¶24 [DE 103]; Kleinle Dep. II Exs. 7 & 8 [DE 105-4]).

It is not surprising that the individual recipients of the SEC letters (accompanied by Form 1662), as well as recipients of the SEC's subpoenas, would request representation by counsel and would understand that they were subjects of the SEC investigatory proceeding against whom subsequent actions (enforcements proceedings or lawsuits) "may be commenced."  The Wells Notices advised recipients that the SEC staff intended to recommend that the Commission bring an enforcement action; however, those notices, like the earlier letters, included the same

"invitation" to make responsive submissions and enclosed the same Form 1662 warning of the possible consequences of doing so.  The fact that the individuals who received those letters chose to cooperate with the SEC rather than force the SEC to issue formal subpoenas should not forfeit the coverage for Office Depot's loss in indemnifying them against the costs of responding to the SEC investigation.[12]  It was in the best interests of Office Depot and the best interests of the individuals to cooperate with the SEC.  (Newkirk Declaration [DE 104-2]; Calkins Dec. ¶¶8 & 19; Odland Dec. ¶4).  It elevates form over substance to argue in the circumstances of this case that only formal subpoenas trigger coverage, especially where, as here, National Union has acknowledge that Wells Notices, which clearly are not subpoenas, are covered Claims.

**IV.    Costs Incurred in Responding to the SEC Investigation, Including Audit Committee and Special Committee Costs Are Covered Defense Costs.**

Soon after the SEC commenced its investigation of the Dow Jones Newswire article, Office Depot received a "whistleblower" letter regarding alleged financial accounting discrepancies.  Office Depot and its Audit Committee, consisting of independent members of the Board of Directors, expanded the Regulation FD investigation to encompass the whistleblower allegations.  The Audit Committee, who had already retained Debevoise & Plimpton as counsel, expanded Debevoise's role to advise and assist in the cumulative investigation; and by August 6, 2007, the SEC had expanded its investigation.  The history of the Audit Committee investigation and the SEC investigation about these subjects is detailed in the Declaration of Stephen R. Calkins.  (Calkins Dec. ¶¶2-8 and exhibits referenced therein).

---

[12] American Casualty's argument that the SEC investigation is not a Claim because it was not a proceeding commenced by service of a complaint or similar pleading or indictment or notice of charges or "similar" document is misplaced, as the definitional section cited as the basis for treating the Wells Notices as Claims does not contain any such requirement.  It is the potential for commencement of a covered action that qualifies as a Claim, once an Insured Person is identified as a person against whom such a proceeding "may be commenced."

15

The SEC's investigation of Office Depot and its Insured Persons, and Office Depot's internal investigation addressed the same subjects. (*See, e.g.,* Calkins Dec. ¶¶7-9, 11-12, 14-15 and exhibits referenced therein). Those same subjects (inventory accounting and vendor rebates issues and other alleged financial irregularities) also were alleged to be the basis for the consolidated Securities Lawsuits filed against Office Depot and against Mr. Odland and Ms. Patricia McKay, as co-defendants. (*See, e.g.,* Calkins Dec. ¶¶10, 13-15). The lawsuits specifically referenced the whistleblower complaint and the two investigations, including the SEC investigation. (Consolidated Class Action Complaint ¶¶3-6, 10-11, 67-68, 71, 86 n.7, 139-40, 153, 155-56, 181, 183 & 198-200 [DE 106 at Ex. 1]; Consolidated Derivative Complaint ¶¶26-27 & 33-38 [DE 106 at Ex. 4]).

As noted above, because the Wells notices, the Securities Lawsuits and the SEC investigatory proceedings all relate to the same alleged "Wrongful Acts," they are deemed "made" as of July 11, 2007, the date of the Notice of Circumstances. Office Depot contends that actual Securities Claims were made soon thereafter, on July 17, 2007, when the SEC issued its initial letter naming Insured Persons (by title) as subjects of the regulatory investigation. This letter was followed by numerous, additional letters addressed to counsel for Office Depot and counsel for the Insured Persons involved. Reasonably construed, these letters and their enclosures advise of actions (various types of insured proceedings) that "may be commenced" as a result of the investigation; and on January 10, 2008, the SEC issued its Order of Private Investigation that referenced many potential claims that might be commenced under the federal Securities Laws. All Insured Persons, including Steve Odland, cooperated with the SEC investigation, without insisting on issuance of unnecessary subpoenas. (Calkins Dec. ¶19; Odland Dec. ¶4). The company also cooperated fully and completely with the SEC by producing more than 1,000,000 pages of documents requested by the SEC, including documents from the

16

files of the Insured Persons being investigated.  (*See, e.g,*, Calkins Dec. ¶22). The investigation that was undertaken also benefited the defense of the Securities Lawsuits.  (*Id.* ¶¶13-15).

