IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CIVIL ACTION NO. 09-80554-Civ-Marra/Johnson

| | |
|---|---|
| OFFICE DEPOT, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| NATIONAL UNION FIRE INSURANCE | ) |
| COMPANY OF PITTSBURGH, PA., | ) |
| | ) |
| Defendant, | ) |
| | ) |
| AMERICAN CASUALTY COMPANY | ) |
| OF READING, PA., | ) |
| | ) |
| Intervenor Defendant. | ) |

## PLAINTIFF OFFICE DEPOT INC.'S MOTION FOR RECONSIDERATION OF THE COURT'S ORDERS ENTERED OCTOBER 15, 2010 AND OCTOBER 27, 2010 AND MEMORANDUM OF LAW IN SUPPORT

Plaintiff Office Depot, Inc. ("Office Depot") hereby moves the Court, pursuant to Federal Rule of Civil Procedure 60 and/or Rule 59(e) and Local Rule 7.1, to reconsider its: (1) October 15, 2010 Opinion and Order denying Office Depot's partial motion for summary judgment and granting Defendants' motions for summary judgment (D.E. 176); and (2) October 27, 2010 Order amending the October 15 Order to exclude coverage for Office Depot's investigatory defense costs (D.E. 188) (the October 15 Order and October 27 Order will be referenced collectively as "Summary Judgment Orders").[1]

---

[1] Rules 59(e) and 60 refer to modification or alteration or "relief" from a judgment. In the Order of October 27, 2010, the Court ruled that there were no issues left for trial and that final judgment would be entered accordingly. While a final judgment has not yet been entered, Rule 60 also expressly refers to relief from an "order;" and the filing of such a motion under either rule, whether before or after the judgment is entered, tolls the time for filing a notice of appeal. *See* Fed. R. App. P. 4(a)(2) and (4).

1

**ARGUMENT**

Courts have ruled that to prevail on a motion for reconsideration, the movant "must demonstrate why the court should reconsider its prior decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision.  A motion for reconsideration should raise new issues, not merely address issues litigated previously." *Socialist Workers Party v. Leahy*, 957 F. Supp. 1262, 1263 (S.D. Fla. 1997) (internal quotation marks and citations omitted).  "While Rule 59(e) does not set forth any specific criteria, the courts have delineated three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice."  *Williams v. Cruise Ships Catering and Serv. Int'l, N.V.*, 320 F. Supp. 2d 1347, 1357 (S.D. Fla. 2004*). Accord, Bautista v. Cruise Ships Catering & Serv. Int'l, N.V.*, 350 F. Supp. 2d 987, 992 (S.D. Fla. 2003). Rule 60(b) is similar, but does set forth several enumerated grounds for relief by providing expressly that, "the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);… (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b).

Here, relief may be granted under both rules, as new evidence not available before October 15, 2010 regarding the recent outcome of the SEC investigatory proceedings establishes a need to prevent manifest injustice and because there is a need to correct a mistake of fact and to remedy legal error under applicable law.  Accordingly, for the reasons stated herein, Office Depot respectfully requests that the Court reconsider and modify its Summary Judgment Orders rejecting Office Depot's claims.

2

I.   **AS SHOWN BY NEW EVIDENCE, UNDER THE CIRCUMSTANCES, THE OCTOBER 15 AND OCTOBER 27 ORDERS ARE MANIFESTLY UNJUST.**

The Summary Judgment Orders rejected Office Depot's claims seeking coverage for the more than $24 million in legal fees and expenses that Office Depot contends are covered Defense Costs incurred in connection with related Securities Claims filed by private individuals and investigatory proceedings commenced by the SEC that recently culminated in the filing and immediate settlement of a lawsuit by the SEC alleging securities law violations. The filing and entry of a consent judgment resolving the SEC's claims occurred after entry of the October 15, 2010 Order, in which the Court agreed with National Union that no "Securities Claim" had been made by the SEC against Office Depot (as the insured organization) and that no "Claim" had been made by the SEC against any "Insured Person" until the SEC began issuing subpoenas to Insured Persons in the fall of 2008. A significant portion of the costs at issue had been incurred before the first subpoena issued, but the Court also agreed with National Union that none of the ongoing investigatory costs incurred thereafter by Office Depot in responding to the SEC were insured.

As clarified on October 27, 2010, the Court has ruled that there is no coverage for any investigatory defense costs incurred before a claim is "actually made" and that coverage for defense costs does not "relate back" either to the date of Office Depot's initial "notice of circumstances" (July 11, 2007) or the date of notice of the first Claim acknowledged to be a Securities Claim by National Union, *Sheet Metal Workers Local 28 Pension Fund v. Office Depot, Inc.*, et al, No. 9:07-cv-81038-DTKH (S.D. Fla. November 5, 1997). As a result, the Court concluded that National Union has appropriately limited coverage solely to the fees and expenses Office Depot paid to outside counsel and consultants *after* the Securities Lawsuits were filed and after the SEC issued subpoenas and Wells Notices to Insured Persons. The Court also

3

has upheld National Union's decision to allocate less than ten percent (10%) of the defense costs incurred to those covered Claims (the lawsuits, the subpoenas and the Wells Notices).[2] Thus, the Court has ruled that more than 90% of Office Depot's costs incurred in investigating the related Claims were voluntary and uninsured. (*See* D.E. 188, p. 3).

