## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.09-80554-Civ-MARRA/JOHNSON

OFFICE DEPOT, INC.,

        Plaintiff,

vs.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA. and
AMERICAN CASUALTY COMPANY OF
READING PA,

        Defendants.

_____/

## DEFENDANT AMERICAN CASUALTY COMPANY OF READING PA'S MEMORANDUM OF LAW IN OPPOSITION TO OFFICE DEPOT, INC.'S MOTION FOR RECONSIDERATION (D.E. 200)

Daniel J. Standish (*pro hac vice*)      Neil S. Baritz  (Fla. Bar No. 0003468)
Gary P. Seligman (*pro hac vice*)     Craig R. Glasser (Fla. Bar No. 0008567)
John E. Howell (*pro hac vice*)       BARITZ & COLMAN LLP
WILEY REIN LLP                     1075 Broken Sound Pkwy., NW
1776 K Street NW                 Suite 102
Washington, DC  20006        Boca Raton, FL  33487
TEL: 202.719.7000               TEL: 561.864.5100
FAX: 202.719.7049              FAX: 561.864.5101

*Attorneys for Intervenor-Defendant American Casualty Company of Reading PA*

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     THE ONLY GROUNDS FOR GRANTING A MOTION FOR
        RECONSIDERATION ARE NEWLY DISCOVERED EVIDENCE OR
        MANIFEST ERRORS OF LAW OR FACT ...................................................... 2

III.    OFFICE DEPOT'S SETTLEMENT WITH THE SEC DOES NOT
        CONSTITUTE "NEW EVIDENCE." ............................................................... 3

        A.    The Recent SEC Proceedings Confirm the Court's Prior Determination
              that the SEC's Investigation Does Not Constitute a Securities Claim
              Against Office Depot. ................................................................................ 3

        B.    Office Depot's SEC Investigation Response Costs Did Not "Result[]
              Solely from" Covered Claims. .................................................................. 6

IV.     NEW YORK LAW, TO THE EXTENT IT MAY APPLY, DOES NOT COMPEL
        A DIFFERENT RESULT .................................................................................. 8

        A.    Office Depot Has Waived Any Argument that New York Law Differs
              Materially from Florida Law .................................................................... 8

        B.    Regardless of the Law Applied, the Policy Does Not Afford Coverage for
              "Pre-Claim" Amounts, Which Cannot Result Solely from the
              Investigation, Adjustment, Defense or Appeal of a Claim ..................... 9

              1.    The Unambiguous Language of the Primary Policy Controls ................. 9

              2.    New York Law Does Not Require Coverage in Contradiction of
                    the Policy's Plain Terms ............................................................. 9

        C.    Office Depot Could Have No "Reasonable Expectation" of Coverage .............. 11

        D.    Language Appearing in a Subsequently-Released Policy Form Is Not
              Relevant to the Interpretation of the Primary Policy ........................... 13

        E.    The Court Did Not "Misconstrue" or "Overlook" any Material Fact ................. 15

V.      CONCLUSION ................................................................................................. 18

## FEDERAL CASES

*American Home Assurance Co. v. Glenn Estes & Associates*,
   763 F.2d 1237 (11th Cir. 1985) ................................................................8

*Arthur v. King*,
   500 F.3d 1335 (11th Cir. 2007) ................................................................2

*Chacon v. El Milagro Care Center, Inc.*,
   No. 07-22835-CIV, 2010 WL 1049261 (S.D. Fla. Mar. 22, 2010) ........................2, 3

*Doe v. Princess Cruise Lines, Ltd.*,
   696 F. Supp. 2d 1282 (S.D. Fla. 2010) ................................................10

*Finch v. City of Vernon*,
   845 F.2d 256 (11th Cir. 1988) ................................................................2

*Herald Square Loft Corp. v. Merrimack Mutual Fire Insurance Co.*,
   344 F. Supp. 2d 915 (S.D.N.Y. 2005)................................................... 13-14

*In re Kellogg*,
   197 F.3d 1116 (11th Cir. 1999) ................................................................2

*Kenevan v. Empire Blue Cross & Blue Shield*,
   791 F. Supp. 75 (S.D.N.Y. 1992)................................................................13

*MBIA v. Federal Insurance Co.*,
   No. 08 Civ. 4313, 2009 WL 6635307 (S.D.N.Y. Dec. 30, 2009)...............................10

*Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*,
   No. 09-60351-CIV, 2010 WL 3522566 (S.D. Fla. Sept. 7, 2010)................................2

*National Stock Exchange v. Federal Insurance Co.*,
   No. 06 C 1603, 2007 WL 1030293 (N.D. Ill. Mar. 30, 2007) ................................7, 11

*Northern Assurance Co. v. D'Onofrio General Contractors Corp.*,
   No. 08-cv-976, 2009 WL 1437800 (E.D.N.Y May 18, 2009)....................................12

*Pepsico, Inc. v. Continental Casualty Co.*,
   640 F. Supp. 656 (S.D.N.Y. 1986)................................................................11

*State v. Blank*,
   745 F. Supp. 841 (S.D.N.Y. 1990)................................................................ 10-11

*Waters Edge Living, LLC v. RSUI Indemnity Co.*,
   355 F. App'x 318 (11th Cir. 2009) ................................................................8

