IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CIVIL ACTION NO. 09-80554-Civ-Marra/Johnson

| | |
|---|---|
| OFFICE DEPOT, INC., | ) |
| Plaintiff, | ) |
| vs. | ) |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., | ) |
| Defendant, | ) |
| AMERICAN CASUALTY COMPANY OF READING, PA., | ) |
| Intervenor Defendant. | ) |

## PLAINTIFF OFFICE DEPOT INC.'S REPLY MEMORANUM IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OF THE COURT'S ORDERS ENTERED OCTOBER 15, 2010 AND OCTOBER 27, 2010

This Court should grant the Motion for Reconsideration filed by plaintiff, Office Depot, Inc. ("Office Depot"), because the filing and entry of a consent judgment resolving the SEC's claims against Office Depot and two of its officers and directors constitutes "new evidence" that alters a material fact relied upon by the Court in its October 15, 2010 Order, namely, that Office Depot incurred the costs it did in voluntarily responding to an SEC investigation "that did <u>not</u> culminate in filing of a judicial or administrative complaint by the SEC against the company or any of its officers or directors." (D.E. No. 176 at 1) (emphasis added). Office Depot respectfully submits that the SEC complaint must be deemed to relate back to the "notice of circumstances" that Office Depot submitted to its carriers in July 2007 and it would be manifestly unjust not to find coverage under the circumstances.

1

In opposition to the motion for reconsideration filed by Office Depot, the named insured on a $25 million primary Directors and Officers liability policy issued by defendant National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), the defendant insurers contend that Office Depot's new evidence, consisting of a complaint and consent judgment filed in this Court by the Securities and Exchange Commission ("SEC") and accompanying SEC administrative "cease and desist" orders add nothing to the record of this case. Indeed, in answer to the "hypothetical" question posed by Office Depot in its motion for reconsideration, *i.e.*, "if the SEC had not previously commenced an administrative or regulatory proceeding, what was being settled?," National Union contends that "[w]hat was being settled was the SEC's investigation of Office Depot," not an insured claim. (D.E. 204 at 4)(emphasis in original). National Union makes no effort to explain why or how an "investigation" (rather than an actual claim) was being settled by a formal consent judgment. Obviously, if that was all that was being done, the SEC would be free to pursue its claims against Office Depot and its present and former officers, directors and employees. Something was being settled; and Office Depot respectfully submits that what was being settled was, at the very least, an insured, SEC regulatory proceeding that the SEC "commenced" no later than the end of July, 2007, when the SEC advised Office Depot that it and its officers and directors were being investigated for possible violation of the federal securities laws.[1]

---

[1] The SEC's initial correspondence to Office Depot was followed by separate letters issued to independent counsel for insured persons; issuance of a formal Order of Private Investigation; issuance of multiple subpoenas to individuals and Office Depot; issuance of Wells Notices to three insured persons; and execution of "consent to settlement" documents, all of which culminated with the SEC filings made after the date of the Court's judgment. National Union appears to contend that the documents establish that something "new was being initiated," (D.E. 204 at 4); but there is no dispute that all of the now-resolved matters are "related" for purposes of the wording of the "notice of circumstances" clause. The related "Securities Lawsuits" also have been resolved by a December 13, 2010 order of the Eleventh Circuit affirming dismissal of those

2

National Union contends on the one hand that the SEC filings constitute "something new," but National Union later acknowledges in its opposing brief that with the resolution of the Securities Lawsuits by the Eleventh Circuit, "all of the matters for which Office Depot sought coverage have been concluded." (D.E. 204 at. 5 n.1).[2] At the same point in its reply and clearly illustrative of the lengths to which National Union will go to avoid its coverage obligations, National Union expressly "disputes Office Depot's contention at footnote 3 that it is undisputed [that] the SEC's complaint and cease-and-desist orders are 'Securities Claims.'" (D.E. 204 at 5 n.2). National Union makes no effort, because it obviously cannot do so, to explain why those matters are not "Securities Claims" and if they are not Securities Claims, what are they?

Nevertheless, National Union asserts at the outset of its reply that "National Union is in the process of *advancing to Office Depot 'Defense Costs' that now are covered in light of the satisfaction of its retention.*" (D.E. 204 at 2)(emphasis added). National Union did not, however, disclose the amount of that "advancement." Office Depot has filed herewith the declaration of Edmund M. Kneisel that contains, as exhibits, correspondence exchanged with counsel for National Union, David Kuffler, Esq., regarding this advancement and a copy of National Union's check payment to Office Depot, dated December 18, 2010, in the amount of $19,154.38. This sum is all that National Union calculates is due and owing for the "defense costs" incurred by Office Depot on its own behalf and on behalf of insured persons in defending, settling and

---

claims with prejudice. *See* Ex. 1 to D.E. 204, attaching the Eleventh Circuit's per curiam ruling of December 13, 2010.