Defendants apparently contend that Office Depot should have known when the Securities Lawsuits were filed in November of 2007, that approximately two years later, the lawsuits would be dismissed (though the consolidated Class Action Lawsuit is presently on appeal).  Without the luxury of such foresight (Calkins Dep. pp. 173-74 [DE 105-4]), Office Depot could not ignore its obligation to investigate the underlying facts in planning its defense.[13]  Moreover, Hogan Lovells US LLP f/k/a Hogan & Hartson, LLP, counsel of record in the Securities Lawsuits, consulted with counsel retained in the SEC investigation in coordinating legal strategies.  (Calkins Dec. ¶13; Odland Dec. ¶5; Calkins Dep. pp. 114-15, 133-34, 148 [DE 105-4]).  In addition, the "information and documents Office Depot collected and produced in response to the SEC investigation … the work product, as it relates to those documents, certainly was used by defense counsel [in the Securities Lawsuits.]"   (Office Depot Facts ¶26 [DE 103]; Calkins Dep. pp. 102:19-103:3, 105:2-105:7 [DE 105-4]).  Thus, the Defense Costs incurred in investigating these related Claims should be reimbursed.

## V.      Defendants Cannot Allocate "Defense Costs" Unilaterally Between Insured and Allegedly Uninsured Investigatory Expenses

As noted above, defendants' motions effectively ask this Court to allocate between the investigatory Defense Costs that the carriers acknowledge are covered, *i.e.*, only those costs related "solely" to SEC subpoenas after those subpoenas are issued, and the costs that defendants erroneously characterize as resulting from an uninsured, "internal" investigation conducted by

---

[13] Notwithstanding the automatic stay of discovery in securities lawsuits under the Private Securities Litigation Reform Act, the investigation of the claims alleged was necessary.  It would have been imprudent, to say the least, for Office Depot to ignore its obligation to investigate, including gathering and preserving documents, for more than two years.  (Calkins Dep. pp. 126-128 [DE 105-4]).

US2008 1416665.5

Office Depot and its Audit Committee.[14]   The language of the Policy definition of "Defense Costs" is not an "allocation clause" or a clause that addresses the issue of "advancement" of defense costs, an issue with which National Union should be very familiar.  *See National Union fire Ins. Co. of Pittsburgh, Pa. v. Brown*, 787 F. Supp. 1424 (S.D. Fla. 1991).

In *Brown*, the court addressed the then unsettled question of whether or not and under what circumstances a carrier issuing a D&O Policy should be "obligated to pay the Insureds' defense costs as they are incurred, not at some future time when the underlying action giving rise to a claim is adjudicated or settled."  *Id.* at 1429.  The court expressly rejected National Union's position that the policy "does not require the funding of defense costs as incurred," ruling as follows:

> The most that can be said in favor of National Union's position is that the timing of payment for defense costs is ambiguous. Generally, an ambiguity exists when the language of a policy is susceptible to different reasonable interpretations, one resulting in coverage, and one resulting in exclusion.  *Gulf Tampa Drydock,* 757 F.2d at 1174-75.  Under Florida law, such ambiguities must be construed against the insurer and in favor of the insured. *Id.* at 1174; *Rigel v. National Casualty Ins.,* 76 So. 2d 285, 286 (Fla. 1954). The court has determined that the Insureds' interpretation is reasonable. *Even if National Union's interpretation were reasonable, the 1987 D & O Policy would be ambiguous, and under Florida law, that ambiguity would have to be construed against National Union. Id.* at 1430 (emphasis added).

Here, the National Union policy actually contains an express requirement in Section 9 that "the Insurer shall advance, excess of any applicable retention amount, covered Defense Costs no later than ninety (90) days after the receipt of the Insurer of such defense bills." (Kleinle Dep. I, Ex. 1 [DE 105-4]).  This section continues with language allowing National Union to recover the costs advanced to the Insured or the Organization, but only "in the event

---

[14] As discussed above, the Audit Committee's investigation was directly related to the matters (financial, inventory accounting) being investigated by the SEC and generated an extensive report jointly presented to the SEC by outside counsel for the Audit Committee and outside counsel for Office Depot.  (*See* Declaration of Brent W. Brougher, Ex. A (filed under seal)).

US2008 1416665.5

and to the extent that any such Insured or Organization shall not be entitled under this policy to payment of such Loss."  The only "allocation" provision in the Policy is contained later in Section 9 on the next page of the Policy.  This portion of Section 9 provides that when Defense Costs are incurred "jointly" by an Insured and the Organization, "in connection with any Claim *other than a Securities Claim,* [then] any such Organization and any such Insured and the Insurer agree to use their best efforts to determine a fair and proper allocation of the amounts as between any such Organization, any such Insured, and the Insurer, taking into account the relative legal and financial exposures an, and the relative benefits obtained by any such Insured and any such Organization…."  (emphasis added).  As indicated, this allocation clause does not apply to Securities Claims, in which both Insured Persons and the Organization are Insureds.  The allocation clause only applies in those circumstances involving Claims (other than Securities Claims) that individual directors, officers and employees would be insured against, but that would not trigger coverage for the Organization.   In that event, the Organization's coverage would be limited to the costs incurred by the Organization in indemnifying Insured Persons against Loss and Defense Costs.