Soon after entry of the Court's October 15, 2010 ruling, and pursuant to a settlement agreement previously announced in December, 2009, the SEC filed a complaint against Office Depot (Case No. 9:10-cv-81239-MARRA/Johnson) (October 21, 2010). The Complaint alleged that Office Depot violated Section 13(a) of the Securities Exchange Act and Regulation FD and is a "Securities Claim" against Office Depot, as defined in Section 2(y) of the Policy.[3] All of the costs of defending that Complaint already had been incurred; for on October 28, 2010, the day after entry of the Court's October 27, 2010 Order in this case, the SEC submitted an agreed Consent Judgment resolving all matters alleged in the Complaint. The Court approved and entered the Consent Judgment on October 28, 2010, thereby terminating the SEC proceedings. Copies of the SEC Complaint, the SEC Administrative Orders, and the Consent Judgment are attached as Exhibits A-E to the Declaration of Edmund Kneisel filed contemporaneously herewith ("Kneisel Dec."), respectively.[4] The settlement letter from Office Depot's General Counsel to the SEC and the accompanying settlement agreement, dated October 20, 2010, have previously been filed under seal (D.E. 190-2, Ex. 1).

---

[2] Because National Union's allocated amount is less than the Policy's $2.5 million self-insured retention, National Union has not paid any portion of Office Depot's loss.

[3] Contemporaneously, the SEC filed Administrative Cease and Desist Orders, which also are undisputed Securities Claims, against Office Depot and two, insured persons (Steve Odland and Patricia McKay). Mr. Odland and Ms. McKay previously had been named as defendants in the November, 2007 Securities Lawsuits. The Policy defines "Claim" to include a "Securities Claim."

[4] Office Depot also requested on November 5, 2010 that the Court take judicial notice of these public records of this Court and the SEC pursuant to Fed. R. Evid. 201. (D.E. 189, Ex. A-E).

US2008 1743140 2

Office Depot first announced its settlement with the SEC almost a full year ago, in a Form 8K filing dated December 4, 2009, a copy of which was previously filed with the Court (D.E. 106, Ex. 7) and is attached as Exhibit F to the Kneisel Dec. The sequence of events leading up to the recently consummated SEC settlement begs the obvious question and illustrates the fallacy of National Union's position: If the SEC had not previously commenced an administrative or regulatory "proceeding" qualifying for coverage under the National Union Policy, what was being "settled?" Moreover, on October 28, 2010, the SEC also filed Office Depot's "Consent to Settlement" document, accompanied by the form of Consent Judgment that the Court entered on October 28. The Consent to Settlement, a copy of which is attached as Exhibit G to the Kneisel Dec,, was signed by Office Depot's General Counsel several months before, on June 14, 2010. Again, if no claim was "considered made" before then, what was being settled?

Office Depot obviously did not lightly agree to pay the $1,000,000 Civil Penalty specified in paragraph 1 of the October 28, 2010 Consent Judgment (Exhibit E to the Kneisel Declaration) terminating the SEC proceedings.[5] The SEC proceedings that culminated in entry of the Consent Judgment approved by this Court, and in entry of the agreed Administrative Cease and Desist Order, started long ago—with the SEC's first "letter of inquiry" dated July 17, 2007. (D.E. 103, ¶12). Indeed, as stated by the SEC at pg. 8 of the Cease and Desist Order directed to Office Depot, Exhibit B to the Kneisel Dec., "In determining [whether] to accept the offer, the Commission considered remedial acts *promptly undertaken by Respondent and cooperation afforded the Commission staff*." (emphasis added). Absent such cooperation, which

---

[5] Section 2(p) of the National Union Policy expressly excludes coverage for civil penalties from the definition of "Loss."

also benefited Insured Persons who settled with the SEC, it is unlikely that any of the SEC's claims could have been settled.

Office Depot respectfully submits that it is manifestly unjust and improper to allocate more than 90% of the costs incurred during all of the pre-settlement work leading up to entry of the October 28, 2010 Consent Judgment to work that National Union misconstrues as having been "voluntarily" undertaken by Office Depot solely in response to a "potential claim." Rather, it is undisputed, as testified by National Union's own expert, Thomas R. Newman, Esq., that all of the matters that the SEC investigated and resolved were in fact related to the matters alleged in the lawsuits filed in November, 2007 (and in the October 21, 2010 SEC Complaint). (Newman Depo. pp. 59-60, 62-63, 64-68, 72-73 [D.E. 178-1]).

> Q. Is there any question in your mind that the SEC investigation that was
> ongoing then at the time and is still theoretically ongoing, involve matters related
> to the securities lawsuits, Newman-11?
> A. That's what it appears to be.
> Q. In other words, what the SEC was looking at is not separate and independent
> from what the claimants were alleging in this particular lawsuit against Office
> Depot?
> MISS YOUNG: I object to the form.
> A. I think that's right.