## STATE CASES

*Board of Managers of Yardarm Condominium II v. Federal Insurance Co.*,
    669 N.Y.S.2d 332 (N.Y. App. Div. 1998) ...................................................................12

*Raymond Corp. v. National Union Fire Insurance Co.*,
    833 N.E.2d 232 (N.Y. 2005)....................................................................................9

*Slattery Skanska Inc. v. American Home Assurance Co.*,
    885 N.Y.S.2d 264 (N.Y. App. Div. 2009) ......................................................9, 12, 14

*Slayko v. Security Mutual Insurance Co.*,
    774 N.E.2d 208 (N.Y. 2002)....................................................................................12

*Westview Associates v. Guaranty National Insurance Co.*,
    740 N.E.2d 220 (N.Y. 2000)....................................................................................13

*White v. Continental Casualty Co.*,
    878 N.E.2d 1019 (N.Y. 2007)...............................................................................9, 10

## FEDERAL RULES

Fed. R. Civ. P. 59(e) ...........................................................................................2

## I.    <u>Introduction</u>

After voluminous summary judgment briefing, additional briefing regarding the admissibility of expert testimony, and a motion for clarification of the Court's October 15, 2010 summary judgment ruling, (D.E. 176), Office Depot seeks yet another opportunity to rehearse its same arguments.  Dissatisfied with the Court's application of the clear policy language at issue, Office Depot has moved for reconsideration, ostensibly to present "new evidence" and to remind the court of case law and facts the Court purportedly "overlooked."  But even a cursory review of Office Depot's motion reveals the same tired tropes:  the same insistence that coverage for Defense Costs[1] should be measured by the purported benefit incurred amounts may confer with respect to Claims not yet asserted; the same faith in the illusory transformative power of Section 7(c) of the Primary Policy to convert all costs incurred into Defense Costs once any Claim is made; and the same erroneous contention that subsequent changes to the policy form can be used to interject ambiguity into the Primary Policy.  The only thing "new" about Office Depot's motion is, after previously conceding that there were no material conflicts between New York and Florida law, Office Depot's new embrace of New York law—although virtually all of the New York authorities Office Depot cites made appearances in its prior briefing.

The fact that the SEC has brought civil and administrative proceedings against Insureds subsequent to the Court's October 15 opinion does not require the Court to reconsider its prior extensive analysis.  The commencement of proceedings confirms that the investigation that preceded them is not itself a Claim.  Moreover, the commencement of such proceedings cannot retroactively transform costs incurred in response to a non-covered investigation into costs

---

[1]    Capitalized terms are defined in the Primary Policy, issued by defendant National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") and attached as Exhibit B to the June 11, 2010 Declaration of John E. Howell (D.E. 100) ("Primary Policy" or "Policy").

"resulting solely from" a proceeding that had not yet been brought.  Accordingly, intervenor-defendant American Casualty Company of Reading PA. ("American Casualty") respectfully requests that the Court deny Office Depot's motion for reconsideration.

## II.    The Only Grounds for Granting a Motion for Reconsideration Are Newly Discovered Evidence or Manifest Errors of Law or Fact.

Because Office Depot challenges the substance of the Court's judgment and filed its motion for reconsideration within the twenty-eight-day time period required under Rule 59(e), the motion is properly considered under that Rule.  *See* Fed. R. Civ. P. 59(e); *Finch v. City of Vernon*, 845 F.2d 256, 258 (11th Cir. 1988) ("Rule 59 applies to motions for reconsideration of matters encompassed in a decision on the merits of the dispute, and not matters collateral to the merits.").[2]  "The only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (quoting *In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir. 1999)) (substitution in original).

A motion for reconsideration "is not a vehicle for rehashing arguments the Court has already rejected or for attempting to refute the basis for the Court's earlier decision." *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, No. 09-60351-CIV, 2010 WL 3522566, at *1 (S.D. Fla. Sept. 7, 2010).  Nor may such a motion be used "to repackage familiar arguments to test whether the court will change its mind." *Chacon v. El Milagro Care Center, Inc.*, No. 07-22835-CIV, 2010 WL 1049261, at *1 (S.D. Fla. Mar. 22, 2010).  And "[a] motion for reconsideration may not be used to offer new legal theories or evidence that could have been presented in a previously filed motion or response, unless a reason is given for failing to raise the

---

[2]      Office Depot also states that it moves under Rule 60(b), which permits the Court, on motion and just terms, to relieve a party or its legal representative from a final judgment, or proceeding for, *inter alia* , "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . . or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b).  To the extent that Rule 60(b) may apply, Office Depot has not demonstrated any of enumerated grounds or any other reason that justifies relief.

issue at an earlier stage in the litigation." *Id.* at * 1.  Office Depot's motion breaches all of these prohibitions.

**III.   Office Depot's Settlement With the SEC Does Not Constitute "New Evidence."**

Office Depot contends that filings made in connection with its settlement with the Securities and Exchange Commission ("SEC"), announced over a year ago, are "new evidence" that require the Court to reevaluate this case.  According to Office Depot, the SEC's October 2010 filing of a civil action against Office Depot ("SEC Action") and institution of three cease and desist proceedings against Office Depot and two of its officers (the "Cease and Desist Proceedings") constitute "new evidence" that a Securities Claim, as defined by the Policy, was made against Office Depot in July 2007, when the SEC began an informal inquiry of Office Depot.