[2] Office Depot agrees that the underlying matters now have been finally resolved, thereby effectively limiting this case to a claim for recovery of the "defense costs" that Office Depot incurred in defending against all the related claims. For that reason, and in light of the limits on the length of Office Depot's reply, Office Depot does not intend to address separately the "me too" arguments made by American Casualty Insurance Co., as "excess carrier." There is no longer any possibility that Office Depot's defense costs claim will exceed the limits provided by the primary National Union policy. As a result, American Casualty has no ongoing, financial interest in the outcome and lacks standing to participate in this case.

3

otherwise resolving the underlying claims (exclusive of relatively small amount of recent billings for fees that have not yet been submitted to National Union). National Union's payment is about .08% of the more than $24,200,000 in billings for defense costs that Office Depot has submitted to National Union, 80% of which should have been advanced (after exhausting the retention) as "defense costs" incurred in connection with the related claims.

National Union (and American Casualty, albeit less definitively) still apparently contend that New York law applies, but nevertheless complain of Office Depot's reference to additional New York authority on the "duty to pay," [3] the use of clarifying "changes" in policy forms as evidence that the previously existing, "unclarified" language of the policy is ambiguous; and the well recognized concept that insurance policies should be construed in accord with the reasonable expectations of the policyholder. However, National Union makes no effort to distinguish the New York cases that Office Depot has cited on these points. *See Westview Assocs. v. Guar. Nat'l Ins. Co.*, 740 N.E.2d 220, 223 (N.Y. 2000) (denying insurer's motion for summary judgment where it failed to establish provision was clear and unmistakable and was subject to no other reasonable interpretation); *Herald Square Loft Corp. v. Merrimack Mut. Fire Ins. Co.*, 344 F. Supp. 2d 915, 918-21 (S.D.N.Y. 2004)(considering subsequent changes in exclusionary language as evidence favoring the policyholder's interpretation).[4]

---

[3] *In re WorldCom, Inc. Sec. Litig.*, 354 F. Supp. 2d 455, 463-65 (S.D.N.Y. 2005)( "duty to pay" attaches as soon as defense costs are incurred and should, like the "duty to defend," be construed broadly); *accord, Westpoint Int'l, Inc. v. Am. Int'l S. Ins. Co.*, 71 A.D.3d 561 (N.Y. App. Div. 2010)(advancement of fees and duty to pay). *See also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Brown*, 787 F. Supp. 1424 (S.D. Fla. 1991), *aff'd*, 963 F.2d 385 (11th Cir. 1992).

[4] Office Depot respectfully submits that the majority of courts that have considered the issue have ruled that "[e]vidence of subsequent changes in contract language is relevant to whether the language at issue is ambiguous." *See, e.g., Am. Cas. Co. of Reading, Pa. v. Continisio*, 819 F. Supp. 385, 398 (D.N.J. 1993), *aff'd*, 17 F.3d 62 (3d Cir. 1994).

By way of clarification, Office Depot does not contend that the New York law differs from Florida law on any of the essential rules applied in construing policies of insurance or regarding the obligation to "advance" fees, especially when, as here, there is an express obligation to do so. Office Depot does submit, however, that the New York law it cited provides helpful guidance because the New York law appears to be more fully developed than Florida law on several of the points addressed. That being said, the Florida law, like New York's, is equally demanding of carriers who desire to "exclude" or "limit" coverage: They must do so by clear and unmistakable policy language, not by terms that are ambiguously vague regarding their meaning or that leave their meaning up to fair and honest debate—it is only if the policy can be read "one way" (in favor of the carrier) that the carrier's position denying coverage can be accepted.

Here, the policy cannot be read only "one way," as barring all coverage for defense costs incurred after the date on which the claim is "considered made," in favor of a reading (based on non-existent language that was not added to the policy form until the spring of 2010) providing that National Union is only obligated to advance and to pay defense costs incurred after a claim is "actually made."[5] The position asserted by National Union (and American Casualty) is inconsistent with a fair and rational (certainly "equally reasonable") reading of the National Union policy. National Union's position also is inconsistent with the reasonable expectations of its insureds. When faced with the circumstances at issue here, including a three year SEC

---

[5] New York courts have also clearly held that coverage limitations or exclusions, wherever found in the policy, must be "'described in clear and explicit language" and that the burden of proving applicability of the exclusion is on the insurer.'" *Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp.*, 73 F.3d 1178, 1205 (2d Cir. 1995)(quoting *Utica Mut. Ins. Co. v. Prudential Prop. & Cas. Ins. Co.*, 477 N.Y.S.2d 657, 660 (N.Y. App. 2d Dept. 1984), *aff'd*, 64 N.Y.2d 1049, 478 N.E.2d 1305 (1985). The limitation/exclusion National Union asks this court to imply, *i.e.*, that no defense costs can be claimed before a claim is "actually made," is not found anywhere in the policy form at issue in this case.