When Securities Claims for which both the Organization and Insured Persons are Insureds have been made, and consistent with *Brown, supra*, the Policy requires *all* Defense Costs to be reimbursed "no later than 90 days" after the bills for those costs have been received. As stated recently by the Fifth Circuit:

> Because "[i]t would be possible for carriers issuing D & O policies to explicitly reserve to themselves the unfettered discretion whether to advance defense costs," *if an insurer "wants the unilateral right to refuse a payment called for in the policy, the policy should clearly state that right."* As the Eastern District of Pennsylvania put it, an insurer's policy may be silent on this issue for good reason: "a policy with such a draconian power [might be] difficult to sell."  *While there is nothing remarkable about an insurer reserving the right to make a unilateral coverage decision, it is similarly unremarkable to require an insurer to*

> *be explicit when doing so, rather than leaving the reader to ponder the word "it."*

*Pendergest-Holt v. Certain Underwriters at Lloyd's,* 600 F.3d 562, 571 (5th Cir. 2010)(quoting

*Associated Elect & Gas. Ins. Servs. v. Rigas,* 382 F. Supp. 2d 685, 702 (E.D. Pa. 2004)).

The underlying Securities Claims remain unresolved, as the SEC proceeding remains pending; and the ruling of Judge Hurley dismissing the consolidated securities Class Action with prejudice is currently on appeal.  In light of the language of Section 9 and under the cases cited above, defendants' arguments asking the Court to sanction the unilateral allocation of Defense Costs proposed by National Union are improper and warrant denial of Defendants' motions.

## CONCLUSION

Defendants contend that the investigatory costs incurred either were too high and/or were unrelated to the proper defense of the Securities Lawsuits and that the costs incurred in connection with the SEC's investigatory proceedings must be strictly limited to post-subpoena and post-Wells Notice costs rather than costs incurred after July 11, 2007, the date on which those Claims are deemed "made."  However, insurance carriers cannot add a missing exclusion for costs incurred before the claim is actually made or allocate coverage for Defense Costs between what National Union unilaterally contends are insured and uninsured costs.  Because Office Depot's interpretation of the Policy terms is reasonable and is not contradicted by clear and unequivocal exclusionary language to the contrary, Office Depot respectfully submits that defendants' summary judgment motions should be denied.

Respectfully submitted this 6th day of July, 2010.

_____
Sidney A. Stubbs
Florida Bar No. 095596
Joanne M. O'Connor
Florida Bar No. 0498807
**JONES, FOSTER, JOHNSTON & STUBBS, P.A.**
505 South Flagler Drive
Suite 1100
West Palm Beach, Florida 33402-3475
Telephone: (561) 659-3000
Facsimile: (561) 832-1454

Edmund M. Kneisel
Brent W. Brougher
**KILPATRICK STOCKTON LLP**
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

*Attorneys for Plaintiff Office Depot, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 6, 2010, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

By:    **<u>/s/ Joanne M. O'Connor</u>**
         Joanne M. O'Connor

US2008 1416665.5

**SERVICE LIST**

**Office Depot, Inc. v National Union Fire Insurance Company of Pittsburgh, PA**
**CASE NO.: 09-CV-80554-MARRA/JOHNSON**
**United States District Court, Southern District of Florida**


Steven J. Brodie, Esquire
Email:  sbrodie@carltonfields.com
Gwynne A. Young, Esquire
Email:  gyoung@carltonfields.com
CARLTON FIELDS
100 S.E. 2nd Street
Suite 4000, International Place
Miami, Florida 33131
Telephone:     305-530-0050
Facsimile:      305-530-0055
*Attorneys for Defendant*


Neil S. Baritz, Esquire
nbaritz@baritzcolman.com
Craig R. Glasser, Esquire
cglasser@baritzcolman.com
BARITZ & COLMAN LLP
1075 Broken Sound Parkway, NW
Suite 102
Boca Raton, FL 33487
Telephone:     561-864-5100
Facsimile:      561-864-5101
*Attorneys for American Casualty*


Daniel J. Standish, Esquire
Gary P. Seligman, Esquire
gseligman@wileyrein.com
John E. Howell, Esquire
jhowell@wileyrein.com
WILEY REIN LLP
1776 K Street NW
Washington, DC 20006
Telephone:     202-719-7000
Facsimile:      202-719-7049
*Attorneys for American Casualty*

US2008 1416665.5