(*Id.* at pp. 66-67). The investigative work at issue benefited the successful conclusion of that litigation, and the investigatory work undertaken obviously benefited the final resolution of all of the SEC's claims.

Office Depot submits that all the costs incurred in connection with the SEC proceedings resulted "solely from the *investigation*, *adjustment*, defense and/or appeal of a Claim...." (Policy Section 2(f)). It is undisputed that the SEC has filed such a Claim, on October 20, 2010, which was immediately resolved by the entry of the Consent Judgment approved by the Court. The operative definition refers both to the costs of "investigation" and "adjustment," as well as the

US2008 1743140.2

"defense" of a Claim.   Absent the decision(s) to cooperate with the SEC's investigation undertaken beginning on July 17, 2007, the settlement of the subsequent Claim would not have been possible.  If the pre-actual-claim costs of investigation, leading up to the adjustment and settlement with the SEC were not covered, express reference to "investigation" and "adjustment" would not be needed in the definition.   Accordingly, and as ruled in the New York cases discussed below, once an "actual Claim" is made, the pre-claim expenses of investigation should be deemed insured.[6]

Given the attached new evidence regarding final disposition of the SEC's subsequent Claim, and to prevent manifest injustice, Office Depot respectfully requests the Court to reconsider and vacate its ruling holding that all of the investigatory costs Office Depot incurred were voluntary and uninsured.

## II.   THE COURT OVERLOOKED APPLICABLE LAW IN GRANTING DEFENDANTS' MOTIONS.

In the Order entered October 15, 2010, the Court apparently agreed with National Union's position that because the policies at issue were delivered to Office Depot's broker in New York, that New York insurance law governs this case (D.E. 176, pp. 12-13).  Assuming New York law does apply, Office Depot respectfully submits that the Court overlooked instructive New York cases that warrant a different outcome.

### A.   New York Courts Allow Coverage for Pre-Claim Investigatory Costs.

Office Depot respectfully submits that the Court overlooked applicable New York law in concluding that the disputed costs at issue were uninsured costs of investigating a "potential"

---

[6] If no subsequent Claim (no private lawsuits, no SEC subpoenas, no Wells Notices, and no SEC lawsuit) had ever been made, the outcome might differ, as courts have ruled that the cost of averting a potential claim that is never filed (as opposed to investigating or defending a claim that was eventually filed) are not covered. *See Klein v. Fid. & Deposit Co. of Am.*, 117 Md. App. 317, 700 A.2d 262 (1997).

7

claim.  Rather, absent an express exclusion to the contrary (which does not exist in the National Union Policy), an insured is entitled to conduct a reasonable, pre-claim investigation as part of its defense of a claim.  Especially when future claims are likely, if not certain to be commenced, it is plainly wrong to suggest that an insured should sit idly by while documents are lost and memories fade.  Even absent express "relation back" language in a D&O policy, New York courts have ruled that investigatory costs that are related to and that benefit the defense of a subsequent claim are covered defense costs. *See MBIA, Inc. v. Fed. Ins. Co.*, No. 08 Civ. 4313 (RMB), 2009 WL 6635307, at *2-3 (S.D.N.Y. Dec. 30, 2009)(awarding costs in responding to regulatory investigation, including oral requests for information from New York Attorney General and pre-litigation costs of Special Litigation Committee).  Other New York courts have reached similar results. *See, e.g., State v. Blank*, 745 F. Supp. 841, 852 (N.D.N.Y. 1990), *aff'd* 27 F.3d 783 (2d Cir. 1994) (allowing recovery of pre-suit costs, stating an insurer is obligated to reimburse "all defense costs incurred… which are useful in defending against the first-party complaint….  Common sense argues that [the insurer] is *benefited* by the early actions taken by [the insured] to defend this action…."); *Pepsico, Inc. v. Cont'l Cas. Co.*, 640 F. Supp. 656, 666 (S.D.N.Y. 1986) (requiring the D&O insurance carrier to pay costs incurred in connection with the defense of a class action lawsuit and a related SEC investigation because the securities class action and the simultaneous SEC investigation of allegedly fraudulent activity were directed against both Pepsico (uninsured) and its insured directors and officers).

As noted above, the National Union Policy defines covered "Defense Costs" to include the costs of "investigating" and "adjusting" a Claim, as well as the costs of defending it. *See* note 6 and accompanying text, *supra.*  There is no temporal limitation stated in this definition; and the "considered made" language discussed below provides that once an actual claim is made,

8

the coverage relates back to the date of the notice of circumstances. If only post-Claim "defense costs" were covered there would have been no need to reference the costs of "investigation" separately from the costs of defense.