In reality, the supposed "new evidence" undermines Office Depot's position because it plainly shows that the SEC Action and the Cease and Desist Proceedings—the purported "Securities Claims" on which Office Depot relies—were instituted in October 2010, not July 2007.  Office Depot uses this "evidence" primarily as an occasion to rehearse its by now familiar arguments that: (1) the SEC's investigation of Office Depot predating the October 2010 proceedings was really an "administrative or regulatory proceeding against" Office Depot; and (2) that Office Depot's costs of responding to the SEC's investigation are covered because they purportedly "benefited" the defense of other matters.  The Court has already considered and properly rejected these arguments.

     **A.   The Recent SEC Proceedings Confirm the Court's Prior Determination that the SEC's Investigation Does Not Constitute a Securities Claim Against Office Depot.**

As the Court has previously determined, the plain language of the Policy affords entity

3

coverage to Office Depot only for Loss "arising from a **Securities Claim**." Policy, Section 1. The SEC's investigation of Office Depot is not a Securities Claim. Indeed, the Policy expressly carves out SEC investigations of Office Depot from the definition of Securities Claim, which excepts any "investigation of an **Organization**." Policy, Section 2(y).[3]

Office Depot apparently suggests that the filing and settlement of the SEC Action and the Cease and Desist Proceedings reveal that the SEC's *investigation* of Office Depot was, all along, a civil, criminal, administrative or regulatory *proceeding* against Office Depot and Insured Persons. D.E. 200 at 5 ("The SEC proceedings that culminated in entry of the Consent Judgment approved by this court, and in entry of the agreed Administrative Cease and Desist Order, started long ago—with the SEC's first 'letter of inquiry' dated July 17, 2007"). To the contrary, the institution of "proceedings" by the SEC simply underscores the bright line drawn by the Policy between a non-covered "investigation of" Office Depot and a potentially covered civil, administrative, or regulatory "proceeding" that is "commenced by . . . service of a complaint or similar pleading." Policy, Sections 2(b)(2), 2(y). Thus, the fact that the SEC commenced "proceedings" subsequent to its investigation confirms the Court's prior determination that a "proceeding" is something other than a non-covered "investigation" of Office Depot and therefore the costs incurred in responding to the investigation cannot and do not constitute "Defense Costs" "resulting solely from a . . . **Claim**." *Id.*, Section 2(f).

Under the Policy, a civil, criminal, administrative or regulatory proceeding is "commenced by: (i) service of a complaint or similar pleading; (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or (iii) receipt or filing of

---

[3]     In addition, "the term **Securities Claim** shall include an administrative or regulatory proceeding against an **Organization**, but only if and only during the time that such proceeding is also commenced and continuously maintained against an **Insured Person**." Policy, Section 2(y).

a notice of charges." Policy, Section 2(b)(2).   Accordingly, and as the Court has determined,

"the phrase 'proceeding against' . . . does not encompass preliminary agency investigatory

action." D.E. 176 at 24. Instead, the Policy separately addresses "investigation[s]"—expressly

precluding coverage for an "investigation of" Office Depot and, as to Insured Persons, coverage

applies only upon the receipt of specified documents. *See* Policy, Section 2(b)(3), 2(y). The

SEC's investigation was not commenced by the service, return, receipt or filing of any of the

documents specified in Section 2(b)(2) of the Policy. The SEC's "investigation" was not an

administrative or regulatory "proceeding," and Office Depot's attempt to lump the SEC's

investigation, the SEC Action, and the Cease and Desist proceedings together under the single

label of "SEC proceedings" seeks to erase the clear distinctions reflected in the Policy and

recognized by the Court.

  In addition, the "new evidence" presented by Office Depot confirms that the SEC

"commenced" administrative cease-and-desist proceedings on October 21, 2010. The three

orders submitted by Office Depot are captioned "ORDER INSTITUTING CEASE AND

DESIST PROCEEDINGS"; state that such proceedings "hereby, are instituted"; and recite that

the respondents made settlement offers "[i]n anticipation of the institution of these proceedings."

*E.g.*, D.E. 195-1, Exhibit B, Captioned "Administrative Proceeding: File No. 3-14094." Office

Depot makes much of its settlement with the SEC, but as the documents make clear, the

settlement offers were made in "anticipation of" the Cease and Desist Proceedings. The fact that

Office Depot and individual defendants made settlement offers "in anticipation" of proceedings

against them shows that such proceedings were not "commenced" at the time that Office Depot

incurred costs in responding to the SEC investigation. Contrary to Office Depot's assertion that

the SEC Action and Cease and Desist Proceedings constitute "new evidence" that administrative

5

or regulatory proceedings against Office Depot began in July 2007, the documents confirm that

the SEC did not commence such proceedings until October 2010, more than three years later.

To the extent that Office Depot, under the pretense of presenting new evidence, is merely

gainsaying the Court's legal conclusion that "the phrase 'proceeding against' . . . does not

encompass preliminary agency investigatory action," Office Depot is wrong.  D.E. 176 at 24.

Construed as a whole, the Policy cannot reasonably be interpreted to include an investigation of

an Insured within the separately enumerated category of "administrative or regulatory

proceeding[s] against" an Insured.[4]  Policy, Sections 2(b), (y).  Rather than bolstering Office

Depot's position, the October 2010 proceedings lay bare the hollow foundations of Office

Depot's argument.