5

investigation (an administrative or regulatory proceeding) and multiple civil lawsuits filed that plainly relate to the SEC proceedings, all of which have culminated in the entry of the SEC consent judgment and cease and desist orders, followed by and affirmance of the dismissal with prejudice of the Securities Lawsuits, it is plainly reasonable to expect that the costs incurred in connection with those matters would be insured. It is not reasonable to allocate costs on a subpoena by subpoena or Wells Notice by Wells Notice basis, as National Union has done, especially where, as here, all of the claims (administrative or regulatory proceedings) are related to each other and to the Securities Lawsuits filed against Office Depot and insured persons in November, 2007.

As noted by Florida's Third District Court of Appeals, "'Insurance is unlike Forrest Gump's box of chocolates. The insured is entitled to know exactly what it's getting for its premiums.'" *United States Fire Ins. Co. v. Fleekop,* 682 So.2d 620, 628 n.9 (Fla. 3d DCA 1996). National Union's position, however, is that "you never know what you're going to get" until you open the policy and try to apply it to a claim. And then you only get a miniscule portion of the loss incurred—less than .08%.[6] As ruled in a consistent line of cases:

> Florida courts have long held that all ambiguities in insurance contracts, as contracts of adhesion, should be construed in the light most favorable to the insured [citations omitted].... Thus, any ambiguities *and omissions* should be construed in favor of [the policyholder]. *If [the health insurer] had intended to exclude injuries that occurred as the result of an... accident, they had every opportunity to say so explicitly. They have no cause now to complain because of their own oversight.*

---

[6] Indeed, as shown by page 2 of the policy declaration page (Complaint [D.E. 1], Ex. A), the amount paid to date is only slightly more than 2% of the premium Office Depot paid for the National Union policy.

*Id.* (quoting *Pasteur Health Plan, Inc. v. Salazar*, 658 So.2d 543, 545 (Fla. 3d DCA 1995)).[7] In *Fleekop*, the court allowed claimants to seek insurance proceeds for claims that were filed after the expiration of a "tail" reporting period under a professional liability policy where the policy (as many now do) did not expressly bar the insured from submitting a "notice of circumstances" before the expiration of the "tail" period.

These same principles have been recognized repeatedly by the United States Court of Appeals for the Eleventh Circuit. For instance, in *Cast Steel Products, Inc. v. Admiral Insurance Co.*, 348 F.3d 1298 (11th Cir. 2003), the court considered an appeal from the district court's pro-carrier summary judgment ruling enforcing the "claims made and reported" requirements of a professional liability policy. The carrier had successfully argued that the policy's plain language only extended the period for reporting claims made during the policy period upon "cancellation or non-renewal" of the policy. *Id. at 1299.* The policy did not contain any wording allowing extended reporting of a claim if the policy was renewed instead of being cancelled, which is what happened. The insured received the claim at issue more than two months before the policy expired and forwarded it to the insured's broker; but as a result of "an unfortunate twist of fate," the broker did not submit notice of the claim to the carrier before the policy expired. *Id. at 1300.* While agreeing that "a claims-made policy is designed to cover only claims both accruing and reported during the specified policy period...," the Eleventh Circuit noted that the district court's ruling presented an "alarming" scenario. *Id. at 1301.* Absent any policy language addressing the

---

[7] Neither National Union nor American Casualty have cited any cases holding that the normal, pro-policyholder rules of interpretation should not apply, where, as here, all of the governing policy language was placed in the policy by the carrier; where there was no negotiation whatsoever regarding that language; and where the language of the applicable coverage form remained unchanged for more than ten years until Chartis, as successor to National Union, issued its new form last spring containing the "missing exclusion" for "pre-actual claim" costs that National Union asks this court to imply as part of the Office Depot policy.

issue of claims reporting when the policy was renewed (as opposed to being cancelled or non-renewed), the appellate court concluded that under the circumstances, it would be "both illogical *and inequitable* to deny coverage to the insured." *Id.* at 1304 (emphasis added). Accordingly, the court decided that the policy should be considered to be ambiguous and construed in favor of coverage:

> It seems to us that the most reasonable interpretation of the extended reporting clause is that it automatically extends the reporting period through renewal. The clause is clearly ambiguous on this point. Accordingly, because we find a clear mandate in Florida law to construct a contract of insurance in favor of the insured and strictly against the drafter, we hold that the ambiguity in the ... Policy must be resolved so as not to deny coverage.