The Court did not cite any New York cases in denying coverage for Office Depot's pre-claim investigatory costs, but relied instead on *National Stock Exchange v. Federal Insurance Co.*, No. 06 C 1603, 2007 WL 1030293 (N.D. Ill. Mar. 30, 2007) ("NSX"). (D.E. 176, p. 31). *NSX* is neither controlling nor persuasive authority, as it is readily distinguishable for at least two reasons. First, the D&O policy at issue did not provide any entity coverage, but only covered individual insureds. Second, unlike the National Union Policy, the insurance policy at issue in *NSX* expressly excluded coverage for "any amount incurred by the Organization (including its board of directors or any committee of the board of directors) in connection with the investigation and evaluation of any Claim or potential Claim by or on behalf of the organization." (D.E. 123-1). No exclusionary language barring coverage for the costs of responding to the SEC investigatory proceedings exists in the National Union Policy.[7] Accordingly, *NSX* should not be followed in preference to the foregoing New York cases that allow coverage for pre-litigation investigatory costs.

**B.**     **Payment of Defense Costs, Including the Investigatory Costs Incurred, Is Consistent with the Reasonable Expectations of the Insured.**

Office Depot's argument that pre-claim investigatory costs are covered is stronger here than the policyholders' arguments in New York cases cited above because the National Union Policy contains express "relation back" clauses. Office Depot respectfully submits that the Court

---

[7] National Union could have, but did not, expressly exclude coverage for the costs of all "investigations," as a limited exclusion for investigatory costs is contained in Policy Endorsement 5, which applies only to certain employment practices claims and not to the SEC Claims at issue here.

9

misconstrued the applicable "relation back" language in Section 7 of the National Union Policy by implying limitations that are not part of the Policy language and that are not consistent with the insured's reasonable expectations.

There are two possible interpretations of the applicable relation back language:

(1) The carriers' interpretation, as follows:

Subsequent, related Claims are "considered made" as of the date of the notice of circumstances (Policy Section 7(c)) or as of the date of notice of the first related Claim (Policy Section 7(b)), but only for the purpose of determining which policy applies; therefore, *there is no coverage for any defense costs incurred before the subsequent Claim is "actually made."* (emphasis added).

(2) The insured's (Office Depot's) interpretation, as follows:

Because any subsequent, related Claims are "considered made" as of the date of the notice of circumstances (Policy Section 7(c)) or as of the date of notice of the first related Claim (Policy Section 7(b)), and absent specific limiting language, Office Depot is entitled to coverage for all investigatory defense costs incurred afterwards that relate to the subsequent Claims.

As noted above, there is no dispute that Securities Claims were "actually made" no later than November 5, 2007, *within the applicable policy period*, when the *Sheet Metal Workers* case was filed**.** As a result, there is no dispute regarding which policy's coverage applies.  Moreover, the highlighted language of the carriers' interpretation does not appear in the National Union Policy; but such express, exclusionary language recently has been included in a successor policy issued by Chartis Insurance (named changed from National Union).  Even absent the express exclusionary language added later, the Court nevertheless concluded that the National Union Policy unambiguously barred all coverage for pre-actual-claim defense costs.  In ruling that the policy at issue could only be construed one way—to bar coverage for the investigatory costs at issue—the Court also effectively ruled that interpretation (2) above could not be deemed "reasonable."  This ruling rejected the interpretation proposed by Office Depot, as summarized

US2008 1743140 2

above and in correspondence dated August 20, 2008 sent of behalf of Office Depot's Vice President and Deputy General Counsel, Stephen R. Calkins, a copy of which is attached as Exhibit H to the Kneisel Declaration. By granting the motion to strike his testimony, the ruling also effectively rejected as "unreasonable" the testimony on this point of Office Depot's insurance expert, Mr. Perry Granof, who has more than thirty years of insurance industry experience handling Directors and Officers liability claims (*see* D.E. 104-1 & 135-1).

### 1. New York's "Reasonable Expectations" Doctrine Should be Applied.

The Court relied exclusively on Florida cases in the Summary Judgment Orders, based apparently on the assumption that there were no "conflicts" between Florida and New York law; however, cases and commentary not previously addressed by the parties (or the Court) suggest that conflicts do exist. For instance, it is well established in New York that in construing an insurance policy and determining whether a policy provision is ambiguous, the court should consider the reasonable expectations of the insured regarding the policy coverage. *Mostow v. State Farm Ins. Cos.*, 668 N.E.2d 392, 394 (N.Y. 1996); *NIACC, LLC v. Greenwich Ins. Co.*, 51 A.D.3d 883, 884 (N.Y. App. Div. 2008); *Pepper v. Allstate Ins. Co.*, 20 A.D.3d 633, 635-36 (N.Y. App. Div. 2005); *see also Herald Square Loft Corp. v. Merrimack Mut. Fire Ins. Co.*, 344 F. Supp. 2d 915, 918-21 (S.D.N.Y. 2004). *See also* Barry R. Ostranger & Thomas R. Newman, *Handbook on Insurance Coverage Disputes* § 1.03[b], pp. 50-51 (15th ed. 2010) (citing cases). According to this same commentary (co-authored by National Union's insurance expert, Thomas R. Newman), Florida courts have rejected the reasonable expectations doctrine. *Id.* § 1.03[b], p. 54; *see also* D.E. 176, p. 16 (citing *Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135 (Fla. 1998) and stating the reasonable expectations of the insured are not properly considered in interpreting the policy language).