**B.     Office Depot's SEC Investigation Response Costs Did Not "Result[] Solely from" Covered Claims.**

Office Depot appears to contend that the costs of its cooperation with the SEC's

investigation were actually incurred in the defense of the SEC Action years before that action

was filed.  *See* D.E. 200 at 4 ("[a]ll of the costs of defending [the SEC's] Complaint had already

been incurred").  However, Office Depot has already conceded that the disputed amounts were

incurred in responding to the SEC's investigation, not in "investigating," "adjusting," or

"defending" a yet-to-be-filed complaint.  *See* D.E. 88 at 16 (citing Office Depot's documents and

deposition testimony related to various amounts for which Office Depot seeks coverage).

Amounts incurred before the SEC Action was filed, for the admitted purpose of cooperating with

the SEC's investigation, did and could not "result[] solely from the investigation, adjustment,

---

[4]     Office Depot mischaracterizes the Court's order as upholding "National Union's decision to allocate" certain amounts to covered claims.  D.E. 200 at 4.  The Policy limits covered Defense Costs to those resulting solely from the investigation, adjustment, defense and/or appeal of a Claim.  As the Court correctly held, sums expended by Office Depot in responding to the SEC's investigation do not constitute "Loss" arising from or resulting solely from a "Securities Claim," and therefore no "allocation" of fees is necessary.

[or] defense" of the SEC Action in order to constitute "Defense Costs" as defined by the Policy. *See* Policy, Section 2(f).

Office Depot acknowledges that the SEC Action was filed "subsequent" to the SEC's investigation. *E.g.*, D.E. 200 at 7. Yet Office Depot also incongruously suggests that the costs of its "decision(s) to cooperate with the SEC's investigation" resulted solely from the "investigation" or "adjustment" of the SEC Action, filed three years after the SEC inquiry began. D.E. 200 at 6-7. While Office Depot correctly identifies the inclusion of "investigation" and "adjustment" within the definition of "Defense Costs," Office Depot ignores that the definition of "Defense Costs" is limited to amounts "*resulting solely from* the investigation, adjustment defense and/or appeal of *a Claim."* Primary Policy, Section 2(f) (emphasis added). For costs incurred in "investigation" or "adjustment" to constitute Defense Costs, the object of such investigation or adjustment must be a "**Claim**." As the court concluded in *National Stock Exchange v. Federal Insurance Co.*, No. 06 C 1603, 2007 WL 1030293, at *6 (N.D. Ill. Mar. 30, 2007), and as this Court previously agreed, "a Claim must first exist in order for plaintiff to defend or investigate it."

The Policy sets forth clear triggers determining when a Claim commences. *See* Policy, Section 2(b). Amounts resulting solely from the investigation or adjustment of a Claim, as defined by the Policy, are Defense Costs. Other amounts are not. It is immaterial that the activities for which Office Depot incurred costs involve the same subject matter as the eventual SEC Action or "benefited" the settlement of that action. Office Depot cannot reasonably contend that such amounts "resulted solely from the investigation, adjustment, defense or appeal" of an action that was filed after such costs were incurred, especially where it has admitted that the costs were incurred in response to the SEC's investigation, which is not a

Securities Claim.  Office Depot fails to offer any explanation rooted in the text of the Policy for its continued assertion that efforts undertaken in response to a matter that does not constitute a Claim should be deemed to meet the definition of "Defense Costs" simply because those efforts may have aided the defense and resolution of a later filed Claim.  The Court has already rejected that argument, and it should do so again.

**IV.    New York Law, to the Extent It May Apply, Does Not Compel a Different Result.**

        **A.    Office Depot Has Waived Any Argument that New York Law Differs Materially from Florida Law.**

In the prior summary judgment briefing, Office Depot conceded that it "does agree that there is no conflict between the law of Florida, as articulated by *Fayad* [*v. Clarendon National Insurance Company, Inc.*, 899 So. 2d 1082 (Fla. 2005)], and the law of New York."  D.E. 121 at 6.[5]  In its motion for reconsideration, however, Office Depot now takes the position that certain cases "suggest that conflicts do exist" and questions the Court's "assumption that there were no 'conflicts' between Florida and New York law."  D.E. 200 at 11.

Because Office Depot's prior briefing effectively stated "that it does not matter which state's law applies," the Court may "take that as a waiver . . . of any argument" that Florida law does not apply.  *Waters Edge Living, LLC v. RSUI Indem. Co.*, 355 F. App'x 318, 324 (11th Cir. 2009).  Office Depot had a full opportunity to brief the dispositive issues under New York law, and all of the cases it cites were available at the time of its prior motions.  The Court need not and should not allow Office Depot "two bites at the apple" where it has "raised the choice of law issue for the first time after the entry of summary judgment."  *American Home Assurance Co. v. Glenn Estes & Assocs.*, 763 F.2d 1237, 1238-39 (11th Cir. 1985).

---

[5]      Office Depot expressly contended at summary judgment that Florida law applies.  D.E. 121 at 6.