*Id.* at 1304 (citing *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So.2d 161, 165 (Fla. 2003)).

Office Depot submits that the "ambiguity" here regarding the "considered made" issue and the timing of coverage for defense costs is much more "patent" than the ambiguity implied in the *Cast Steel Products* case. The National Union policy at issue expressly provides that claims are "considered made" as of specific dates, *i.e.*, the date of the "notice of circumstances" and/or the date of notice of the "actual claim."[8] No language barring coverage for "pre actual claim" costs exists. Such "missing" language was not added to the D&O coverage form until the spring of 2010. There also is no policy language that justifies allocating the costs of defending related claims into a series of separate "buckets" for various events.

Rather than allocating post-November (actual claim date) costs to separate buckets, depending on who the SEC subpoenaed and when a particular subpoena was served, National Union should have "advanced" all costs incurred by Office Depot because all of those costs were incurred in defending against and finally resolving all the related claims. Here, as ruled by the Eleventh Circuit in *Cast Steel Products,* Office Depot submits that it is unfair, "illogical," and

---

[8] Here, "actual claims" were made in November, 2007.

8

"inequitable" to bar coverage for Office Depot's costs. Otherwise, policyholders faced with similar circumstances would be forced to refuse to cooperate with the SEC in resolving complex claims and insist instead that the SEC initiate actual litigation in order to protect the insureds against loss of their insurance coverage for the costs incurred in resolving the SEC's claims. Such an outcome would not be consistent with public policy; with the interests of judicial economy; with the interests of full and fair settlements of SEC claims[9]; and with Office Depot's fair and rational interpretation of the policy and the coverage it expected to receive.

Accordingly, for the reasons expressed herein and previously, Office Depot respectfully submits that the Court should reconsider its Judgment and rulings rejecting Office Depot's claims for coverage as a matter of law and allow this case to proceed on Office Depot's claims for reimbursement of the Defense Costs it incurred in resolving the underlying claims.

January 10, 2011                By:     **/s/ Joanne M. O'Connor**
                                        Joanne M. O'Connor, Esq.
                                        Florida Bar No: 0498807
                                        E-mail: joconnor@jones-foster.com
                                        JONES, FOSTER, JOHNSTON & STUBBS, P.A.
                                        505 South Flagler Drive; Suite 1100
                                        P.O. Box 3475
                                        West Palm Beach FL 33402-3475
                                        Telephone: (561) 659-3000
                                        Facsimile: (561) 832-1454
                                        *Attorneys for Plaintiff*

---

[9] As illustrated by many of the cases addressing the issues presented, the majority of matters involving SEC claims are settled and do not generate protracted litigation; but burdening the courts with such litigation appears to be what National Union contends must occur to trigger any coverage for the costs incurred.

9

US2000 11978107 2

OF COUNSEL:
Edmund M. Kneisel
ekneisel@kilpatricktownsend.com
Georgia Bar No: 425350
Brent W. Brougher
bbrougher@kilpatricktownsend.com
Georgia Bar No: 086373
Kilpatrick Townsend & Stockton, LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530
404-815-6500 (telephone)
404-815-6555 (facsimile)

**CERTIFICATE OF SERVICE**

      I hereby certify that on January 10, 2011, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

By:   **/s/ Joanne M. O'Connor**
       Joanne M. O'Connor

US2000 11978107 2

## SERVICE LIST
### Office Depot, Inc. v National Union Fire Insurance Company of Pittsburgh, PA
### CASE NO.: 09-CV-80554-MARRA/JOHNSON
### United States District Court, Southern District of Florida

Steven J. Brodie, Esquire
Email: sbrodie@carltonfields.com
Gwynne A. Young, Esquire
Email: gyoung@carltonfields.com
CARLTON FIELDS
100 S.E. 2nd Street
Suite 4000, International Place
Miami, Florida 33131
Telephone:   305-530-0050
Facsimile:   305-530-0055
*Attorneys for Defendant*

Neil S. Baritz, Esquire
nbaritz@baritzcolman.com
Craig R. Glasser, Esquire
cglasser@baritzcolman.com
BARITZ & COLMAN LLP
1075 Broken Sound Parkway, NW
Suite 102
Boca Raton, FL 33487
Telephone:   561-864-5100
Facsimile:   561-864-5101
*Attorneys for American Casualty*

Daniel J. Standish, Esquire
Gary P. Seligman, Esquire
gseligman@wileyrein.com
John E. Howell, Esquire
jhowell@wileyrein.com
WILEY REIN LLP
1776 K Street NW
Washington, DC 20006
Telephone:   202-719-7000
Facsimile:   202-719-7049
*Attorneys for American Casualty*

P:\DOCS\23658\00003\PLD\19X5166.DOC

11