11

The Court's rulings do not address the "reasonable expectations" doctrine. (*See* D.E. 176, pp. 13-16) (detailing the precepts of insurance policy construction underlying the October 15 Order). Rather, without citing the reasonable expectations doctrine, the Court has ruled that the Policy is unambiguous; that the "considered made" language in the Policy's relation back clauses (Sections 7(c) and 7(b)) can only be read one way; that the relation back language is limited to the issue of which policy applies rather than the issue of when a claim is "considered made" for purposes of triggering defense costs coverage; and that there is no coverage for any Defense Costs before a claim is "actually made." These rulings are not consistent with New York law.

In New York, an insurance carrier has the "heavy burden of proof of demonstrating … that its interpretation of the insurance policy provisions is the 'only construction that fairly could be placed on the policy.'" *Kenevan v. Empire Blue Cross & Blue Shield*, 791 F. Supp. 75, 79 (S.D.N.Y. 1992) (citation omitted); *accord Westview Assocs. v. Guar. Nat'l Ins. Co.*, 740 N.E.2d 220, 223 (N.Y. 2000) (denying insurer's motion for summary judgment where it failed to establish provision was clear and unmistakable and was subject to no other reasonable interpretation). Office Depot respectfully submits that if, as required by applicable law, the Court resolves all doubts regarding National Union's duty to pay in favor of coverage; and if the Court considers Office Depot's reasonable interpretation and expectations regarding coverage,[8] that the Court should reject National Union's position (relying on missing policy language) that

---

[8] As also recognized in New York, and contrary to arguments Defendants previously made, there is no exception to the reasonable expectations doctrine or the other pro-policyholder rules of policy interpretation merely because the policyholder is a sophisticated corporation, especially where, as here, there is no evidence that the policyholder (Office Depot) negotiated any of the policy terms at issue. *See, e.g., Morgan Stanley Group, Inc. v. New England Ins. Co.*, 225 F.3d 270, 279 (2d Cir. 2000) ("there is no general rule in New York denying sophisticated businesses the benefit of contra proferentem").

no coverage exists before a claim is "actually made." Because National Union's interpretation is not the *only* reasonable interpretation of the policy language, Office Depot respectfully submits that its reasonable expectations regarding policy coverage should be accepted.

### 2. New York Courts Consider Changes in Policy Wording as Evidence of Ambiguity.

Aside from the "reasonable expectations" issue, the Court also overlooked New York authority holding that evidence of subsequent revisions to policy language is relevant and should be considered in determining whether or not the less-than-clear language at issue is ambiguous and should be construed in favor of coverage. *See Herald Square Loft Corp.*, 344 F. Supp. 2d at 923. In *Herald Square*, the insured sought coverage for losses caused by lead paint; however, the carrier denied coverage, invoking the policy's pollution exclusion. Upon construing the policy and considering whether the pollution exclusion was ambiguous, the court reviewed evidence showing that the insurer had sent its insured a conditional notice of renewal advising "of a 'reduction of coverage: a lead paint exclusion form is added.'" *Id.* The court concluded that the insurer either had recognized the ambiguity in the policy or that the insurer did not consider lead paint to be excluded by the previous exclusionary language. *Id.* "Either way, it [wa]s not tenable for [the insurer] to now assert that '[t]he clear and unequivocal language of the policy in effect at the time of the incident clearly excludes coverage …' when it had sent notice [to the insured] of a reduction in coverage by excluding damage liability from lead paint." *Id.*

This New York ruling is consistent with the rulings of many other cases and should be applied here, as courts often consider revisions to policy forms clarifying outcome determinative terms in construing previously unclarified and hence ambiguous policy language. *See, e.g., Am. Cas. Co. of Reading, Pa. v. Continisio*, 819 F. Supp. 385, 398 (D.N.J. 1993), *aff'd*, 17 F.3d 62 (3d Cir. 1994) ("The FDIC argues that a subsequent, more precise revision of the notice

13

provision demonstrates that the Notice of Claims provision in the 1981 Policy is ambiguous. Evidence of subsequent changes in contract language is relevant to whether the language at issue is ambiguous."); *Swank Enters., Inc. v. All Purpose Servs., Ltd.*, 154 P.3d 52, 57 (Mont. 2007) (considering amendment to policy form in construing policy and holding it was ambiguous); *Safeco Gen. Ins. Co. of Am. v. Davis*, No. CA 91-253, 1992 WL 103726, at *4 (Ark. Ct. App. May 6, 1992) (affirming trial court's discretion to consider subsequent, clarifying language added to a policy form in determining "whether or not the policy language [at issue] was ambiguous"). *See generally Orren v. Phoenix Ins. Co.*, 179 N.W.2d 166, 169 (Minn. 1970) ("ambiguous language in an insurance policy must be construed against the insurer [and]… *given ambiguous language, it is to the insurer's benefit to change it and a failure to do so exposes the insurer to the risk of an interpretation favorable to the insured.*") (emphasis added).