**B.**      **Regardless of the Law Applied, the Policy Does Not Afford Coverage for "Pre-Claim" Amounts, Which Cannot Result Solely from the Investigation, Adjustment, Defense or Appeal of a Claim.**

**1.**      **The Unambiguous Language of the Primary Policy Controls.**

The Court's application of the law of the forum state was appropriate because, as all parties recognized in briefing the cross-motions for summary judgment, there is no material conflict between New York and Florida law.  *See* D.E. 101 at 6; D.E. 88 at 7 n.2; D.E. 121 at 6. As under Florida law, courts applying New York law give effect to clear and unambiguous policy language.  *See e.g.*, *White v Cont'l Cas. Co.*, 878 N.E.2d 1019, 1021 (N.Y. 2007) ("[U]nambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court."); *Raymond Corp. v. Nat'l Union Fire Ins. Co*., 833 N.E.2d 232, 234 (N.Y. 2005) (holding the court will "not disregard clear provisions which the insurers inserted in the policies and the insured accepted, and equitable considerations will not allow an extension of coverage beyond its fair intent and meaning") (quotation marks and citation omitted)).  Moreover, under New York law, "[i]t is well settled that contracts of insurance are to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language employed.  The best evidence of what the parties to an agreement intended is the language of the agreement itself, especially where, as here, the parties to the insurance policy were sophisticated commercial entities." *Slattery Skanska Inc. v. American Home Assurance Co.*, 885 N.Y.S.2d 264, 273 (N.Y. App. Div. 2009).

**2.**      **New York Law Does Not Require Coverage in Contradiction of the Policy's Plain Terms.**

None of the authorities discussed by Office Depot—which it has or could have cited prior to judgment—compels a conclusion that is contrary to the Policy's plain and unambiguous language defining "Defense Costs" to include only amounts resulting solely from the

investigation, adjustment, defense or appeal of a Claim.[6]

Office Depot contends that New York courts allow coverage for pre-claim "investigatory costs." D.E. 200 at 8. The authorities Office Depot has again cited for this point do not support its position and certainly do not override the clear dictate of New York law that "unambiguous provisions of an insurance contract must be given their plain and ordinary meaning." *White*, 878 N.E.2d at 1021. Contrary to Office Depot's description, the court in *MBIA v. Federal Insurance Co.*, No. 08 Civ. 4313, 2009 WL 6635307 (S.D.N.Y. Dec. 30, 2009), did not address "investigatory costs that are related to and that benefit the defense of a subsequent claim" or "pre-litigation" costs. D.E. 200 at 8. Rather, the *MBIA* court found coverage for costs incurred in response to "a formal or informal administrative or regulatory proceeding or inquiry" commenced by service of a subpoena, which the court determined to be a "formal or informal investigative order" or a sufficiently "similar document" under the policy language at issue. *Id.* at *8. And the dispute in *MBIA* concerning fees incurred by counsel for a special litigation committee involved fees incurred *after* a complaint was filed. *Id.* at *9. The facts, policy language, and findings of *MBIA* are irrelevant here.

The other cases cited by Office Depot remain inapplicable to the facts of this case as well. *See* D.E. 200 at 8. *State v. Blank*, 745 F. Supp. 841 (S.D.N.Y. 1990), involved a commercial general liability policy with a duty to defend. Although the court there found coverage for costs that were "useful in defending [a] first-party complaint," the court also stated, in the portion of the quoted language excised by Office Depot, that "[c]osts are to be assessed whether or not they were incurred due to services rendered as part of any defense raised by [the

---

[6]     Where a motion for reconsideration relies upon "the same authorities which the Court has already considered and which have already been extensively briefed" it "could be denied on that basis alone." *Doe v. Princess Cruise Lines, Ltd.*, 696 F. Supp. 2d 1282, 1284 (S.D. Fla. 2010).

insured] to the State's pre-complaint enforcement efforts." *Id.* at 852.  *Blank* is clearly inapplicable to the policy language at issue here, which defines Defense Costs as amounts "resulting solely from . . . a **Claim**" and not amounts that may relate in some way to pre-Claim activity.

The court in *Pepsico, Inc. v. Continental Casualty Co.*, 640 F. Supp. 656 (S.D.N.Y. 1986), considered a motion for clarification as to "whether defense costs, like . . . settlement costs must be allocated" between insured individuals and the uninsured corporation.  *Id.* at 666. The *Pepsico* court apparently was considering a limited record and did not analyze any of the policy definitions at issue in connection with coverage for defense costs for the investigations at issue.  As such, *Pepsico* provides no guidance for this case.

The New York cases cited by Office Depot do not establish that the amounts it concededly incurred to cooperate with the SEC's investigation constitute Loss "arising from" covered Claims or could have resulted "solely from" the defense of covered Claims.  And although Office Depot objects to the Court's citation to the opinion of the United States District Court for the Northern District of Illinois in *National Stock Exchange*, that court's reasoning is unassailable: "a Claim must first exist in order for plaintiff to defend or investigate it."  *Nat'l Stock Exch.*, 2007 WL 1030293, at *6.[7]

C.     **Office Depot Could Have No "Reasonable Expectation" of Coverage.**

Office Depot contends that the Court ignored the so-called "reasonable expectations