Chartis (formerly National Union) has issued a new policy form that clarifies the "relation back" language of the notice of circumstances clause. The new language provides that "[c]overage for Loss arising from any subsequent Claim shall only apply to Loss *after that subsequent Claim is actually made* against the Insured." (emphasis added). This is precisely the language that National Union argued should be implied as being part of the policy at issue in this case. If such language had been included, Office Depot agrees that the Policy could only be interpreted in favor of National Union; however, there is no such language in the National Union Policy. As a result, Office Depot's understanding and expectation regarding coverage for its investigatory defense costs incurred after the "considered made" date is a reasonable interpretation that should be credited by this Court. As ruled in *Herald Square, Orren* and the other cases cited above, the fact that Chartis (National Union) has now revised and clarified the operative language demonstrates that the existing relation back language is ambiguous and hence

14

should be construed in accord with Office Depot's reasonable expectations regarding coverage.

Office Depot's interpretation of the relation back language does not require a strained reading of any policy language and unlike National Union's interpretation, does not incorporate any missing wording.  Office Depot's interpretation also is fully consistent with New York law. National Union's interpretation is not.  Moreover, as discussed in the next subpart, because the Policy language can reasonably be construed as imposing a "duty to pay" defense costs on National Union, measured from the first date on which the claim is "considered made," the Court should reconsider its Summary Judgment Orders.

### C.     National Union Breached Its "Duty to Pay."

The $1 million civil penalty being paid by Office Depot and the civil penalties being paid by Mr. Odland and Ms. McKay to resolve the SEC's Claims are uninsured; and Office Depot and its co-defendants have prevailed in the Securities Lawsuits, subject to the outcome of a pending appeal.  As a result, the sole issue in this case is whether or not National Union has any obligation to pay the defense costs Office Depot incurred solely in connection with the investigation and defense of the Claims and Securities Claims made by the SEC and by private parties. As many courts applying New York law have recognized, where, as here, "a contract of insurance includes the duty to defend *or to pay for the defense* of its insured, that duty is a 'heavy' one." *In re WorldCom, Inc. Sec. Litig.*, 354 F. Supp. 2d 455, 463-65 (S.D.N.Y. 2005) (quoting *McGinniss v. Emp'rs Reinsurance Corp.*, 648 F. Supp. 1263, 1271 (S.D.N.Y. 1986)) (emphasis added).  It also is well-settled that "[t]he duty of an insurer to pay an insured's defense costs 'is distinct from and broader than its duty to indemnify.'" *Id.* at 464 (quoting *Fed. Ins. Co. v. Tyco Int'l Ltd.*, No. 6005007/03, 2004 WL 583829, at *6 (N.Y. Sup. Mar. 5, 2004)).  The duty

15

to pay defense costs is construed liberally and *any doubts* about coverage must be resolved in the insured's favor. *See id.*

As ruled in *WorldCom*, "under a D&O policy with a duty to pay defense costs provision, 'the insurance company's obligation to reimburse the directors attaches as soon as the attorneys' fees are incurred.'" 354 F. Supp. 2d at 464-65 (quoting *Wedtech Corp. v. Fed. Ins. Co.*, 740 F. Supp. 214, 221 (S.D.N.Y. 1990)). Indeed, "'to hold otherwise would not provide insureds with protection from financial harm that insurance policies are presumed to give.'" *Id.* at 465 (quoting *Nu-Way Envtl., Inc. v. Planet Ins. Co.*, No. 95 Civ. 573(HB), 1997 WL 462010, at *3 (S.D.N.Y. Aug. 12, 1997)). Section 8 of the National Union Policy imposes a duty to pay on National Union that includes a duty to pay Office Depot's defense costs arising from a Securities Claim made against the Company and a duty to pay Office Depot's costs incurred in indemnifying Insured Persons against Claims.[9] Because National Union breached those duties under New York law, the Court should reconsider its summary judgment decision and rule in favor of coverage.

## III. THE COURT HAS MISCONSTRUED OR OVERLOOKED CERTAIN UNDISPUTED FACTS.

An error of material fact in the October 15 Order also supports reconsideration of the Court's rulings. In particular, the Court found that before the SEC starting issuing subpoenas to

---

[9] In *Worldcom,* the court ruled that the carrier had breached its obligation to pay defense costs, as incurred, and entered a mandatory injunction ordering immediate payment of those costs. Despite Office Depot's repeated demands for payment and advancement of costs, and despite the plain language of Section 8 of the National Union Policy requiring such advancement, Office Depot has been forced to absorb more than $20 million of such costs in excess of the policy retention and co-insurance clauses. Office Depot submits that those costs should have been paid by National Union in accord with the *Worldcom* ruling and the other cases cited therein. *See also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Brown*, 787 F. Supp. 1424, 1429-1430 (S.D. Fla. 1991), *aff'd without opinion*, 963 F.2d 385 (11th Cir. 1992).