---

[7]     Office Depot correctly quotes a portion of the definition of "Loss" in the policy at issue *in National Stock Exchange* excepting amounts incurred "in connection with the investigation and evaluation of any Claim or potential Claim *by or on behalf of the organization*."  D.E. 200 at 9 (emphasis added).  The conclusion Office Depot attempts to draw from that definition, however, misses the mark.  The quoted language clearly excepts from "Loss" costs incurred to investigate or evaluate claims that may be *brought by or on behalf of  the insured organization* itself— *i.e.,* derivative actions.  That provision is completely irrelevant to the issues raised in this case or, for that matter, to the issues raised in  *National Stock Exchange.*

doctrine" and that Office Depot's "reasonable expectations regarding policy coverage should be accepted."  D.E. 200 at 13.  However, as under Florida law, New York courts will not abrogate clear policy terms based on an insured's subjective "expectations."  In *Slayko v. Security Mutual Insurance Company*, 774 N.E.2d 208 (N.Y. 2002), the New York Court of Appeals explicitly rejected a version of the so-called "'reasonable expectations' doctrine" that would require it effectively to rewrite clear policy language.  *Id.* at 213 (noting that "[s]ome states have developed the 'reasonable expectations' doctrine to mitigate the rigors of policy exclusions when such exclusions operate in surprising and unfair ways.  This doctrine has its own complex jurisprudence, and we will not lightly adopt it where, as here, the effect of the exclusion is neither surprising nor unfair.") (citation omitted).

Although  New York courts discuss the "reasonable expectations of the average insured" in determining whether a policy provision is ambiguous, "terms of an insurance contract are not ambiguous merely because the parties interpret them differently."  *Board of Managers of Yardarm Condo. II v. Federal Ins. Co.*, 669 N.Y.S.2d 332, 333 (N.Y. App. Div. 1998). Moreover, under New York law, "where the provisions of the policy are clear and unambiguous, they must be given their plain and ordinary meaning, and courts should refrain from rewriting the agreement."  *Slattery Skanska Inc.*, 885 N.Y.S.2d at 273 (quotation marks omitted).  That one party to the agreement may attach a particular, subjective meaning to a term that differs from the term's plain meaning does not render the term ambiguous."  *Id.* at 274; *see also Northern Assurance Co. v. D'Onofrio Gen. Contractors Corp.*, No. 08-cv-976, 2009 WL 1437800, at *4 (E.D.N.Y May 18, 2009) ("[C]ontract language does not become ambiguous where one party's view strains the contract language beyond its reasonable and ordinary meaning.") (quotation marks omitted).

12

Office Depot's contention that "its reasonable expectations regarding policy coverage should be accepted," D.E. 200 at 13, is unavailing; Office Depot's interpretation of the Policy is inconsistent with the plain and unambiguous terms for which Office Depot bargained and is therefore not "reasonable."  Specifically, Office Depot's interpretation of Section 7(c) of the Policy—that "as of the date of the notice of circumstances . . . Office Depot is entitled to coverage for all . . . costs . . . incurred afterwards that relate to subsequent Claims"—is plainly not reasonable in light of the Policy's terms and conditions.  D.E. 200 at 10.  The Policy simply does not cover all costs that relate to the subject matter of a Claim.  Office Depot's interpretation would eviscerate the clearly delineated triggers for Claims and Securities Claims and the clear limitation of coverage to Loss "arising from" a Claim and Defense Costs "resulting solely from" a Claim.  Policy, Sections 1 and 2(f).  Neither Florida nor New York law requires the Court to disregard or rewrite this clear and unambiguous policy language to satisfy Office Depot's subjective "expectation" of coverage.[8]

### D.    Language Appearing in a Subsequently-Released Policy Form Is Not Relevant to the Interpretation of the Primary Policy.

Again purporting to uncover New York law that the Court has "overlooked," Office Depot contends that the Court erred by not considering a new policy form released by Chartis after the expiration of the Primary Policy.  D.E. 200 at 13.  With the exception of the federal district court case, *Herald Square Loft Corp. v. Merrimack Mutual Fire Insurance Co.*, 344 F. Supp. 2d 915 (S.D.N.Y. 2005), Office Depot has previously cited all of the (non-New York)

---

[8]    The referenced portions of other New York cases cited by Office Depot are similarly inapplicable to the policy language at issue.  The quoted portion of *Kenevan v. Empire Blue Cross & Blue Shield*, 791 F. Supp. 75, 79 (S.D.N.Y. 1992), discusses an insurer's burden "once the court finds an ambiguity."  As this Court correctly found, the Primary Policy applies unambiguously to the circumstances of this case.  And *Westview Associates v. Guaranty National Insurance Co.*, 740 N.E.2d 220, 223 (N.Y. 2000), references an insurer's attempt "[t]o negate coverage by virtue of an exclusion."  It is not necessary to examine the exclusions of the Policy here; the amounts Office Depot seeks do not fall within the coverage grant in the first instance.

cases it regurgitates in support of this argument.  D.E. 134.  *Herald Square* adds nothing to the analysis.

The *Herald Square* court determined that a pollution exclusion in a general liability policy was ambiguous and that it would be construed against the insurer.  *Id.* at 923.  As "another consideration," the court discussed the fact the insurer sent the insured a notice of "reduction in coverage" after a lead paint exclusion was added to the subsequent policy.  *Id.* at. 922-23.  The court concluded that this evidence confirmed that neither the insured nor insurer believed that damage from lead paint had previously been excluded by the policy's pollution exclusion.  *Id.* at 923.  *Herald Square* is inapplicable here; the policy language is clear and unambiguous under the circumstances of this case.  Moreover, no notice of a "reduction in coverage" has been issued. And, as discussed in the defendants' motion to strike Office Depot's expert reports, D.E. 117 at 7, and National Union's motion *in limine* regarding other policies, D.E.164 at 4, the Chartis policy form differs substantially from the Primary Policy and includes provisions not found in the Primary Policy, including provisions granting certain coverage for "Pre-Claim Inquiries," which make Office Depot's reliance on purported "changes in policy wording" especially unfounded.   The Primary Policy's clear terms are not rendered ambiguous—and Office Depot's strained interpretation is not rendered reasonable—by a Chartis policy form released over two years after the Primary Policy had expired.