US2008 1743140 2

individuals, the SEC had not identified any individuals by name as persons against whom proceedings may be commenced. (*See* D.E. 176, p. 9). This factual determination is clearly erroneous. Putting aside the issue of whether or not persons have to be "named" individually, as opposed to being identified by job title, as persons against whom "proceedings" alleging violation of the securities laws "may be commenced,"[10] starting in the fall of 2007, the SEC sent separate letters to counsel for Insured Persons, who were named individually in those letters as being part of the SEC's proceedings. (D.E. 103, ¶18)

Each of the letters the SEC issued to Insured Persons individually, through their counsel, and the previous investigatory letters issued to Office Depot naming Insured Persons by title or individually, was accompanied by SEC Form 1662. The SEC also included the same form with the formal investigatory subpoenas it later issued to some of the same persons named in the earlier letters and with the Wells Notices issued to three such persons (Messrs. Odland and Tharpe and Ms. McKay). National Union has acknowledged that the Wells Notices are insured Claims under Section 2(b)(3)(i) of the Policy because those notices identify insured persons against whom future proceedings "may be commenced." National Union's position accepting the Wells Notices as Claims supports Office Depot's position because there is no less of a "threat" of future "proceedings" presented by a Wells Notice, which invites voluntary "submissions" by the recipient, than was presented by the letters the SEC began issuing to named individuals in the fall of 2007. Those letters also invited voluntary submissions by the recipients and like the Wells Notices, included SEC Form 1662 warning of the consequences of doing so.

---

[10] *See Nat'l Stock Exch*, 2007 WL 1030293, at *4-5 (rejecting the carrier's argument that no "claim" could be deemed to have been made until after the SEC identified specific individuals, by name, rather than by job title). As early as July 17, 2007 and not later than July 31, 2007, the SEC identified individuals by job title (and even by name) as persons whose records needed to be collected and preserved by Office Depot, and who accordingly could be subject to future SEC proceedings—as indeed several were.

17

When asked to describe an example of what would qualify as a "Claim" under Section 2(b)(3)(i) of the Policy, co-defendant American Casualty's corporate representative testified as follows:

> A.     An example would be *a letter from a regulatory agency addressed to a particular individual asking that individual to do something* in connection with an investigation of that individual.
> Q.     Okay.  And when you say do something, what do you mean by do something?
> A.     Produce documents, make notes.
> Q.     Appear to testify, is that an example?
> A.     Yeah, yes.

(Deposition of Elizabeth Neumann, pp. 104-05)(emphasis added), a copy of which is attached as Exhibit I to the Kneisel Declaration. According to Ms. Neumann, all of the letters issued by the SEC to Insured Persons, beginning with the letter to Ray Tharpe issued on November 16, 2007 (Ex. 2 to Office Depot's Mot. Seal filed June 11, 2010), qualify as "Claims."  The SEC's letters plainly "ask" the recipients to "do something," either testify or produce documents or both.  No later than the date of such correspondence, the SEC identified the recipients as persons against whom future "civil, criminal, administrative, regulatory or arbitration proceedings… may be commenced…."  *See* Policy §§2(b)(2) and 2(b)(3)(i).  Thus, like the Wells Notices, the SEC's letters qualify as "Claims" and "Securities Claims" for purposes of triggering coverage for the costs incurred in defending and investigating those Claims.

The potential that future proceedings "may be commenced" is expressly confirmed by the Form 1662 document enclosed with the SEC letters.  SEC Form 1662 specifically cites criminal provisions of Title 18 of the United States Code regarding "false, fictitious or fraudulent" statements and perjury.  (D.E. 122-1, ¶18).  Page 2 of the form advises recipients that any submissions or testimony they provide could be used by the SEC during "enforcement

18

proceedings" and that as the matter progresses, any subsequent settlement would be limited to the "claims... in [the] investigative, civil, or administrative matter" and not any criminal proceedings that "might be brought." (*Id.*) This Form explicitly advised the individuals (and their counsel) of the consequences of appearing before the SEC and providing the testimony (or not) and other information requested—either voluntarily or through the compulsion of a subpoena. It is a fair and rational interpretation of these materials that the individuals named (both by job title and by name) in fact had been identified by the SEC as persons against whom future proceedings "may be commenced." It is not necessary that those proceedings be "actually" commenced to trigger coverage for investigatory defense costs. The SEC's issuance of Form 1662, whether as part of a Wells Notice or as part of a letter to counsel for the individuals named, triggers coverage for the defense costs incurred in responding to the SEC.

Office Depot respectfully submits that *all* of the fees and costs of counsel and consultants retained by Office Depot and to represent individual insureds constitute insured investigatory defense costs that relate back to the first date (July 11, 2007) on which the related claims are "considered made." At a minimum, under the New York cases cited above, there are triable issues regarding how much of Office Depot's significant investigatory costs benefited the defense of (i) the Securities Lawsuits commenced on November 5, 2007[11]; (ii) the "Claims" that the SEC commenced against Insured Persons, no later than the fall of 2007; (iii) the final settlement and resolution of the SEC's claims against Office Depot, as memorialized in the Consent Judgment approved by the Court and entered in Case No. 9:10-cv-81239-

---

[11] As noted above, National Union's coverage expert, Thomas Newman, has acknowledged that all of he SEC's subsequent investigatory proceedings are related to the Claims alleged in the Securities Lawsuits.