In any event, under New York law, "[e]xtrinsic evidence cannot be used to create an ambiguity in an agreement."  *Slattery Skanska Inc.*, 885 N.Y.S.2d at 274.  The Primary Policy unambiguously covers only Loss "arising from" a Claim, applying only to Defense Costs "resulting solely from" the investigation, adjustment, defense or appeal of "a **Claim**."  Policy, Sections 1 and 2(f).  This language clearly delineates the scope of covered Defense Costs, and no

reference to extrinsic materials is necessary or appropriate.

### E.    The Court Did Not "Misconstrue" or "Overlook" any Material Fact.

Office Depot argues that the Court "misconstrued or overlooked" undisputed facts,

resulting in an "error of material fact" in the Court's October 15 opinion and order.  D.E. 200 at

17.  Specifically, Office Depot challenges the Court's determination that no coverage exists for

the SEC's investigation of Office Depot's Insured Persons until such persons were issued

subpoenas or Well's notices.  D.E. 176 at 32.

The Policy defines "Claim" in relevant part to include

> a civil, criminal, administrative or regulatory investigation of an
> **Insured Person**:
>
> (i)   once such **Insured Person** is identified in writing by such
> investigating authority as a person against whom a
> proceeding described in Definition (b)(2) may be
> commenced; or
>
> (ii)  in the case of an investigation by the SEC or a similar state
> or foreign government authority, after the service of a
> subpoena upon such **Insured Person**.

Policy, Section 2(b)(3).

Office Depot contends that letters sent to counsel for Insured Persons in the fall of 2007

requesting voluntary testimony or other submissions identified such persons as "being part of the

SEC's proceedings."  D.E. 200 at 17.  In fact, the letters upon which Office Depot relies merely

request or confirm the SEC's requests for voluntary testimony or submissions.  *See* June 11,

2010 Mot. to File Under Seal, Ex. 2 (OD-NU000202-19 and OD-NU000038-53).  They do not

identify in writing any Insured Person "as a person against whom a proceeding described in

Definition (b)(2) may be commenced."

Office Depot contends that National Union's acceptance of "Wells notices" as Claims

supports Office Depot's position because, according to Office Depot, a Wells notice presents "no

15

less of a 'threat' of future 'proceedings'" than do letters requesting voluntary testimony or the preservation of documents.  D.E. 200 at 18.  Office Depot's comparison is inapt.  A Wells notice informs a recipient that "the Division [of Enforcement] is considering recommending or intends to recommend that the Commission file an action or proceeding against them."  SEC, Div. of Enforcement, Enforcement Manual ("SEC Manual") at § 2.4 (*available at* http://www.sec.gov/divisions/enforce/enforcementmanual.pdf); *see also*, *e.g.*, June 11, 2010 Mot. to File Under Seal, Ex. 1 (OD-NU011820) (Wells notice issued to Patricia McKay).  The letters upon which Office Depot relies do no such thing.  On the contrary, the letters advise that the SEC's inquiry and investigation should *not* be construed as an indication that any violation of law has occurred or as a reflection upon any person.  *E.g.*, June 11, 2010 Mot. to File Under Seal, Ex. 2 at OD-NU000204.

Office Depot relies heavily upon the fact that letters sent to Insured Persons were accompanied by SEC Form 1662, baldly stating that "[t]he SEC's issuance of Form 1662, whether as part of a Wells Notice or as part of a letter to counsel for the individuals named, triggers coverage."  D.E. 200 at 19.  The Court did not "overlook" Form 1662.  *See* D.E. 176 at 9.  Neither did the Court make an "error of material fact" by concluding that Form 1662 did not identify an Insured Person as a person against whom a civil, criminal, administrative or regulatory proceeding may be commenced.  The form is a generic document provided to "any witness" who may provide testimony or other submissions to the SEC.  SEC Enforcement Manual at 52.  And as noted by the Court, Form 1662 states that "[i]f your testimony is not pursuant to a subpoena, your appearance to testify is voluntary, you need not answer any question, and you may leave whenever you wish."  *E.g.*, Office Depot's June 11, 2010 Mot. to File Under Seal, Ex. 5, Attach. 4.

Office Depot asserts that Form 1662 "confirms" that future proceedings may be commenced because it describes penalties for submitting false information in violation of the United States criminal code and states that information provided may be used in enforcement proceedings.  D.E. 200 at 19.  This assertion is baseless.  The form cites the criminal code and states that "[t]he staff of the Commission routinely seeks to introduce submissions . . . as evidence in Commission enforcement proceedings."  Office Depot's June 11, 2010 Mot. to File Under Seal, Ex. 5, Attach. 4.  Such warnings to those who provide information—voluntarily or pursuant to a subpoena—do not state that a perjury or enforcement proceeding may be brought against a particular Insured Person.[9]  The generic form does not "identif[y] in writing" any Insured Person "as a person against whom" a civil, criminal, regulatory or administrative proceeding may be commenced.  *See* Policy, Section 2(b)(3)(i).  The receipt of a generic form providing information about potentially applicable statutes and regulations and a description of certain SEC procedures simply does not trigger the commencement of a Claim.