MARRA/Johnson; and (iv) the administrative cease and desist orders entered against Office Depot, Mr. Odland and Ms. McKay.

## CONCLUSION

Office Depot respectfully submits that the Court should reconsider its Summary Judgment Orders holding that the National Union Policy may only be construed one way, *i.e.*, in accord with National Union's view that none of Office Depot's pre-actual-claim investigatory costs are insured. Rather, consistent with the cases cited above applying the New York rules of policy interpretation, the Court should resolve all doubts regarding National Union's "duty to pay" defense costs in favor of coverage for Office Depot and in accord with Office Depot's reasonable expectations. It is a reasonable interpretation, under the facts presented, that the Policy provides coverage for the significant defense and investigatory costs Office Depot began to incur after the first date on which all the related Securities Claims are "considered made." Accordingly, in light of the evidence regarding final resolution (by consent judgment) of the SEC proceedings; in accord with the New York authorities cited above; and to prevent manifest injustice, the Court should reconsider its Summary Judgment Orders and rule in Office Depot's favor.

## LOCAL RULE 7.1.A.3 CERTIFICATION

In accordance with S.D. Fla. L.R. 7.1(A)(3), counsel for Office Depot conferred with counsel for Defendants regarding the relief requested herein.  Defendants oppose this Motion and the relief requested.

**WHEREFORE**, Plaintiff Office Depot, Inc. respectfully requests that the Court (1) reconsider its Order dated October 15, 2010 with respect to the denial of Office Depot's partial motion for summary judgment and grant of summary judgment on the issue of coverage in favor of Defendants; (2) reconsider its Order dated October 27, 2010 with respect to the clarification and amendment of the October 15 Order to exclude coverage for post-suit SEC response costs; and (3) award Office Depot all further appropriate relief.

Dated: November 24, 2010          By:     **/s/ Joanne M. O'Connor**
                                          Joanne M. O'Connor, Esq.
                                          Florida Bar No: 0498807
                                          E-mail: joconnor@jones-foster.com
                                          JONES, FOSTER, JOHNSTON & STUBBS, P.A.
                                          505 South Flagler Drive; Suite 1100
                                          P.O. Box 3475
                                          West Palm Beach FL 33402-3475
                                          Telephone: (561) 659-3000
                                          Facsimile: (561) 832-1454
                                          *Attorneys for Plaintiff*

OF COUNSEL:
Edmund M. Kneisel                              Brent W. Brougher
ekneisel@kilpatrickstockton.com               bbrougher@kilpatrickstockton.com
Georgia Bar No:  425350                       Georgia Bar No:  086373
Kilpatrick Stockton LLP                       Kilpatrick Stockton , LLP
1100 Peachtree Street, Suite 2800             1100 Peachtree Street, Suite 2800
Atlanta, Georgia  30309-4530                  Atlanta, Georgia  30309-4530
404-815-6500 (telephone)                      404-815-6500 (telephone)
404-815-6555 (facsimile)                      404-815-6555 (facsimile)

21

## CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2010, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

By:  **/s/ Joanne M. O'Connor**
Joanne M. O'Connor

US2008 1743140.2

**SERVICE LIST**
**Office Depot, Inc. v National Union Fire Insurance Company of Pittsburgh, PA**
**CASE NO.: 09-CV-80554-MARRA/JOHNSON**
**United States District Court, Southern District of Florida**

Steven J. Brodie, Esquire
Email:  sbrodie@carltonfields.com
Gwynne A. Young, Esquire
Email:  gyoung@carltonfields.com
CARLTON FIELDS
100 S.E. 2nd Street
Suite 4000, International Place
Miami, Florida 33131
Telephone:      305-530-0050
Facsimile:      305-530-0055
*Attorneys for Defendant*
Via CM/ECF

Neil S. Baritz, Esquire
nbaritz@baritzcolman.com
Craig R. Glasser, Esquire
cglasser@baritzcolman.com
BARITZ & COLMAN LLP
1075 Broken Sound Parkway, NW
Suite 102
Boca Raton, FL 33487
Telephone:      561-864-5100
Facsimile:      561-864-5101
*Attorneys for American Casualty*
Via CM/ECF

Daniel J. Standish, Esquire
Gary P. Seligman, Esquire
gseligman@wileyrein.com
John E. Howell, Esquire
jhowell@wileyrein.com
WILEY REIN LLP
1776 K Street NW
Washington, DC 20006
Telephone:      202-719-7000
Facsimile:      202-719-7049
*Attorneys for American Casualty*
Via CM/ECF

P:\DOCS\23658\00003\PLD\19O6637 DOC

US2008 1743140 2