Office Depot also attempts to rely upon selected deposition testimony by American Casualty's corporate representative for the proposition that the SEC's letters requesting voluntary testimony or documents constitute "Claims."  D.E. 200 at 18.  Office Depot's reliance is misplaced.  The court could not have overlooked this "fact" since Office Depot did not previously cite to this testimony in its extensive prior briefing.  This is not surprising given that when read in context, the complete testimony simply confirms that the plain language of the Primary Policy requires that the specific provision of Section 2(b)(3) controls the determination as to whether an "investigation" constitutes a Claim.  In the two pages of testimony following

---

[9]      The SEC does not have the authority to bring criminal proceedings.  *See, e.g.*, SEC Enforcement Manual, § 5.2 ("The SEC has authority to bring civil, but not criminal, actions . . . .").

those cited by Office Depot, American Casualty's representative confirms that the Primary

Policy's definition of "Claim" requires that an Insured Person "be identified in writing by such

investigating authority as a person against whom a proceeding described in definition (b)(2) may

be commenced."  Deposition of Elizabeth A. Neumann at 106-07, attached as Exhibit A to the

Declaration of John E. Howell in Support of American Casualty's Opposition to Office Depot,

Inc.'s Motion for Reconsideration (filed contemporaneously herewith).  And indeed, under the

Policy's clear and unambiguous terms, an Insured Person must be so identified in writing (or

receive an SEC subpoena) before a civil, criminal, administrative or regulatory investigation of

such Insured Person may be deemed to trigger coverage.  Policy, Section 2(b)(3).  Thus, Office

Depot's attempt to interject ambiguity into the Policy fails, not only because both New York and

Florida law preclude the use of extrinsic evidence to vary clear policy terms, but also because the

testimony itself reinforces the Policy's plain language.

**V.**      **<u>Conclusion</u>**

The Court's October 15 and 27 orders correctly apply the Policy's plain and

unambiguous language.  Office Depot has reiterated its well-worn position to the contrary, but

has provided no basis on which the Court should reconsider.  For the reasons set forth above and

in its prior summary judgment briefing, American Casualty respectfully requests that the Court

deny Office Depot's motion for reconsideration in its entirety.

Respectfully submitted,


By: s/ Craig R. Glasser
     Neil S. Baritz  (Florida Bar No. 00003468)
     nbaritz@baritzcolman.com
     Craig R. Glasser (Florida Bar No. 0008567)
     cglasser@baritzcolman.com
     BARITZ & COLMAN LLP
     1075 Broken Sound Parkway, NW
     Suite 102
     Boca Raton, FL 33487
     TEL: 561.864.5100
     FAX: 561.864.5101

     Daniel J. Standish (*pro hac vice*)
     Gary P. Seligman (*pro hac vice*)
     John E. Howell (*pro hac vice*)
     WILEY REIN LLP
     1776 K Street NW
     Washington, DC  20006
     TEL: 202.719.7000
     FAX: 202.719.7049

     Attorneys for Defendant
     AMERICAN CASUALTY COMPANY OF
Dated: December 27, 2010     READING PA

19

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of December 2010, a true and correct copy of the

foregoing document is being served on all counsel of record identified below via transmission of

Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those

counsel or parties who are not authorized to receive electronically notices of filing.

Edmund M. Kneisel
Email: ekneisel@kilpatrickstockton.com
Brent W. Brougher
Email: bbrougher@kilpatrickstockton.com
Kilpatrick Stockton
1100 Peachtree Street NE
Suite 2800
Atlanta, GA 30309-4530
*Attorney for Plaintiff, Office Depot, Inc.*

Joanne M. O'Connor
Email: joconnor@jones-foster.com
Sidney Alton Stubbs , Jr.
Email: sstubbs@jones-foster.com
Jones Foster Johnston & Stubbs
505 S Flagler Drive
Suite 1100 PO Box 3475
West Palm Beach, FL 33402-3475
*Attorneys for Plaintiff, Office Depot, Inc.*

Gwynne Alice Young
Email: gyoung@carltonfields.com
Sylvia H. Walbolt
Email: swalbolt@carltonfields.com
Kevin P. McCoy
kmccoy@carltonfields.com
Carlton Fields
4221 W. Boy Scout Boulevard
10th Floor - Corporate Center III
Tampa, FL 33067-5736
*Attorneys for Defendant, National Union Fire
Insurance Company of Pittsburgh, PA*

Steven Jeffrey Brodie
Email: sbrodie@carltonfields.com
Carlton Fields
100 S.E. Second Street
Suite 4200
Miami, FL 33131
*Attorneys for Defendant, National Union Fire
Insurance Company of Pittsburgh, PA*

s/ Craig R. Glasser
Neil S. Baritz  (Florida Bar No. 00003468)
nbaritz@baritzcolman.com
Craig R. Glasser (Florida Bar No. 0008567)
cglasser@baritzcolman.com
BARITZ & COLMAN LLP
1075 Broken Sound Parkway, NW
Suite 102
Boca Raton, FL 33487
TEL: 561.864.5100
FAX: 561.864.5101